AUSTIN B. KENNEY (State Bar No. 242277)
abk@severson.com
MATTHEW J. ESPOSITO (State Bar No. 223445)
mje@severson.com
SEVERSON & WERSON
A Professional Corporation
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
Telephone: (949) 442-7110
Facsimile: (949) 442-7118

Attorneys for Defendants
CHEX SYSTEMS, INC. and BANK OF
AMERICA, N.A.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| BRIAN HOROWITZ,<br><br>              Plaintiff,<br><br>       vs.<br><br>CHEX SYSTEMS, INC., a foreign corporation, and BANK OF AMERICA, N.A., a foreign corporation,<br><br>              Defendant. | Case No. 8:22-cv-02002-DFM<br><br>*Assigned for all purposes to Hon. Douglas F. McCormick*<br><br>**STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF CHEX SYSTEMS, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>*Filed concurrently with Notice of Motion; Memorandum of Points and Authorities; Declaration of Austin B. Kenney; Declaration Thomas Jordan; Declaration of Sarah Cables; Proposed Order*<br><br>Date:      March 19, 2024<br>Time:      10:00 a.m.<br>Crtrm.: 6B, 6th Floor<br><br>Trial Date:      May 7. 2024 |

70014.0757/16719445.2

Defendant CHEX SYSTEMS, INC. (also erroneously sued as Chex Systems, Inc., a foreign corporation) ("Chex Systems") respectfully submits this Statement of Uncontroverted Facts in Support of its Motion for Summary Judgment.

### DEFENDANT CHEX SYSTEMS, INC.  IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FIRST AMENDED COMPLAINT:

| Chex Systems. Inc.'s Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| 1.      In 2018, Plaintiff BRIAN HOROWITZ ("Horowitz") was the CEO of COD USA, Inc. ("COD"), a business owned by Heather Smulson, whom Horowitz later married.<br><br>*Evidence*: Declaration of Austin B. Kenney ("Kenney Decl."), ¶ 10, Ex. 9, Deposition of Plaintiff Brian Horowitz ("Plaintiff Depo."), 15:3-6, 26:8-16, 35:20-36:5. | |
| 2.      COD maintained its bank accounts at Union Bank.<br><br>*Evidence*: Plaintiff Depo., 27:12-28:3. | |
| 3.      In January 2018, Horowitz learned that one of COD's creditors, Marigold Funding, LLC, had secured a judgment by confession against COD in New York state court and was threatening to garnish COD's Union Bank account(s) to satisfy that judgment.<br><br>*Evidence*: Plaintiff Depo., 27:12-28:9;<br><br>Kenney Decl., ¶ 3, Ex. 2, Plaintiff's Responses to Supplemental Interrogatories, Request No. 19. | |

| Chex Systems. Inc.'s Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| 4. To avoid the garnishment, Horowitz directed the emptying of COD's account by purchasing from Union Bank a $70,000 cashier's check payable to Horowitz.<br><br>*Evidence*: Plaintiff Depo., 25:3-19, 26:17-25, 27:12-28:9, 35:14-19 & Ex. 4;<br><br>Plaintiff's Responses to Supplemental Interrogatories, Request No. 19. | |
| 5. COD was the check's remitter.<br><br>*Evidence*: Plaintiff Depo., 177:20-178:11 & Ex. 4;<br><br>Kenney Decl., ¶ 12, Ex. 11, Deposition of Julie Biszantz ("Biszantz Depo."), 12:6-13:22 & Ex 1. | |
| 6. Horowitz used a portion of the transferred money to pay COD's rent.<br><br>*Evidence*: Plaintiff Depo. 36:10-37:22. | |
| 7. On January 16, 2018, Horowitz deposited the check in his personal Bank of America ("BANA") account, ending in 2815.<br><br>*Evidence*: Kenney Decl., ¶ 13, Ex. 12, First Amended Complaint ("FAC"), ¶ 9;<br><br>Plaintiff Depo. 30:24-31:4, 31:21-24 & Ex. 6.;<br><br>Declaration of Thomas Jordan ("Jordan Decl."), Ex. A. | |
| 8. Over the next two days, 19 transfers were made from the 2815 Account, reducing the account balance to less than $700.<br><br>*Evidence*: Plaintiff Depo., 35:7-13, 36:10-37:22 & Ex. 7. | |

