Stanley R. Apps (State Bar No. 309425) 4424 Bellingham Avenue
Studio City, CA 91604
Telephone:  (310) 709-3966
E-mail: stan@appsatlaw.com

Of Counsel to
CREDIT REPAIR LAWYERS OF AMERICA
39111 Six Mile Road, Suite 142
Livonia, MI 48152
Telephone:  (248) 353-2882
Facsimile:  (248) 353-4840

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BRIAN HOROWITZ,<br><br>                    Plaintiff,<br><br>        vs.<br><br>CHEX SYSTEMS, INC., et al.,<br><br>                    Defendants. | Case No.:  8:22-cv-02002-DFM<br><br>Date: March 19, 2024<br>Time: 10:00 a.m.<br> Hon. Douglas F. McCormick<br> Courtroom: 6B<br> Court: Ronald Reagan Courthouse<br>        411 W. Fourth St.<br>     Santa Ana, CA 92701 |

**AMENDED NOTICE OF MOTION AND MOTION BY PLAINTIFF BRIAN HOROWITZ**

**FOR PARTIAL SUMMARY JUDGMENT**

**(AMENDED ONLY AS TO DATE)**

TO: Defendants Bank of America, N.A. and Chex Systems, Inc. and their attorneys of record:

PLEASE TAKE NOTICE that, at the date, time and location stated above, pursuant to Federal Rules of Civil

Procedure, Rule 56, Plaintiff Brian Horowitz will move for partial summary judgment as to the First, Second,

Third and Fourth Claims for Relief, on the grounds that there is no genuine issue as to any material fact and

that plaintiff is entitled to judgment as a matter of law.

---

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1

Plaintiff seeks a judgment as to liability that each Defendant violated its respective duties to conduct a reasonable reinvestigation into the Plaintiff's disputes under the Fair Credit Reporting Act.  Specifically, Chex Systems, Inc. failed to conduct a reasonable reinvestigation into Plaintiff's two disputes under 15 U.S.C. §1681i and Bank of America, N.A. failed as well under 15 U.S.C. §1681s-2(b).

Plaintiff's Motion relies on the depositions of the parties and Union Bank.  Plaintiff's motion also relies on the documents produced by all parties in this case along with their respective responses to each other's discovery requests.

This motion is made following the conference of counsel pursuant to L.R. 7-3 that took place on January 18, 2024.

DATED:   02/21/2024

By:    /s/   Stanley R. Apps
Stanley R. Apps, Esq.
Attorneys for Plaintiff
Brian Horowitz

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

2

Stanley R. Apps (State Bar No. 309425)
4424 Bellingham Avenue
Studio City, CA 91604
Telephone:  (310) 709-3966
E-mail: stan@appsatlaw.com

Of Counsel to
CREDIT REPAIR LAWYERS OF AMERICA
39111 Six Mile Road, Suite 142,
Livonia, MI 48152
Telephone:  (248) 353-2882
Facsimile:  (248) 353-4840

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BRIAN HOROWITZ,<br><br>              Plaintiff,<br><br>     vs.<br><br>CHEX SYSTEMS, INC., et al.,<br><br>              Defendants. | Case No.:  8:22-cv-02002-DFM<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: March 19, 2024<br>Time: 10:00 a.m.<br>Hon. Douglas F. McCormick<br>Courtroom: 6B<br>Ronald Reagan Courthouse<br>411 W. Fourth St.<br>Santa Ana, CA 92701 |

iii

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION BY PLAINTIFF BRIAN HOROWITZ FOR PARTIAL SUMMARY JUDGMENT ...........................................................................................i

INDEX OF AUTHORITIES ...............................................................vi

INTRODUCTION AND SUMMARY OF ARGUMENTS ......................................................1

EVIDENCE RELIED UPON IN SUPPORT OF PLAINTIFF'S MOTION .....................................1

STATEMENT OF FACTS...............................................................................2

Union Bank's Stop Payment Order Caused An Overdraft of Account 2815 ..........................................3

Bank of America Performed an Initial Investigation Into Account 2815 ................................................3

Union Bank Subsequently honors The Check ..............................................................4

Horowitz's First Dispute to Chex System results in No Reinvestigation by Bank of America...............4

Bank of America's Policies and Procedures prevented it from Conducting any Reinvestigation Unless New Information is Provided by the Consumer..................................................................5

Bank of America Attempted to Withdraw the Suspected Fraud Activity Designation against Horowitz, but Bungled the Process....................................................................5

Audrey Battle Declined Herrington's Request to Remove negative reporting about Horowitz from Chex Systems because Herrington Recited the Wrong Account Number..................................6

The Bank Issues a Letter to Horowitz Agreeing to Remove the Negative Reporting to Chex................6

Plaintiff Sent a Second Dispute Letter to Chex ............................................................7

STANDARD FOR DECIDING A MOTION FOR SUMMARY JUDGMENT ...............................7

LAW AND ARGUMENT .................................................................8

Plaintiff is Entitled to Relief under 15 USC 1681n Against Bank of America for Its Willful Failure to Conduct Any Reasonable Reinvestigation into either of the Plaintiff's Disputes.................................8

A Furnisher's Duty to Conduct a Reasonable Reinvestigation Requires some degree of careful inquiry by a creditor. ..............................................................8

Bank of America Failed to Conduct any Reinvestigation into the Plaintiff's First Dispute. .................9

In response to the First Dispute, the Bank relied solely upon the Initial Investigation. .........................10
B

Bank of America's own Policies and Procedures Preclude It from Conducting Reasonable Reinvestigations...........................................................................10

Bank of America Failed to Conduct a Reasonable Reinvestigation in response to Plaintiff's Second Dispute by Willfully Disregarding Information its own Records, Proving that the Negative Reporting was inaccurate. ...................................................................................................................11

The Bank ignored Its Own Letter agreeing to remove negative reporting about Horowitz To Chex. ...................................................................................................................12

The Bank Also Disregarded Its Own Internal Records Showing that the Negative Reporting was Supposed to have Been Deleted.........................................................................12