70014.0757/16719445.2

3

| Chex Systems. Inc.'s Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| 9.    On January 18, 2018, Union Bank returned the check to BANA unpaid and marked "08-PAYMENT STOPPED."<br><br>*Evidence*: Biszantz Depo., 24:8-25:7 & Ex. 8;<br><br>Jordan Decl., ¶ 6 & Ex. B. | |
| 10.    BANA charged the item back to the 2815 Account, leaving the account overdrawn by $69,315.08 at the end of the statement cycle.<br><br>*Evidence*: Plaintiff Depo., 38:17-20, 39:3-11;<br><br>Kenney Decl., ¶ 8, Ex. 7, Deposition of Diane DeLoney ("DeLoney Depo."), 23:15-25;<br><br>Jordan Decl., ¶ 6 & Ex. B. | |
| 11.    BANA personnel contacted Horowitz several times in unsuccessful efforts to collect the overdrawn balance of the 2815 Account.<br><br>*Evidence*: Kenney Decl., ¶ 7, Ex. 6, Confidential Deposition of Christopher Thompson ("Thompson Depo. (Conf.)"), 63:14-65:1, 69:15-23. | |
| 12.    BANA's Overdraft Collections Department referred the 2815 Account to BANA's Global Financial Crimes Compliance ("GFCC") investigation team for review.<br><br>*Evidence*: Thompson Depo. (Conf.), 58:21-60:22, 63:3-64:1, 174:13-175:4. | |

STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF CHEXSYSTEMS'S MOTION FOR SUMMARY JUDGMENT

| Chex Systems, Inc.'s Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| 13. GFCC investigator Christopher Thompson ("Thompson") spoke to a Union Bank representative who told Thompson that the remitter stopped payment on the $70,000 cashier's check. <br><br> *Evidence*: Kenney Decl., ¶ 7, Ex. 6, Non-Confidential Deposition of Christopher Thompson ("Thompson Depo. (Non-Conf.)"), 11:25-12:14, 35:23-36:3, 125:18-126:2; <br><br> Thompson Depo. (Conf.), 174:13-175:4. | |
| 14. Thompson also called Horowitz who said that he had not stopped payment on the cashier's check. <br><br> *Evidence*: *See* Thompson Depo. (Non-Conf.), 111:11-112:11, 120:2-16. | |
| 15. Based on past experience that information obtained from another bank in similar situations was reliable, Thompson credited Union Bank's statement. <br><br> *Evidence*: Thompson Depo. (Non-Conf.), 111:11-112:11, 120:2-16. | |
| 16. On April 12, 2018, Thompson recommended that Horowitz's personal and business accounts be closed and referred for reporting by ChexSystems for suspected fraud activity. <br><br> *Evidence*: Thompson Depo. (Conf.), 81:9-20, 148:20-149:4. | |

STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF CHEXSYSTEMS'S MOTION FOR SUMMARY JUDGMENT

| Chex Systems. Inc.'s Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| 17.    Thompson recommended that the account be closed and reported to ChexSystems based the recommendation on the fact that the $70,000 cashier's check was purchased by an entity related to Horowitz and was deposited in Horowitz's account from which the funds were swiftly transferred, leaving the account overdrawn, before BANA received notice that the cashier's check was returned unpaid due to a stop payment request, which Union Bank told Thompson the remitter had made.<br><br>*Evidence*: Thompson Depo. (Conf.), 148:20-149:4;<br><br>Thompson Depo. (Non-Conf.), 98:6-18, 112:13-113:10, 118:7-119:1, 124:16-126:2. | |
| 18.    On April 13, 2018, BANA sent multiple emails to Union Bank requesting that it send BANA $70,000, as BANA was a holder in due course of the cashier's check entitled to enforce payment of that item.<br><br>*Evidence*: Thompson Depo. (Non-Conf.), 94:11-95:25, 103:11-104:20 105:15-106:1. | |
| 19.    On May 22, 2018, per Thompson's recommendation, BANA closed the 2815 Account and booked the 2815 Account's negative balance of $68,515.67 as a bank loss.<br><br>*Evidence*: Plaintiff Depo., 56:13-24;<br><br>Thompson Depo. (Non-Conf.), 52:12-53:10 & Ex. 7. | |

STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF CHEXSYSTEMS'S MOTION FOR SUMMARY JUDGMENT

| Chex Systems. Inc.'s Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| 20. Also per Thompson's recommendation, BANA furnished information to defendant ChexSystems, specifically that Horowitz's 2815 Account was closed for suspected fraud activity with an original charge off amount of $68,003.75 and a closure status of paid in full.<br><br>*Evidence*: Declaration of Sarah Cables ("Cables Decl."), ¶ 10 & Ex. A;<br><br>Kenney Decl., ¶ 6, Ex. 5, Deposition of Sarah Cables ("Cables Depo."), 21:6-22:16, Ex. 5. | |
| 21. ChexSystems reported that Horowitz's 2815 Account was closed for suspected fraud activity, according to the information furnished by BANA.<br><br>*Evidence*: *See* Cables Decl., ¶ 10 & Ex. A;<br><br>Cables Depo., 21:6-22:16 & Ex. 5. | |
| 22. In response to BANA's demands, Union Bank sent BANA a $70,000 check in June 2018, which BANA offset against its loss on closure of the 2815 Account, leaving a small balance in BANA's hold harmless fund that was eventually paid to Horowitz.<br><br>*Evidence*: Thompson Depo. (Non-Conf.), 56:18-57:24;<br><br>Plaintiff Depo., 58:13-21. | |
| 23. In late July 2021, Horowitz opened an account for Creative Arcades LLC at Orange County's Credit Union.<br><br>*Evidence*: Plaintiff Depo., 59:13-61:5. | |

STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF CHEXSYSTEMS'S MOTION FOR SUMMARY JUDGMENT

| Chex Systems, Inc.'s Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
| --- | --- |
| 24.    On or about July 28, 2021, Orange County's Credit Union sent Horowitz a letter saying it had closed his account due to suspected fraud activity and account abuse, based on information provided by ChexSystems.<br><br>*Evidence*: Plaintiff Depo., Ex. 11. | |
| 25.    Horowitz obtained a copy of a credit report from ChexSystems, according to which BANA said that the 2815 Account was closed for suspected fraud activity with an original charge off amount of $68,003.75 and a closure status of paid in full.<br><br>*Evidence*: FAC, ¶ 15,<br><br>Plaintiff Depo., 62:2-64:11 & Ex. 13;<br><br>Cables Decl., ¶ 10 & Ex. A. | |
| 26.    In August 2021, Horowitz submitted a dispute to ChexSystems, which sent BANA a request for reinvestigation stating that Horowitz disputed the information that his BANA account was closed for "suspected fraud activity."<br><br>*Evidence*: Plaintiff Depo., 67:10-13;<br><br>Cables Decl., ¶ 11 & Ex. B. | |
| 27.    Carly Adams, BANA's lead operations representative in deposit credit bureau disputes, conducted BANA's investigation and prepared its response to ChexSystems' reinvestigation request.<br><br>*Evidence*: Kenney Decl., ¶ 4, Ex. 3, Deposition of Carly Adams ("Adams Depo."), 12:1-13, 33:2-4 & Ex. 9;<br><br>Cables Decl., ¶ 11 & Ex. C. | |

STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF CHEXSYSTEMS'S MOTION FOR SUMMARY JUDGMENT

| Chex Systems, Inc.'s Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| 28.   The response stated: "Due to deposit activity, this account was placed under review.· During the review, it was determined that the account breached the account agreement. Because of this breach the account was closed." <br><br> *Evidence*: Adams Depo., 35:5-18 & Ex. 9. | |
| 29.   The response added: "Suspected fraud activity was placed by RISC department.· Please contact RISC at 1-877-240-6886, Option 2." <br><br> *Evidence*: Adams Depo., 41:22-42:5 & Ex. 9. | |
| 30.   ChexSystems received BANA's response, noting that it fully answered the questions asked in the request for reinvestigation. <br><br> *Evidence*: Cables Depo., Ex. 10. | |
| 31.   Since BANA's response was sufficient in accordance with ChexSystems' policies and procedures, there was no need for ChexSystems to follow up with BANA to get more information about why it had suspected fraud. <br><br> *Evidence*: Cables Depo., 39:9-40:2, 53:4-22, 54:3-12, 55:16-21. | |
| 32.   ChexSystems relied on the information provided in BANA's response to the request for reinvestigation and did not further investigate Horowitz's dispute. <br><br> *Evidence*: Cables Depo., 40:3-41:1. | |

STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF CHEXSYSTEMS'S MOTION FOR SUMMARY JUDGMENT

| Chex Systems, Inc.'s Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| 33.     On January 5, 2022, Leslie Herrington, a senior fraud analyst on BANA's high risk mitigation team, submitted a request to delete the negative reporting to ChexSystems regarding Horowitz—identifying him by his BANA party ID number. *Evidence*: Kenney Decl., ¶ 9, Ex. 8, Non-Confidential Deposition of Leslie Herrington ("Herrington Depo. (Non-Conf.)"), 10:25-11:7, 48:19-49:20; Kenney Decl., ¶ 9, Ex. 8, Confidential Deposition of Leslie Herrington ("Herrington Depo. (Conf.)") 30:18-31:20. | |
| 34.     Herrington intended to have the negative information related to Account 2815 removed from Horowitz consumer credit reports; she failed to achieve that objective only because she made a mistake and referenced the wrong account number in her request. *Evidence*: Herrington Depo. (Non-Conf.), 51:2-15. | |
| 35.     Also on January 5, 2022, BANA sent a letter to Horowitz (the "January 5 Letter") that stated: "we've submitted a request to Chex Systems, Inc., and Early Warning Services, LLC, on to remove the reporting from your credit file.· …·You can use this letter as documentation that the request has been submitted." *Evidence*: Herrington Depo., 48:19-49:20 & Ex. 14; Thompson Depo. (Non-Conf.), Ex. 21; FAC, ¶ 65. | |

STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF CHEXSYSTEMS'S MOTION FOR SUMMARY JUDGMENT

| Chex Systems. Inc.'s Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
| --- | --- |
| 36.    The letter was not issued because the initial decision to close the 2815 Account for suspected fraudulent activity was wrong.<br><br>*Evidence*: Thompson Depo. (Conf.), 151:12-154:21, 158:13-159:6. | |
| 37.    The January 5 Letter erroneously referred to Horowitz's account ending in 6566, rather than the 2815 Account.<br><br>*Evidence*: Herrington Depo. (Non-Conf.), 51:2-15. | |
| 38.    Horowitz believed the January 5 Letter referred to the 2815 Account because that was the only account that BANA had reported to ChexSystems.<br><br>*Evidence*: Plaintiff Depo., 81:15-25, 84:11-20, 87:7-88:1, 179:2-12. | |
| 39.    Horowitz never verified with BANA whether the January 5 Letter referred to the 2815 Account.<br><br>*Evidence*: Plaintiff Depo., 81:15-25, 84:11-20, 87:7-88:1, 179:2-12. | |
| 40.    Herrington's request to delete negative ChexSystems reporting on Horowitz's account was sent to Audry Battle, BANA's Hotfile FCRA analyst.<br><br>*Evidence*: Kenney Decl., ¶ 11, Ex. 10, Non-Confidential Deposition of Audrey Battle ("Battle Depo. (Non-Conf.)"), 8:19-20. | |
| 41.    Battle declined Herrington's request because it referenced an account ending in 6566, while the only previous negative reporting had been on the 2815 Account.<br><br>*Evidence*: Battle Depo. (Non-Conf.), 21:19-22:12. | |

STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF CHEXSYSTEMS'S MOTION FOR SUMMARY JUDGMENT

| Chex Systems, Inc.'s Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| 42.    Battle's rejection of Herrington's request should have generated an automated email to Herrington, telling her the request was rejected because the only negative reporting was on a different account than the one referenced in her request.<br><br>*Evidence*: Battle Depo. (Non-Conf.), 26:7-25;<br><br>Kenney Decl., ¶ 11, Ex. 10, Confidential Deposition of Audrey Battle ("Battle Depo. (Conf.)"), 29:7-30:14. | |
| 43.    Herrington was unaware that Battle had denied her request because she never received an email telling her the request was rejected.<br><br>*Evidence*: Herrington Depo. (Non-Conf.), 52:20-23. | |
| 44.    At the end of September 2022, Horowitz tried to set up a new personal and business accounts at NuVision Credit Union but a few hours later was informed that the accounts could not be opened while Horowitz was still appearing on ChexSystems.<br><br>*Evidence*: Plaintiff Depo., 83:14-84:7, 91:4-13, 93:21-94:24, 97:3-98:6 & Ex. 18. | |
| 45.    In September 2022, after NuVision turned him down, Horowitz submitted another dispute to ChexSystems, saying he had resolved the matter with BANA and attaching BANA's January 5, 2022 letter.<br><br>*Evidence*: Plaintiff Depo., 98:12-100:4. | |

STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF CHEXSYSTEMS'S MOTION FOR SUMMARY JUDGMENT

| Chex Systems, Inc.'s Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| 46.    Based on Horowitiz's dispute, ChexSystems sent BANA another request for reinvestigation, showing that Plaintiff disputed the "suspected fraud activity" reason for closure of the 2815 Account and stated "that he resolved this with your institution, and you reported that you are removing the information." <br><br> *Evidence*: Kenney Decl., ¶ 5, Ex. 4, Deposition of Michael Pankowski ("Pankowski Depo."), 53:15-25, 55:10-23 & Ex. 10; <br><br> Cables Decl., ¶ 13 & Ex. D. | |
| 47.    BANA's response to ChexSystems' request for reinvestigation stated that '[t]he re-porting of suspected fraud activity is accurate and shall remain. The account is PIF [paid in full] as of 06/01/2018." <br><br> *Evidence*: Pankowski Depo., 53:15-54:9, 55:25-56:12 & Ex. 10; <br><br> Cables Decl., ¶ 14 & Ex. E. | |
| 48.    The only inaccuracy that Horowitz has ever disputed with ChexSystems related to the 2815 Account is that the account was closed for suspected fraud activity. <br><br> *Evidence*: Cables Decl., ¶¶ 11, 13, 15-16 & Exs. B and D. | |
| 49.    In this action, Horowitz seeks damages for profits he or his busi-nesses would have earned if he had taken out loans that he admittedly never applied for. <br><br> *Evidence*: Plaintiff Depo., 59:13-61:5, 83:14-84:7, 91:4-13, 93:21-94:24, 97:3-98:6, 110:4-111:23, 113:7-114:16, 117:1-10, 119:7-18, 135:7-15, 141:1-18, 146:7-147:13, 179:13-183:3 & Exs. 11 and 18. | |

70014.0757/16719445.2

13

| Chex Systems, Inc.'s Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| 50.     Horowitz did not communicate or make known to BANA the special circumstances from which his alleged business loss damages arose.<br><br>*Evidence*: *See* Herrington Depo., Exs. 8, 10, 16, 17. | |
| 51.     BANA did not furnish negative information to ChexSystems about the 6566 Account.<br><br>*Evidence*: Cables Depo., 64:19-65:5. | |
| 52.     ChexSystems never received a request from BANA to remove negative reporting on any of Horowitz's accounts.<br><br>*Evidence*: Cables Depo., 64:19-65:5. | |
| 53.     ChexSystems did not ask BANA whether it made a mistake in preparing or sending the January 5 Letter because ChexSystems could resolve Horowitz's dispute without asking BANA why it wrote the letter, because the letter concerned a different account than the one on which information was disputed, and because BANA's response to the request for reinvestigation fully answered the dispute that Horowitz had raised.<br><br>*Evidence*: Cables Depo., 74:16-75:24, 76:1-4, 76:15-77:3, 78:3-15. | |
| 54.     When ChexSystems received BANA's responses to its requests for reinvestigation, it confirmed that BANA provided complete answers to Plaintiff's disputes, verifying that the furnished information was accurate and complete and that the reason for closing the account matched the definition of "suspected fraud activity."<br><br>*Evidence*: Cables Decl., ¶ 17. | |

70014.0757/16719445.2

14

STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF CHEXSYSTEMS'S MOTION FOR SUMMARY JUDGMENT

| Chex Systems, Inc.'s Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| 55.    ChexSystems investigators noted BANA's responses in the consumer electronic file before sending Horowitz notice of the resolution of his disputes. *Evidence*: Cables Decl., ¶ 18. | |
| 56.    BANA regularly furnishes information to ChexSystems related to BANA's customers' deposit accounts. *Evidence*: Cables Decl., ¶ 5. | |
| 57.    ChexSystems expects BANA to furnish complete and accurate information related to consumers. *Evidence*: Cables Decl., ¶ 6. | |
| 58.    Since January 2020, BANA has been the second largest data contributor to ChexSystems, and BANA has an industry-leading response rate to consumer disputes. *Evidence*: Cables Decl., ¶ 7. | |

DATED: February 20, 2024

SEVERSON & WERSON
A Professional Corporation

By: _____*/s/ Austin B. Kenney*_____
AUSTIN B. KENNEY

Attorneys for Defendants
CHEX SYSTEMS, INC. and BANK OF AMERICA, N.A.

STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF CHEXSYSTEMS'S MOTION FOR SUMMARY JUDGMENT