Bank of America's Refusal to Remove the Negative Reporting to Chex Even After this lawsuit was filed Proves a Pattern of Callous Disregard to Mr. Horowitz's Right to a Reasonable Reinvestigation under 15 USC §1681s-2b.........................................................12

Bank of America's Is Liable to Plaintiff for its Willful Violations of the FCRA..................................14

In the Alternative, Plaintiff is Entitled to Summary Judgment Against Bank of America for Negligent Violation of FCRA at 15 USC 1681o. ...........................................................................16

CHEX WILLFULLY VIOLATED THE PLAINTIFF'S RIGHT TO A REASONABLE REINVESTIGATION UNDER 15 U.S.C. §1681i IN RESPONSE TO BOTH OF PLAINTIFF'S DISPUTES.................................................................................................................16

Standard for Credit Reporting Agency Reinvestigation duties under the FCRA..................................16

A Credit Reporting Agency May Not Merely Parrot Information ...........................................17

Chex's Reinvestigations in Response to Both of Plaintiff's Disputes Were Unreasonable as a Matter of Law as It Relied Solely on the Information Provided by Bank of America. ...........................................18

**defined.**

In the alternative, Plaintiff is entitled to Summary Judgment Against Chex for Negligent Violation of FCRA at 15 USC 1681o...........................................................................19

CONCLUSION ...................................................................................................20

**INDEX OF AUTHORITIES**

Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)....................................................8
*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)..................................................................7
*Curtis v. Trans Union, L.L.C., 2002 WL 31748838 (N.D. Ill. Dec. 9, 2002)* ....................17
*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)........................8
*Gorman v. Wolpoff & Abramson, LLP,* ......................................................................................9
*Grigoryan v. Experian Info. Sols., Inc.*, 84 F. Supp. 3d 1044, 1066 (C.D. Cal. 2014)...............18
In re *Equifax, Inc., 96 F.T.C. 1045 (F.T.C. 1980)* ..............................................................17
Johnson v. MBNA Am. Bank, NA, 357 F.3d 426, 430-431 (4th Cir. 2004) ..........................9
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986) .......................8
*Mullins v. Equifax Info. Serv., L.L.C., 2007 WL 2471080 (E.D. Va. Aug. 27, 2007)*..............17
*Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 at 52 (2007)* .................................................14
*Soghomonian v. United States,* 278 F. Supp. 2d 1151, 1156 (E.D. Cal. 2003)......................17
*United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) ...................................................8
*Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1242 (10th Cir. 2015) ........................17

Statutes

*15 U.S.C. § 1681n* ..................................................................................................14, 15, 17
15 U.S.C. §1681i..................................................................................................16, 17, 19
15 U.S.C. §1681s-2(b) ...........................................................................................................14
*15 U.S.C. 1681i(a)* ............................................................................................................17
*15 U.S.C. 192s-2(b)* ...........................................................................................................17

15 USC 1681o...................................................................................................................16
15 USC 1681s-2(b) .......................................................................................................8, 9, 11

Other Authorities

*CFPB, Supervisory Highlights Consumer Reporting Special Edition 10–11, Issue 14 (Mar. 2, 2017*.......19
*FTC Staff Summary § 611(a) item 2 (2011)* ..................................................................11, 17
*Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1155 (9th Cir. 2009).* .....................9, 11

Rules

Fed. R. Civ. P. 56(c)..........................................................................................................7, 8
Fed. R. Civ. P. 56(e) .............................................................................................................8

**INTRODUCTION AND SUMMARY OF ARGUMENTS**

This is a Fair Credit Reporting Act ("FCRA") case.  Plaintiff deposited a cashier's check into his personal account with Bank of America.  Unfortunately, and without his knowledge, the issuing bank stopped payment on its own cashier's check resulting in Plaintiff overdrawing his account at Bank of America.  When Plaintiff could not bring his account to a positive balance, Bank of America ("Bank of America," "the Bank" or "BOA") reported Plaintiff Brian Horowitz ("Horowitz" or "Plaintiff") to Chex Systems, Inc. ("Chex"), as having engaged in "suspected fraud activity."  Plaintiff filed two disputes to this incorrect reporting.  In response to the first dispute, Bank of America never conducted any reinvestigation.  In response to his second dispute, BOA failed to conduct a reasonable reinvestigation by refusing to consider its own records showing that the reporting was incorrect.

The evidence also shows that Chex failed to conduct a reasonable reinvestigation in response to both disputes and simply retained the negative reporting about Horowitz based only upon what it was told to it by BOA.

Mr. Horowitz is entitled to Summary Judgment against each Defendant for their respective willful, if not negligent violations of the Fair Credit Reporting Act.

**EVIDENCE RELIED UPON IN SUPPORT OF PLAINTIFF'S MOTION**

In support of his Motion, the Plaintiff relies upon the following evidence:

1. The First Amended Complaint and the Answer filed by each Defendant in response thereto;

2. Plaintiff's Document Production;

3. Each Defendant's response to Plaintiff's discovery requests including interrogatory answers, Requests for Admissions and Requests for Production;

4. Excerpts from the following deposition testimony of:

    a.  Brian Horowitz - Plaintiff

b.  Carly Adams – BOA's FRCP 30(b)(6) witness as to it response to Plaintiff's First Dispute;

c.  Michael Pankowski - BOA's FRCP 30(b)(6) witness as to it response to Plaintiff's Second Dispute;

d.  Leslie Herrington – BOA's investigator

e.  Christopher Thompson – BOA's investigator who conducted the original, pre dispute investigation;

f.  Kevin Williams BOA's FRCP 30(b)(6) witness for investigations

g.  Sarah Cables, Chex Systems' FRCP 30(b)(6) witness for its reinvestigations into the Plaintiff's two disputes;

h.  Audrey Battle – BOA's FRCP 30(b)(6) witness regarding reporting Plaintiff to ChexSystems on behalf of Bank of America.

i.  Julie Bizsantz, Union Bank's FRCP 30(b)(6) witness

**STATEMENT OF FACTS**

On April 14, 2023, Plaintiff filed his First Amended Complaint against the Defendants for, amongst other claims, negligent and willful violations of the Fair Credit Reporting Act.  Dkt 31, Claims 1-4.  This is the operative complaint in this action.  Plaintiff's Statement of Uncontroverted Facts ("SUF") 1.

In 2018, Plaintiff Brian Horowitz was the Chief Executive Officer of an entity called COD USA, INC.  ("COD").  SUF 2.  He never owned any interest in this entity.  SUF 3.  COD was owned 100% by Heather Smulson.  SUF 4.

On January 16, 2018, COD's account at Union Bank was served with an out of state garnishment order for $115,000.  SUF 6.a.  Union Bank's Legal Department froze COD's bank account.  SUF 6.b.  COD's office manager, Barbara Tolbert purchased a cashier's check ("the Check") with funds from COD's account at Union Bank in the amount of $70,000.  SUF 6.c.  In order to purchase the Check, Union Bank's employee, Kyle Connors ("Connors") lifted the freeze on the Account and issued the

2

$70,000 cashier's check payable to Horowitz.  SUF 6.d. Horowitz deposited the Check into his personal account at Bank of America, ending with "2815" ("Account 2815").  SUF 6.e. Horowitz's Account 2815 was a personal bank account. SUF 7.  The face of the Check identifies the "remitter" as COD USA, Inc. SUF 8.  At the time Horowitz deposited the Check into Account 2815, he also had another account at BOA ending in 6656 ("Account 6656"), which was a business account. SUF 9.  Shortly after he deposited the Check into Account 2815, he made several distributions out of that account, believing the Check would be honored by Union Bank.  SUF 10.

On January 17, 2018, Connors, on behalf of Union Bank, issued a stop payment order on the Check. SUF 11.

On January 18, 2018, Horowitz noticed that his Account 2815 at BOA had not been credited for the $70,000 Check.  SUF 12.  Horowitz sent an email to Connors inquiring as to why the Check had not yet cleared.  SUF 12.  Connors replied to Horowitz stating that "*The funds leave the account as soon as the check is issued at the branch. There is still a processing time once it is deposited.*"  SUF 12.  However*,* Connors knew, at the time that he responded to Horowitz's email, that Union Bank had issued a stop payment on the Check, but purposefully failed to inform Horowitz that it had done so.  SUF 13.

### UNION BANK'S STOP PAYMENT ORDER CAUSED AN OVERDRAFT OF ACCOUNT 2815

Union Bank's FRCP 30(b)(6) witness, Julie Biszantz ("Biszantz") testified that Connors had requested the stop payment order on the Check when he learned that Union Bank's Legal Department had frozen the COD account.  SUF 14.  Horowitz played no role in causing Union Bank to issue a stop payment order on the Check.  SUF 15.  Resultantly, by February 5, 2018, Horowitz's Account 2815 was overdrawn by $69,316.08.  SUF 17.

### BANK OF AMERICA PERFORMED AN INITIAL INVESTIGATION INTO ACCOUNT 2815

3

Christopher Thompson ("Thompson") from BOA's Fraud Team, was assigned to conduct the initial investigation ("Initial Investigation") into the overdraft of Account 2815. SUF 18. Horowitz had explained to Thompson that Horowitz did not stop payment on the Check. SUF 20.

Thompson called Union Bank's customer service department and was "referred to the 'remitter' of the Check for details about who stopped payment on it." SUF 21. He believed that Horowitz was the remitter even though the face of the Check shows that COD was the remitter. SUF 22. He also incorrectly assumed that Horowitz owned COD USA, Inc. SUF 24.

On May 25, 2018, Thompson caused BOA to report Horowitz to Chex as having engaged in "Suspected Fraud Activity" related to Account 2815. SUF 31. The only information that Thompson ever had that Horowitz had engaged in suspected fraud activity was the information he received from Union Bank which "referred" him "to the remitter of the Check." SUF 25.

### UNION BANK SUBSEQUENTLY HONORS THE CHECK

Thompson asserted the Bank's rights as Holder in Due Course against Union Bank and demanded payment on the Check. SUF 29. Union Bank ultimately made the Check good and paid the $70,000 to Bank of America on June 1, 2018. SUF 32.

### HOROWITZ'S FIRST DISPUTE TO CHEX SYSTEM RESULTS IN NO REINVESTIGATION BY BANK OF AMERICA.

On July 28, 2021, Mr. Horowitz's account at Orange County Credit Union was closed due the reporting of Suspected Fraud Activity by BOA. SUF 33.

On August 17, 2021, Horowitz disputed BOA's reporting of "suspected fraud activity" with Chex ("First Dispute"). In turn, Chex sent a Request for Reinvestigation to BOA. SUF 34. In his First Dispute to Chex, Horowitz stated he did not cause the stop payment order to be issued on the Check. SUF 35.

Chex Systems FRCP 30(b)(6) witness, Ms. Sarah Cables, testified that Chex had no reason to doubt Mr. Horowitz's allegation that he had nothing to do with stopping payment on the Check. SUF 36e. Chex also admitted that an important, if not a critical factor to determining whether Horowitz should have

4

been reported by BOA as having engaged in suspected fraud activity is ascertaining who stopped payment on the Check.  SUF 36f.   Moreover, if Horowitz did not stop payment on the Check, he should NOT have been reported as having engaged in Suspected Fraud Activity.  SUF 36g.

Horowitz's First Dispute was received and responded to by Carly Adams at Bank of America.  SUF 37.  She had no personal knowledge of Horowitz engaging in any fraud activity.  SUF 39.  She did not know who stopped payment on the Check.  SUF 42.  Despite not knowing any of these things, she confirmed the negative reporting to Chex.  SUF 43.   Adams filled in the Request for Investigation form based solely on what she was told by the Bank.  SUF  45.

### BANK OF AMERICA'S POLICIES AND PROCEDURES PREVENTED IT FROM CONDUCTING ANY REINVESTIGATION UNLESS NEW INFORMATION IS PROVIDED BY THE CONSUMER.

Kevin Williams, another FRCP 30(b)(6) witness for Bank of America, testified as to the reinvestigations performed by BOA.  SUF 47.  The bank only conducts a reinvestigation if new information is provided in connection with the consumer's dispute.  SUF 50.  Indeed, he testified:

> *But the actual reinvestigation process was to review new information that was provided. There was no new actionable reinvestigation information provided; therefore, the original decision stands."*  SUF 50, 51.

Because there was no new information provided by Horowitz in connection with either of his disputes, the Bank's policies and procedures are very clear for the Bank "to hold the original decision." SUF 51.

### BANK OF AMERICA ATTEMPTED TO WITHDRAW THE SUSPECTED FRAUD ACTIVITY DESIGNATION AGAINST HOROWITZ, BUT BUNGLED THE PROCESS.

On December 31, 2021, Leslie Herrington, a Senior Fraud Analyst at BOA reached out to Thompson, via email, asking him whether Horowitz can be removed from negative reporting to Chex.  SUF  55-56. Thompson replied that he had no objection. SUF 56.  Herrington responded that she would remove Horowitz from the Chex system.  SUF 58.  Herrington sent her formal request to remove Mr. Horowitz from Chex to another bank employee, Audrey Battle, who is in charge of reporting to Chex.   SUF 59. Battle declined Herrington's request.  SUF 61.

5

**AUDREY BATTLE DECLINED HERRINGTON'S REQUEST TO REMOVE NEGATIVE REPORTING ABOUT HOROWITZ FROM CHEX SYSTEMS BECAUSE HERRINGTON RECITED THE WRONG ACCOUNT NUMBER.**

Audrey Battle oversees placing and removing negative reporting on the Bank's customers to Chex. SUF 60. Battle received Herrington's Request to remove the negative reporting from the Bank's tradeline for Horowitz but declined it because Herrington's request recited the incorrect account number, Account 6566. SUF 61. The Bank sends an automated email to analysts like Herrington, whose requests for removal from Chex are denied by Battle. SUF 65.

At the time she denied the request, Battle was aware that only Account 2815 and not 6566 had been reported about Horowitz to Chex. SUF 62. Battle never followed up with Herrington to inquire as to why Herrington requested negative reporting about Horowitz be removed on an account never reported to Chex. SUF 63. The record does not show that Herrington ever followed up with Battle, either, to correct her mistake.

**THE BANK ISSUES A LETTER TO HOROWITZ AGREEING TO REMOVE THE NEGATIVE REPORTING TO CHEX.**

On January 5, 2022, Bank of America issued a letter to Horowitz agreeing to remove negative reporting about him to Chex, ("the Removal Letter") but the letter recited the incorrect account number, 6566 and not 2518. Ex 31 and SUF 69. Herrington admitted that she made a mistake by reciting the wrong account number in the creation of the Removal Letter. SUF 70. Herrington testified that the purpose of the Removal Letter was to advise Horowitz that BOA was going to remove the negative reporting about him to Chex Systems. SUF 71. She testified that as of the date of the Removal Letter, that the negative reporting about Horowitz should have been removed. SUF 72.

On September 29, 2022, Horowitz relied on the accuracy of the Removal Letter and attempted to open a new bank account at NuVision Federal Credit Union. SUF 74. He was embarrassed when he was turned down by NuVision due to the Bank of America item that continued to appear on his consumer

6

credit file.  SUF 75.  Horowitz was unable to secure credit with any traditional bank because of the Bank of America item appearing on his Chex report.  SUF 77.

### PLAINTIFF SENT A SECOND DISPUTE LETTER TO CHEX

On September 30, 2022, Horowitz sent a second Dispute Letter to Chex ("Second Dispute"). SUF 78.  This time, he attached a copy of the Removal Letter.  SUF 78.  The Request for Reinvestigation sent by Chex to BOA in the Second Dispute stated "*Consumer stated that he resolved this with your institution, and you reported that you are removing the information. This was not an accurate reporting. Please find enclosed copy of letter from your institution.*" SUF 79.  This second Request for Reinvestigation was responded to by Michael Pankowski on behalf of BOA.  SUF 80.

Pankowski reviewed the Bank of America Removal Letter but disregarded it because he could not "verify" its validity.  SUF 80b.  He also saw Herrington's note which said "Fraud ops – Deposit Fraud Detection Delete. (Leslie Herrington 01/05/2022)."  He did not understand what Herrington's note meant, so he simply disregarded that, too. SUF  80e.  He never contacted Herrington for clarification. SUF 80f. He had no idea why BOA reported Plaintiff as having engaged in suspected fraud activity.  SUF 80g.  He simply took the Bank's internal notes and confirmed that the reporting of Plaintiff as having engaged in suspected fraud activity was accurate.  SUF 80h. He then confirmed the accuracy of the negative reporting to Chex about Horowitz.  SUF 80h.

### STANDARD FOR DECIDING A MOTION FOR SUMMARY JUDGMENT

A court renders summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of informing the court of the basis for its belief that there is an absence of a genuine issue for trial and of identifying those portions of the record that demonstrate such absence. *Celotex*,

7

477 U.S. at 323. However, all evidence and reasonable inferences made must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). The party defending against the motion for summary judgment cannot defeat the motion unless he provides specific facts that demonstrate a genuine issue of material fact such that a reasonable jury might return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *Id.* at 249–50. In other words, conclusory statements, speculation, and unsubstantiated assertions will not suffice to defeat a motion for summary judgment. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Further, a court has no duty to search the record for evidence of a genuine issue. Fed. R. Civ. P. 56(c)(1), (3).

## LAW AND ARGUMENT

### PLAINTIFF IS ENTITLED TO RELIEF UNDER 15 USC 1681n AGAINST BANK OF AMERICA FOR ITS WILLFUL FAILURE TO CONDUCT ANY REASONABLE REINVESTIGATION INTO EITHER OF THE PLAINTIFF'S DISPUTES

### A FURNISHER'S DUTY TO CONDUCT A REASONABLE REINVESTIGATION REQUIRES SOME DEGREE OF CAREFUL INQUIRY BY A CREDITOR.

The Fair Credit Reporting Act ("FCRA) at 15 USC 1681s-2(b) imposes a duty upon a furnisher of information to conduct an investigation in response to a consumer's dispute as follow:

 *In general.* After receiving notice pursuant to section 611(a)(2) [§ 1681i] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall:
   (A)    conduct an investigation with respect to the disputed information;
   (B)    review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [§ 1681i];
   (C)    report the results of the investigation to the consumer reporting agency;
   (D)    if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

8

(E)   if an item of information disputed by a consumer is found
to be inaccurate or incomplete or cannot be verified after
any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly–

(i) modify that item of information;
(ii) delete that item of information; or
(iii) permanently block the reporting of that item of information.

*15 U.S.C. 1681s-2(b)*

The plain meaning of "investigation" clearly requires some degree of careful inquiry by creditors.  §1681s–2(b)(1) requires creditors, after receiving notice of a consumer dispute from a credit reporting agency, to conduct a reasonable investigation of their records to determine whether the disputed information can be verified.  *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430-431 (4th Cir. 2004). Bank of America may not limit its investigation to only that information supplied by Chex. By its ordinary meaning, an "investigation" requires an inquiry likely to turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review of the dispute.  *Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1155 (9th Cir. 2009*)*.

### BANK OF AMERICA FAILED TO CONDUCT ANY REINVESTIGATION INTO THE PLAINTIFF'S FIRST DISPUTE.

In the case before this Court, Bank of America was required to consider other information available to it, including an investigation to determine who stopped payment on the Check.  Chex testified that an important, if not a critical factor to determining whether Horowitz should have been reported as having engaged in "Suspected Fraud Activity" is ascertaining who stopped payment on the Check.  SUF 36f.  In fact, if Horowitz did not stop payment on the Check, he should NOT have been reported as having engaged in Suspected Fraud Activity. SUF 36g.  Bank of America never performed any reinvestigation into this critical question.  In fact, the Bank never investigated this issue beyond Thompson contacting Union Bank's customer service department and being "referred to the remitter of the check" which was part of its Initial Investigation, but never part of any reinvestigation. SUF 21.

9

**IN RESPONSE TO THE FIRST DISPUTE, THE BANK RELIED SOLELY UPON THE INITIAL INVESTIGATION.**

During the Initial Investigation, Horowitz made clear to Thompson that Horowitz did not request the stop payment order on the Check.  SUF 20.  Thompson did not know whether Horowitz or Union Bank issued the stop payment order.  SUF 23.  Consequently, Thompson simply decided to continue to report "suspected fraud activity" about Horowitz to Chex because he incorrectly believed that Horowitz was the remitter of the Check and incorrectly believed that Horowitz owned COD USA, Inc. ("COD"). SUF 27.  The face of the Check shows that COD USA Inc. was the remitter.  Ex 7.  Moreover, Horowitz never owned any interest in COD.  SUF 26.

Thompson's Initial Investigation does not constitute a "reinvestigation" under the FCRA because it was performed before Horowitz ever posited any dispute pursuant to the FCRA.  The Initial Investigation was not governed by the FCRA nor required to meet the standard for a reinvestigation at 15 U.S.C. §1681s-2(b).

Bank of America's employee, Carly Adams, responded to Plaintiff's First Dispute.  SUF 37.  In responding to the First Dispute, she did not know who stopped payment on the Check.  SUF 42.  She did not know what "Suspected Fraud Activity" even meant in a Chex Report. SUF 38.  She did not know what fraud was committed that caused BOA to close Plaintiff's account.  SUF 39.  The Bank provided her with the information from the Initial Investigation which she used to fill in the response to the First Dispute.  SUF 44.  She relied solely on the information in Thompson's Initial Investigation to respond to the First Dispute.  SUF 27. She did nothing more than parrot what was told to her.  The Bank failed to conduct any reinvestigation into Plaintiff's First Dispute.

**BANK OF AMERICA'S OWN POLICIES AND PROCEDURES PRECLUDE IT FROM CONDUCTING REASONABLE REINVESTIGATIONS.**

Kevin Williams, BOA's FRCP 30(b)(6) witness as to FCRA reinvestigations  testified that the Bank makes the finding of suspected fraud activity on Chex Reports.  SUF 48.  The Bank's process for conducting reinvestigations in response to consumer disputes is *only* triggered if *new* information is provided in connection with the consumer's dispute.  SUF 50.  This policy violates the plain language of

10

15 U.S.C. §1681s-2(b).  BOA's reinvestigation policy is conditioned upon a consumer providing "new information."  There is no such qualifier under the statute.  The FCRA requires that a reinvestigation be a good faith effort to determine the accuracy of the disputed item.  *FTC Staff Summary § 611(a) (2011).*  The meaning of the term "investigation" is a "detailed inquiry or systematic examination, which necessarily requires some degree of careful inquiry."  [B]ecause the purpose of the provision is "to give consumers a means to dispute—and, ultimately, correct—inaccurate information on their credit reports, a "superficial, *un*reasonable inquir[y]" would hardly satisfy Congress' objective.  *Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1155 (9th Cir. 2009).*  Again, the Bank's policy of only conducting an investigation if a consumer provides new information from its Initial Investigation is contrary to the plain meaning of the statute.

Williams also testified that "the Bank's policy for reinvestigations is only to "investigate the reasonableness of the investigation."  SUF 52. This focus on the quality of the Bank's own investigation is completely at odds with the purpose of the statute which is to give the consumer an opportunity to correct inaccurate information.  The purpose of a reinvestigation, as stated above, is to determine whether the disputed information can be verified; not whether the Bank's previous investigation was reasonable.

Bank of America did not conduct any reinvestigation into either of Horowitz's disputes because Horowitz did not provide any "new" information that would cause the Bank to conduct a reinvestigation under its policies.  SUF 51.  This failure is a willful violation of the Plaintiff's right to a reasonable reinvestigation under 15 U.S.C. §1681s-2(b).

**BANK OF AMERICA FAILED TO CONDUCT A REASONABLE REINVESTIGATION IN RESPONSE TO PLAINTIFF'S SECOND DISPUTE BY WILLFULLY DISREGARDING INFORMATION ITS OWN RECORDS, PROVING THAT THE NEGATIVE REPORTING WAS INACCURATE.**

In his second dispute, dated September 29, 2022, ("Second Dispute") Horowitz informed Chex that he had resolved the reporting of suspected fraud activity with the Bank and attached the letter he received from the Bank ("the Removal Letter"), on its own letterhead, in support. SUF 78.  Chex, in turn,

11

attached a copy of the Removal Letter to its second Request for Reinvestigation and sent these to Bank of America.  SUF 78, 80b.

### THE BANK IGNORED ITS OWN LETTER AGREEING TO REMOVE NEGATIVE REPORTING ABOUT HOROWITZ TO CHEX.

Michael Pankowski, on behalf of BOA, responded to Plaintiff's Second Dispute, on October 18, 2022.  SUF 80.  Pankowski saw the Removal Letter which was on Bank of America's letterhead.  SUF 80c.  Shockingly, he disregarded it because he could not "verify its validity."  SUF 80b.  The letter recited the wrong account number and thus, he simply disregarded it.  SUF 80c.  Still, he knew that Account 2815 was the only account referred to Chex by BOA about Horowitz. SUF 80a.  Worse yet, the Removal Letter gave him absolutely no pause.  SUF 80d.  He never thought to investigate the question of "Why did the bank send Horowitz a letter stating that it *had* removed negative reporting about him related to an account that was never reported to Chex?"  His failure to resolve this question, which was begged by the Removal Letter, was a willful failure to conduct a reasonable reinvestigation.

### THE BANK ALSO DISREGARDED  ITS OWN INTERNAL RECORDS  SHOWING THAT THE NEGATIVE REPORTING WAS SUPPOSED TO HAVE BEEN DELETED

In conducting his reinvestigation into the Second Dispute, Pankowski also saw Herrington's note of January 5, 2022 in the Bank's internal computer system.  SUF 80e.   In that note, Herrington indicated "Fraud Ops – Deposit Fraud Detection Delete (Herrington Leslie) 01/05/2022."  *Id*.  Pankowski refused to consider this internal note from Herrington because he did not know what it meant.  So, he simply disregarded it. *Id.*  He never contacted Herrington for an explanation what her note of "Deposit Fraud Detection Delete" meant.  *Id*.   Pankowski's refusal to contact Leslie Herrington to find out what she meant with her notation "Fraud ops – Deposit Fraud Detection Delete" sinks to a level of a willful violation of the Plaintiff's right to a reinvestigation.  Pankowski did as little work as possible before confirming the negative information to Chex in response to Plaintiff's Second Dispute.

### BANK OF AMERICA'S REFUSAL TO REMOVE THE NEGATIVE REPORTING TO CHEX EVEN AFTER THIS LAWSUIT WAS FILED PROVES A PATTERN OF  CALLOUS DISREGARD TO MR. HOROWITZ'S  RIGHT TO A

12

### REASONABLE REINVESTIGATION UNDER 15 USC §1681s-2b.

In an effort to stem the tide of financial and emotional damage caused by BOA's wrongful refusal to remove negative reporting, Plaintiff's counsel, Mark Javitch, asked counsel for Defendants, Austin Kenney, to remove or at least cloak the incorrectly reporting negative information to Chex about Horowitz on March 6, 2023. SUF 85, Ex 26. Javitch attached a copy of the Removal Letter to his request proving that BOA agreed to remove the suspected fraud activity designation from Horowitz's Chex report. Kenney immediately replied that he would "pass the request on to the bank." SUF 85. The following day, on March 7, 2023, Kenney responded with a flat out refusal, stating that somehow, Plaintiff himself was to blame for this continued negative reporting on his Chex file. Kenney stated:

> *Mark, I conveyed the demand to the Bank. As predicted, the Bank is not inclined to request that the reporting be deleted, absent some actual evidence of resulting damages, which your client has so far refused to provide. If he really is incurring damages (and we are skeptical that he is), his own refusal to cooperate is solely to blame at this point.*[1]
>
> *Call me if you want to discuss further.* SUF 86.

Like its response to Plaintiff's consumer disputes to Chex, Bank of America gave short shrift to Horowitz's counsel's request despite having been given a copy of the Bank's own Removal Letter on the Bank's own letterhead. The Bank ultimately relented and removed the negative reporting to Chex on March 22, 2023 "as a good will gesture." SUF 87, Ex 27.

To be sure, Plaintiff's counsel's email did not constitute a "dispute" under 15 U.S.C. §1681s-2(b). Bank of America had no duty to conduct a reinvestigation in response to this email from Mr. Javitch. However, the Bank's refusal to even consider what it had promised in its own letter on its own letterhead shows a pattern of the Bank's disregarding or blatant indifference to Plaintiff's right to accurate credit reporting. The Bank simply does not care about its duties even when presented with proof of its own mistakes. What Herrington had done was a mistake when she recited the wrong account number in the

---

[1] Mr. Kenney's response was curious since discovery had just opened on February 27, 2023. By this time, no discovery requests had been propounded by either side. Dkt 26.

13

Removal Letter. She owned up to it.  What the Bank had done by refusing to correct it through its counsel, Mr. Kenney, was no mistake.  It was again, a willful and deliberate indifference to the Plaintiff's right to accurate credit reporting.

### BANK OF AMERICA'S IS LIABLE TO PLAINTIFF FOR ITS WILLFUL VIOLATIONS OF THE FCRA

The FCRA provides for civil liability at *15 U.S.C. § 1681n* as follows:

> *(a) In general. Any person who **willfully** fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of*
> > *(1) (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or*
> > > *(B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;*
> > *(2) such amount of punitive damages as the court may allow; and*
> > *(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.*

In *Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 at 52 (2007),* the Supreme Court held that reckless disregard of a furnisher's duties under the FCRA is a willful violation of the statute.  The Court established an objective standard of recklessness in civil cases generally, defining recklessness as "action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known. *Id at 68*.  With specific reference to statutory mandates, the Court held that "a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless. *Id. at 69*.

In this case, Bank of America would only perform a reinvestigation *if* the consumer presented "new information" that was "actionable."  SUF 50, 51.  This is not what the statute requires.  When a consumer posits a dispute, a furnisher must conduct a reasonable reinvestigation.  15 U.S.C. §1681s-2(b).  This requirement is not conditioned on anything, let alone the consumer providing "new" information that is "actionable."  In this case, BOA conducted no reinvestigation into Plaintiff's First Dispute.

14

Likewise, in response to Horowitz's Second Dispute, the Bank had two major pieces of information in its possession showing that Horowitz should not have been reported as having engaged in suspected fraud activity after January 4, 2022. SUF 80b ("the Removal Letter), 80e (Herrington's internal note). Both of these critical pieces of information were simply disregarded by the Bank. In connection with Plaintiff's Second Dispute, Pankowski could have contacted Herrington to find out what her note meant in the Bank's system. He refused to do so. He also could have learned from her that she was the one that authorized the issuance of the Removal Letter and that the Bank intended to remove all negative reporting from Horowitz to Chex. Instead, he could not be bothered. SUF 80f. He simply scribbled the Bank's response to Horowitz's Second Dispute and wrongfully confirmed the accuracy of the negative information. He was at least derelict in his duties. But given that he could have picked up a telephone or emailed Herrington, he was something beyond derelict. He willfully failed to conduct a reasonable reinvestigation. Conclusively, there was no reasonable reinvestigation into either of the Plaintiff's disputes.

Most shocking is that even after this lawsuit was filed and Bank of America's counsel was presented with the Removal Letter, the Bank still refused to remove the negative reporting. SUF 86. The Bank continued its pattern of doing nothing in response to Plaintiff's disputes and ignoring its own records. It made no effort to determine that negative reporting about Horowitz should have been removed. Again, the Bank had all of the information in its possession including Herrington's internal notation and the Removal Letter that should have caused any reasonable person to ask a question or two before smearing the Plaintiff as having engaged in suspected fraud activity.

Plaintiff is entitled to partial summary judgment on his claims under Count 2 of his First Amended Complaint for Willful Violation of the Fair Credit Reporting Act at 15 USC §1681n.

15

**IN THE ALTERNATIVE, PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AGAINST BANK OF AMERICA FOR NEGLIGENT VIOLATION OF FCRA AT 15 USC 1681O.**

The FCRA provides for civil liability for negligent noncompliance at 15 USC 1681o as follows:

*Civil liability for negligent noncompliance*

*(a) In general. Any person who is negligent in failing to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of*
*(1) any actual damages sustained by the consumer as a result of the failure; and*
*(2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.*

In this case, BOA failed to conduct any reinvestigation into the First Dispute by simply relying solely upon its Initial Investigation. SUF 45. It also failed to conduct a reasonable reinvestigation into Plaintiff's Second Dispute by ignoring two major pieces of exculpatory data that were in its possession. Again, the Bank simply ignored these things and never followed up with anyone either in its own organization or with Union Bank. This was, at the very least, a negligent violations of the FCRA. In the alternative, Plaintiff moves this Court for partial summary judgment under 15 U.S.C. 1681o for a finding of negligent violation of the FCRA if the Court is not inclined to grant relief for a willful violation of the statute.

**CHEX WILLFULLY VIOLATED THE PLAINTIFF'S RIGHT TO A REASONABLE REINVESTIGATION UNDER 15 U.S.C. §1681i IN RESPONSE TO BOTH OF PLAINTIFF'S DISPUTES**

**STANDARD FOR CREDIT REPORTING AGENCY REINVESTIGATION DUTIES UNDER THE FCRA.**

The FCRA imposes a duty on Credit Reporting Agencies to conduct a reasonable reinvestigation in response to a consumer's dispute under 15 U.S.C. §1681i as follows:

*Reinvestigations of Disputed Information*
*(1) Reinvestigation Required*
*(A) In general. Subject to subsection (f), if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in*

16

> *accordance with paragraph (5),before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.*

*15 U.S.C. § 1681i*

A reinvestigation must be a good faith effort to determine the accuracy of the disputed item. *FTC Staff Summary § 611(a) item 2 (2011).* See *also Curtis v. Trans Union, L.L.C., 2002 WL 31748838 (N.D. Ill. Dec. 9, 2002).* The CRA must reinvestigate; it cannot merely tell users that the consumer disputes the report. In re *Equifax, Inc., 96 F.T.C. 1045 (F.T.C. 1980),* rev'd in part on other grounds*, 678 F.2d 1047 (11th Cir. 1982).*

The plain meaning of "investigation" clearly requires some degree of careful inquiry. *Wright v. Experian Info. Sols., Inc., 805 F.3d 1232, 1242 (10th Cir. 2015).* At a minimum, the CRA must check with both the original sources and other reliable sources of the disputed information. *15 U.S.C. §1681i(a)(2); FTC Staff Summary §611(a) item 2 (2011).*

Upon receipt of the consumer's dispute, the CRA must review and consider the information provided, forward all relevant information to the creditor or other person who furnished the information, and conduct its own "reasonable reinvestigation" to determine the accuracy or completeness of its reporting. The CRA must delete or correct information that is not verified. *15 U.S.C. 1681i(a).* The investigation is called a reinvestigation, presumably because the CRA initially added to its files the item of disputed information only after employing reasonable procedures to ensure maximum possible accuracy in the first place. *Mullins v. Equifax Info. Serv., L.L.C., 2007 WL 2471080 (E.D. Va. Aug. 27, 2007).*

### A CREDIT REPORTING AGENCY MAY NOT MERELY PARROT INFORMATION

[A] credit reporting agency does not act reasonably under the FCRA by deferring entirely to another source of information. The "grave responsibility" imposed by the FCRA's reinvestigation requirement "must consist of something more than merely parroting information received from other sources." *Soghomonian v. United States,* 278 F. Supp. 2d 1151, 1156 (E.D. Cal. 2003), vacated, No. CIV.F 99 CV 5773 SMS, 2005 WL 1972594 (E.D. Cal. June 20, 2005).

[C]redit reporting agencies are entitled to rely on information provided to them by furnishers for purposes of avoiding liability under § 1681e(b), but this does not preclude a consumer from making a prima facie showing that information contained on a credit report is factually inaccurate. *Grigoryan v. Experian Info. Sols., Inc*., 84 F. Supp. 3d 1044, 1066 (C.D. Cal. 2014). In *Grigoryan*, the Court relied on *Henson v. CSC Credit Servs*., 29 F.3d 280, 286–87 (7th Cir.1994,) reversing the dismissal of a § 1681i claim because "such exclusive reliance may not be justified once the credit reporting agency receives notice that the consumer disputes information contained in his credit report. When a credit reporting agency receives such notice, it can target its resources in a more efficient manner and conduct a more thorough investigation." *Grigoryan* at 1071.

**Chex's Reinvestigations in Response to Both of Plaintiff's Disputes Were Unreasonable as a Matter of Law as It Relied Solely on the Information Provided by Bank of America.**

In response to both of his disputes, Chex failed to conduct a reasonable reinvestigation. In fact, like BOA's First Reinvestigation, Chex also conducted no investigation at all. Chex admitted that it relied exclusively upon what it was told about Horowitz by BOA in continuing to report him as having engaged in suspected fraud activity. SUF 36h-m. Oddly, Chex admitted that that an important, if not a critical factor to determining whether Horowitz should have been reported as having engaged in suspected fraud activity is ascertaining who stopped payment on the Check. SUF 36f. It also admitted that if Horowitz did not stop payment on the Check, he should NOT have been reported as having engaged in suspected fraud activity. SUF 36g. However, Chex never investigated this question. SUF 36h-m. Chex had no knowledge as to who stopped payment on the Check. SUF 36k. It also had no basis for doubting Horowitz's allegation that he did not issue that stop payment order. SUF 36e. Still, Chex simply relied on what it was told about Horowitz from Bank of America when it continued to report him as having engaged in suspected fraud activity in response to each dispute. SUF 36k.

Further still, Chex assumed no accountability for having to conduct any reinvestigation at all. Indeed, Chex testified that "*It is the furnisher of the information's responsibility to verify the accuracy and completeness of the information that they have submitted to Chexsystem.*" SUF 36l. Chex freely

admitted that the extent of its reinvestigation into Horowitz dispute was sending a request for investigation to BOA and then relying on it.  SUF 36m and 36n.  This is a per se violation of 15 U.S.C. §1681i because Chex, as a matter of policy, does not perform reinvestigations.  It merely relies upon what it is told by its furnishers.  The FCRA requires more than that from Chex.  The Consumer Financial Protection Bureau ("CFPB") stated that a CRA may not solely rely on a furnisher's response in a dispute investigation.

In a March 2017 report, the CFPB characterized as a "violation" the nationwide CRAs practice of relying entirely on the furnisher to investigate a dispute, and their failure to review and consider the consumer's proof documents.  *CFPB, Supervisory Highlights Consumer Reporting Special Edition 10–11, Issue 14 (Mar. 2, 2017).*

Likewise, in response to the Plaintiff's Second Dispute, Chex simply relied on what it was told by Bank of America. SUF 36k.  Chex received the Removal Letter on Bank of America's letterhead, stating that BOA had removed negative information from Chex.  SUF 82.  Chex ignored the removal letter and simply deferred to BOA's inadequate reinvestigation. SUF 82, SUF 36k.  A reasonable reinvestigation would have demanded that Chex consider the Removal Letter and have caused Chex to make a further inquiry into its validity rather than simply disregard it as it had.

For these reasons, Chex has willfully, if not negligently, violated the Plaintiff's right to reasonable reinvestigation into both of his consumer disputes.

### IN THE ALTERNATIVE, PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AGAINST CHEX FOR NEGLIGENT VIOLATION OF FCRA AT 15 USC 1681O.

Chex's reliance upon Bank of America in responding to both of the Plaintiff's consumer disputes was a willful violation of its duties under 15 U.S.C. §1681i.  However, in the alternative, if the Court does not believe that Chex's shirking of its responsibilities in this regard meets the standard for a willful violation of the FCRA, then Plaintiffs are entitled to partial summary judgment against Chex for under 15 U.S.C. §1681o for a negligent violation of its duties.

19

**CONCLUSION**

Neither Bank of America nor Chex Systems conducted any reasonable reinvestigation into the Plaintiff's disputes to the negative information that Bank of America had furnished.  Bank of America performed no reinvestigation into Plaintiff's First Dispute.  It also ignored two major pieces of exculpatory information in response to his Second Dispute.  Chex, likewise, merely shirked its duties altogether and solely relied upon what it was told about Horowitz from Bank of America.  For these reasons, Plaintiff is entitled to relief under 15 U.S.C. §1681n for their respective willful violations of the FCRA, or in the alternative, to relief for a negligent violation under §1681o.

Respectfully submitted.

DATED:  02/20/2024

By: _/s/ Stanley R. Apps_
Stanley R. Apps
Attorneys for Plaintiff Brian Horowitz

**Certification under LR 11-6.2**

The undersigned, counsel of record for Plaintiff certifies that this brief contains 6853 words, which:
_x_ complies with the word limit of L.R. 11-6.1.
___ complies with the word limit set by court order dated

DATED:  02/20/2024                              By: _/s/  Stanley R. Apps_
Stanley R. Apps, Esq. (SBA # 209425)
Attorneys for Plaintiff Brian Horowitz