James W. Kirby (State Bar No. 304136)
james@aklawgroup.net
AK Law Group
10850 Wilshire Blvd., Suite 301
Los Angeles, CA 90024
(530) 308-3097

Gary A. Hansz (*Pro Hac Vice*)
gary.hansz@crlam.com
Credit Repair Lawyers of America
39111 Six Mile Road, Suite 142
Livonia, MI 48152
(248) 353-2882

Attorneys for Plaintiff,
Brian Horowitz

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN HOROWITZ,<br><br>                  Plaintiff,<br><br>     vs.<br><br>CHEX SYSTEMS, INC., et al.,<br><br>                Defendants. | Case 8:22-cv-02002-DFM<br><br>OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A.'S MOTION FOR SUMMARY JUDGMENT<br><br>Hearing<br>Date:     March 19, 2024<br>Time:    10:00 a.m.<br>Ctrm.:    6B |

TABLE OF AUTHORITIES ................................................................................ ii

MEMORANDUM OF POINTS AND AUTHORITIES.........................................1

I.     SUMMARY OF ARGUMENT.................................................................1

II.    DISPUTED MATERIAL FACTS AND ADDITIONAL FACTS ...........1

III.   STANDARD FOR DECIDING A MOTION FOR SUMMARY
JUDGMENT.........................................................................................7

IV.   A FURNISHER'S DUTY TO CONDUCT A REASONABLE
REINVESTIGATION REQUIRES SOME DEGREE OF CAREFUL
INQUIRY BY A CREDITOR.................................................................8

V.    ARGUMENT.........................................................................................8

    A.   BOA Is Not Entitled To Summary Judgment On Plaintiff's Fair Credit
        Reporting Act Claims As It Failed To Conduct A Reasonable
        Reinvestigation Into Both Of Plaintiff's Disputes. .............................8

    B.   BOA Is Liable To Plaintiff For Its Willful Violations Of The FCRA.
        ............................................................................................................12

    C.   The Facts Of This Case Support Plaintiff's Promissory Estoppel
        Claim. ...............................................................................................15

    D.   The Facts Of This Case Support Plaintiff's Fraud Claim....................18

VI.   CONCLUSION ...................................................................................22

CERTIFICATE OF COMPLIANCE................................................................23

-i-

OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A.'S MSJ

# **TABLE OF AUTHORITIES**

<u>Cases</u>

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...........................................7

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). ....................................................7

*Chelini v. Nieri*, 32 Cal.2d 480 (1948) ................................................................16

*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996)....................7

*Erlich v. Menezes*, 21 Cal. 543 (1999) ................................................................16

*Gorman v. Wolpoff & Abramson, L.L.P.* ..............................................................14

*Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147 (9th Cir. 2009) .................8

*Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426 (4th Cir. 2004)...........................8

*Jones v. Wachovia Bank*, 230 Cal.App.4th 935 (2014)........................................15

*Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 34 Cal.4th 960
    (2004)..........................................................................................................17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)..............7

*Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47 (2007) .............................................13

*Smith v. Wolf*, 2022 U.S. Dist. LEXIS 206603, 2022 WL 17573917, (S.D. Cal.,
    Nov. 14, 2022, No. 320CV01409JAHJLB) ......................................................17

*United States v. Diebold, Inc.*, 369 U.S. 654 (1962).............................................7

*US Ecology, Inc. v. State of California*, 129 Cal.App.4th 887 (2005)..................16

*Vieste, LLC v. Hill Redwood Dev.*, 2012 U.S. Dist. LEXIS 16064, 2011 WL
    5914019 (N.D. Cal., Nov. 28, 2011, No. C 09-04024 JSW)...........................21

*Wynn v. Monterey Club*, 111 Cal.App.3d 789 (1980)..........................................16

<u>Statutes</u>

15 U.S.C. § 1681n................................................................................................8, 11

15 U.S.C. § 1681s................................................................................................2, 10

Cal. Civ. Code § 2332..........................................................................................17

Cal. Civ. Code § 3333..........................................................................................20

Fed. R. Civ. P. 56.............................................................................................1, 2

OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A.'S MSJ

# MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Brian Horowitz ("Horowitz") hereby submits his opposition to the motion for summary judgment of Defendant Bank of America, N.A. ("BOA" or "Bank")).

## I.    SUMMARY OF ARGUMENT

BOA is not entitled to Summary Judgment on Plaintiff's Fair Credit Reporting Act claims because questions of fact exist as to whether the BOA conducted a reasonable reinvestigation into either of the Plaintiff's Disputes. Moreover, if the Court finds that BOA has violated the Plaintiff's rights under the FCRA, there is a question of fact as to whether that/those violations were negligent or willful.

BOA is not entitled to Summary Judgment on Plaintiff's Promissory Estoppel claims as questions of fact exist as to whether Plaintiff relied upon the Removal Letter and whether that reliance was reasonable and cause him damages.

BOA is not entitled to Summary Judgment on Plaintiff's Fraud Claim. The question of fact in this claim is whether the Bank knew, at the time that it sent the Removal Letter, that it did not intend to remove Horowitz from negative reporting to Chex. The evidence in this case does not make clear whether the Removal Letter was sent before or after Audrey Battle declined Leslie Herrington's causing the bank to issue the Removal Letter. If the evidence shows that Battle declined the request before the letter was sent, this is a classic case of fraud. Only a trial on this issue can ascertain this fact at this point.

## II.    DISPUTED MATERIAL FACTS AND ADDITIONAL FACTS

On April 14, 2023, Plaintiff filed his First Amended Complaint against the Defendants for Negligent and Willful violations of the Fair Credit Reporting Act.

Dkt 31, Claims 1-4.  In 2018, Plaintiff Brian Horowitz was the Chief Executive Officer of an entity called COD USA, INC.  ("COD").  SUF 59.  He never owned any interest in this entity.  Id.

On January 16, 2018, COD's account at Union Bank was served with an out of state garnishment order for $115,000. SUF 3.  To avoid the garnishment, Horowitz directed the emptying of COD's account by purchasing from Union Bank a $70,000 cashier's check payable to Horowitz ("Check").  The Check was purchased with good funds.  SUF 4.  COD was the check's remitter.  SUF 5. Horowitz deposited the check in his personal Bank of America ("BANA") account, ending in 2815.  SUF 7. At the time Horowitz deposited the Check into Account 2815, he also had another account at BOA ending in 6656 ("Account 6656").  Shortly after he deposited the Check into Account 2815, he made several distributions out of that account, believing the Check would be honored by Union Bank.  SUF 8.

On January 17, 2018, Union Bank, without any notice or warning to Horowitz, issued a stop payment order on the Check.  SUF 93.

On January 18, 2018, Horowitz noticed that his Account 2815 at BOA had not been credited for the $70,000 Check.  Horowitz sent an email to Connors inquiring as to why the Check had not yet cleared.  Connors replied to Horowitz stating that "The funds leave the account as soon as the check is issued at the branch. There is still a processing time once it is deposited."  Ex 21.

### i.  UNION BANK'S STOP PAYMENT ORDER CAUSED AN OVERDRAFT OF ACCOUNT 2815

Horowitz played no role in causing Union Bank to issue a stop payment order on the Check.  SUF  93. Resultantly, by February 5, 2018, Horowitz's Account 2815 was overdrawn by $69,316.08.  Ex 17.

### ii.  BANK OF AMERICA PERFORMED AN INITIAL

-2-
OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A.'S MSJ

**INVESTIGATION INTO ACCOUNT 2815**

Christopher Thompson ("Thompson") from BOA's Fraud Team, was assigned to conduct the initial investigation ("Initial Investigation") into the overdraft of Account 2815.  SUF 13.  Horowitz had explained to Thompson that Horowitz did not stop payment on the Check.   SUF 26.

Thompson called Union Bank's customer service department and was informed that "the 'remitter' stopped payment on the Check.   SUF 13.  This was the total investigation that Thompson performed to ascertain who stopped payment on the Check.  SUF 82.  He never knew who stopped payment on it.  SUF 83.  He believed that Horowitz was the remitter even though the face of the Check shows that COD was the remitter.  SUF 17.

Thompson pursued Horowitz to pay out another $70,000 to bring Account 2815 into a positive status.  SUF 11.  When Horowitz could not pony up, Thompson caused BOA to report Horowitz to Chex as having engaged in "Suspected Fraud Activity" related to Account 2815.  SUF 82.   BOA took this action, "punitively" against Horowitz for not coming up with the additional $70,000 on demand.  SUF 72.

### iii. UNION BANK SUBSEQUENTLY HONORS THE CHECK

A day after reporting Horowitz to Chex for suspected fraud activity, Thompson asserted the Bank's rights as Holder in Due Course against Union Bank and demanded payment on the Check.  SUF 18, 85.  Union Bank ultimately made the Check good and paid the $70,000 to Bank of America on June 1, 2018.  SUF 22.  Thompson knew, since the day that the Bank received the Check, that it would be paid by Union Bank.  SUF 94.

### iv. HOROWITZ'S FIRST DISPUTE TO CHEX SYSTEM RESULTS IN NO REINVESTIGATION BY BANK OF AMERICA.

On July 28, 2021, Mr. Horowitz's account at Orange County Credit Union

OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A.'S MSJ

was closed due the reporting of Suspected Fraud Activity by BOA. SUF 24. On August 17, 2021, Horowitz disputed BOA's reporting of "suspected fraud activity" with Chex ("First Dispute"). In turn, Chex sent a Request for Reinvestigation to BOA. Ex 15. In his First Dispute to Chex, Horowitz stated he did not cause the stop payment order to be issued on the Check. Ex 15 and SUF 25, 26.

Carly Adams, on behalf of BOA responded to the First Dispute. However, she did not perform any reinvestigation. SUF 27. She did not know who stopped payment on the Check. SUF 89. She merely filled in what the Bank's RISC Department had told her to. Id. She did not even know what "Suspected Fraud Activity" meant. Id. She did not know what behavior caused the Bank to report Horowitz to Chex or how Horowitz breached any account agreement with the Bank. Id. She admitted that she did not have sufficient information to respond to the BOA Request for Investigation. Id.

### v. The Standard for Reporting a Consumer to Chex for Suspected Fraud Activity.

Suspected Fraud Activity is defined as a violation of account privileges or furnisher policies allegedly to obtain unauthorized benefits or rights which has risen to the level of suspected fraud activity. SUF 55. A consumer being reported for suspected fraud activity is a very serious notation to place on one's Chex report. SUF 56. Determining whether Horowitz stopped payment on the Check was critical to the resolution of his dispute. SUF 57. Chex admitted that if the facts show that Union Bank and not Horowitz, stopped payment on the Check, as it was Union Bank's fault alone that the stop payment order was issued, then Horowitz should NOT have been reported as suspected fraud activity. SUF 58.

### vi. BANK OF AMERICA'S INTERPRETATION OF ITS REINVESTIGATIVE DUTIES UNDER THE FCRA ARE WRONG.

Kevin Williams, another FRCP 30(b)(6) witness for Bank of America,

-4-

OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A.'S MSJ

testified as to the reinvestigations performed by BOA.  SUF 69.  The bank only conducts a reinvestigation if new information is provided in connection with the consumer's dispute.  SUF 70.  He testified that because Horowitz provided no new actionable information, the original decision stands."  SUF 71.

### vii. BANK OF AMERICA ATTEMPTED TO WITHDRAW THE SUSPECTED FRAUD ACTIVITY DESIGNATION AGAINST HOROWITZ, BUT BUNGLED THE PROCESS.

On or about December 31, 2021, Herrington, a fraud analyst for the bank attempted to remove Horowitz from the Chex system.  Id.  She sent her formal request to remove Horowitz from Chex to another bank employee, Audrey Battle, who is in charge of reporting to Chex.   SUF 32, 40.  Battle declined Herrington's request because Herrington's request recited the incorrect account number, Account 6566. SUF 40.  The Bank sends an automated email to analysts like Herrington, whose requests for removal from Chex are denied by Battle.  SUF 65.

At the time she denied the request, Battle was aware that only Account 2815 and not 6566 had been reported about Horowitz to Chex. SUF 42.  Battle also knew that Horowitz had been reported to Chex for Account 2815 and not 6566. SUF 91.  She also was aware that financial institutions can refuse to open accounts for consumers reported to Chex and close accounts on consumers.  SUF 73, 74.  Battle never followed with Herrington to find out why she had asked Battle to remove an account that was never reported to Chex.  SUF 91.

### viii. THE BANK ISSUES A LETTER TO HOROWITZ AGREEING TO REMOVE THE NEGATIVE REPORTING TO CHEX.

On January 5, 2022, Bank of America issued a letter to Horowitz agreeing to remove him from negative reporting from Chex, ("the Removal Letter") but the

letter recited the incorrect account number of 6566 instead of 2518.  Ex 13. Herrington admitted that she made a mistake by reciting the wrong account number in the creation of the Removal Letter.  SUF 80.  The purpose of the Removal Letter was to advise Horowitz that BOA was going to remove the negative reporting about him to Chex Systems.  SUF 33.

On September 29, 2022, Horowitz relied on the accuracy of the Removal Letter and attempted to open a new bank account at NuVision Federal Credit Union.  SUF 66 and 68.  He was embarrassed when he was turned down by NuVision due to the Chex item that continued to appear on his consumer credit file.  SUF 82.  Horowitz was unable to secure credit with any traditional bank because of the Bank of America item appearing on his Chex report.  SUF 63,64, 66 and 67.

### ix.  PLAINTIFF SENT A SECOND DISPUTE LETTER TO CHEX

On September 30, 2022, Horowitz sent a second Dispute Letter to Chex ("Second Dispute").  This time, he attached a copy of the  Removal Letter.  Ex 16.  This request was responded to by Michael Pankowski.  Id.

Pankowski reviewed the Bank of America Removal Letter but disregarded it because he could not "verify" its validity.  SUF 76.  He also saw Herrington's note which said "Fraud ops – Deposit Fraud Detection Delete. (Leslie Herrington 01/05/2022)."  He did not understand what Herrington's note meant, so he simply disregarded that, too. SUF  77.  He never contacted Herrington for clarification.  SUF 78.  He had no idea why BOA reported Plaintiff as having engaged in suspected fraud activity.  SUF 79.  He simply took the Bank's internal notes and confirmed that the reporting of Plaintiff as having engaged in suspected fraud activity was accurate.  Id. He then confirmed the accuracy of the negative reporting to Chex about Horowitz.  SUF 51.

OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A.'S MSJ

## III.    STANDARD FOR DECIDING A MOTION FOR SUMMARY JUDGMENT

A court renders summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of informing the court of the basis for its belief that there is an absence of a genuine issue for trial and of identifying those portions of the record that demonstrate such absence.  *Celotex*, 477 U.S. at 323.

However, all evidence and reasonable inferences made must be viewed in the light most favorable to the party opposing the motion.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.  Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986).

The party defending against the motion for summary judgment cannot defeat the motion unless he provides specific facts that demonstrate a genuine issue of material fact such that a reasonable jury might return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).  Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment.  *Id.* at 249–50.  In other words, conclusory statements, speculation, and unsubstantiated assertions will not suffice to defeat a motion for summary judgment.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).  Further, a court has no duty to search the record for evidence of a genuine issue.  Fed. R. Civ. P. 56(c) (1), (3).

OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A.'S MSJ

## IV.   A FURNISHER'S DUTY TO CONDUCT A REASONABLE REINVESTIGATION REQUIRES SOME DEGREE OF CAREFUL INQUIRY BY A CREDITOR.

The Fair Credit Reporting Act ("FCRA) at 15 U.S.C. § 1681s-2(b) imposes a duty upon a furnisher of information to conduct an investigation in response to a consumer's dispute as follow:

> *In general.* After receiving notice pursuant to section 611(a)(2) [§ 1681i] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall:
>
> (A)  conduct an investigation with respect to the disputed information;
>
> (B)  review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [§ 1681i];
>
> (C)  report the results of the investigation to the consumer reporting agency;

The plain meaning of "investigation" clearly requires some degree of careful inquiry by creditors.  15 U.S.C. § 1681s–2(b)(1) requires creditors, after receiving notice of a consumer dispute from a credit reporting agency, to conduct a reasonable investigation of their records to determine whether the disputed information can be verified.  *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430-431 (4th Cir. 2004).

Bank of America may not limit its investigation to only that information supplied by Chex.  **By its ordinary meaning, an "investigation" requires an inquiry likely to turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review of the dispute**.  *Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1155 (9th Cir. 2009*)* (emphasis added).

## V.   ARGUMENT

A. <u>BOA Is Not Entitled To Summary Judgment On Plaintiff's Fair Credit Reporting Act Claims As It Failed To Conduct A Reasonable Reinvestigation Into Both Of Plaintiff's Disputes.</u>

-8-

OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A.'S MSJ

### i. BOA Never Had Any Basis To Ever Report Horowitz To Chex As Having Engaged In Suspected Fraud Activity.

Suspected Fraud Activity is "[A] violation of account privileges or furnisher policies allegedly to obtain unauthorized benefits or rights which has risen to the level of suspected fraud activity." SUF 55. A consumer being reported for suspected fraud activity is a very serious notation to place on one's Chex report. SUF 56. BOA was required to determine who stopped payment on the Check before it could report Horowitz as having engaged in suspected fraud activity. SUF 57. If the facts showed that Union Bank stopped payment on the Check and not Horowitz, then Horowitz should **_not_** have been reported to Chex as having engaged in Suspected Fraud Activity. SUF 58. Unfortunately, BOA never made this determination prior to reporting him to Chex. SUF 83. Indeed, Union Bank, without Horowitz's prior knowledge, unilaterally stopped payment on the Check. SUF 93. Hence, BOA should never have reported Horowitz to Chex for having engaged in suspected fraud activity.

Chris Thompson never determined who issued the stop payment order. SUF 83. Horowitz informed Thompson that he did not stop payment on the Check. SUF 26. Thompson's sole investigation into this question was from a single phone call with Union Bank's customer service department. SUF 82. He was "referred to the remitter of the Check." *Id*. The Check itself shows that COD USA, Inc. was the remitter. SUF 5 and Ex 14.

When Union Bank stopped payment on the Check, Horowitz's account with BOA ("Account 2815") was overdrawn. Ex 17. This was not his fault, and there was nothing he could have done to have prevented this. He was not given any advance notice by Union Bank that it intended to issue a stop payment on its own cashier's check. SUF 93. Because Horowitz could not pay an additional $70,000, BOA reported him to Chex as having engaged in suspected fraud activity. The Bank took this action punitively against Horowitz. SUF 72.

-9-

OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A.'S MSJ

### ii. BOA's Attempt To Avoid The "Suspected Fraud Activity" Standard.

BOA asserts that "Horowitz does not and cannot dispute that Thompson actually suspected fraudulent activity…." Dkt 50-1, p 8:23-26. This is not the standard set forth by Chex to report Horowitz for suspected fraud activity. The standard for reporting Horowitz is whether "[A] violation of account privileges or furnisher policies allegedly to obtain unauthorized benefits or rights which has risen to the level of suspected fraud activity." SUF 55. The critical question that BOA was required to resolve before reporting Horowitz to Chex was who issued the stop payment order on the Check. SUF 57. Thompson never resolved this question, even through the date of his deposition in this case. SUF 83.

### iii. Horowitz's Transfer Of The $70,000 From Union Bank To BOA Was Not A Fraudulent Transfer And Still Does Not Satisfy The Standard Required To Report Him To Chex.

BOA, for the first time, is now accusing the Plaintiff of a fraudulent transfer by moving $70,000 from COD's account at Union Bank to his personal account at Bank of America. Dkt 50-1 p 9:6-17. This position is completely untenable for two reasons. First, this defense was never offered in BOA's Answer to the First Amended complaint and should not be entertained now. Dkt 33. To do so otherwise, would be litigation by ambush.

Secondly, this position avoids the standard required by Chex; whether BOA had information to show that Horowitz committed a violation of account privileges or furnisher policies allegedly to obtain unauthorized benefits or rights which has risen to the level of suspected fraud activity." SUF 55.

### iv. BOA Never Performed Any Reinvestigation Into Plaintiff's First Dispute.

On August 17, 2021, Horowitz disputed BOA's reporting of "suspected fraud activity" with Chex ("First Dispute"). Chex forwarded this Request to BOA.

-10-
OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A.'S MSJ

Ex 15.  In this dispute, Horowitz stated he did not cause the stop payment order to be issued on the Check.  *Id.*

Horowitz's dispute was responded to by Carly Adams at BOA. SUF 27. At the time that she responded to this dispute, she did not know:

      a.    who stopped payment on the Check;  SUF 89.

      b.    what "suspected fraud activity" meant; *Id.*

      c.    what fraud was committed that caused BOA to close Horowitz's account; *Id.*

      d.    what behavior caused the bank to report Horowitz for suspected fraud activity; *Id.*

      e.    how or if Horowitz breached the account agreement.  *Id.*

Adams relied exclusively on what was told to her by the RISC Department.  *Id.*  She admitted that she did not have sufficient information to tell her that the account should have been closed due to suspicious fraud activity.  *Id.*

### v.  BOA Failed To Perform A Reasonable Reinvestigation Into Plaintiff's Second Dispute.

On September 30, 2022, Horowitz sent a second Dispute Letter to Chex ("Second Dispute").  Ex 16.  He attached a copy of the January 5, 2022 letter ("Removal Letter") stating that the Bank would remove Horowitz from negative reporting.  Ex 13.

In his dispute, Horowitz informed the Bank that he had resolved the issue and the Bank agreed to remove the negative information. Ex 16.  This dispute was responded to by Michael Pankowski on behalf of BOA.  Pankowski reviewed the Removal Letter but disregarded it because he could not "verify" its validity.  SUF 76.  He also saw Herrington's note which said "Fraud ops – Deposit Fraud Detection Delete. (Leslie Herrington 01/05/2022)."  He did not understand what Herrington's note meant, so he simply disregarded that, too.  SUF 77.  He never contacted Herrington for clarification.  SUF 78.  He had no idea why BOA reported

Plaintiff as having engaged in suspected fraud activity. SUF 79. He simply took BOA's internal notes and confirmed that the reporting of Plaintiff as having engaged in suspected fraud activity was accurate. SUF 79. He then confirmed the accuracy of the negative reporting to Chex about Horowitz. Ex 16.

### vi. BOA's Policies Prevented It From Conducting Any Reinvestigation Unless New Information Is Provided By The Customer.

Kevin Williams testified that BOA conducts a reinvestigation only if "new information" is provided in connection with the consumer's dispute. SUF 70. Since Horowitz provided no new information, the Bank relied on the original determination. SUF 71. This is contrary to the requirement of a reasonable reinvestigation required of a furnisher under the FCRA at 15 U.S.C. § 1681s-2(b). There is no such requirement that a consumer provide "new information" to trigger a furnisher's duty to conduct a reasonable reinvestigation. *Id.*

### B. BOA Is Liable To Plaintiff For Its Willful Violations Of The FCRA.

### i. Standard For A Willful Violation Of The FCRA

The FCRA provides for civil liability at 15 U.S.C. § 1681n as follows:

(a) In general. Any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of

(1) (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or

(B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;

(2) such amount of punitive damages as the court may allow; and

-12-
OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A.'S MSJ

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

In *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 52 (2007)*,* the Supreme Court held that reckless disregard of a furnisher's duties under the FCRA is a willful violation of the statute.  The Court established an objective standard of recklessness in civil cases generally, defining recklessness as "action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known. *Id at 68*. With specific reference to statutory mandates, the Court held that "a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless. *Id.* at 69.

### ii.  BOA's Violations Of The FCRA Were Willful

BOA only performs a reinvestigation *if* the consumer presented "new information that was "actionable."  SUF 70.  This is not what the statute requires. When a consumer posits a dispute, a furnisher must conduct a reasonable reinvestigation.  15 U.S.C. § 1681s-2 (b).  This requirement is not conditioned on anything, let alone the consumer providing "new information that is actionable." In this case, BOA conducted no reinvestigation into either of Plaintiff's disputes. SUF 71.

Likewise, in response to Horowitz's Second Dispute, BOA had two pieces of information showing that Horowitz should not have been reported as having engaged in suspected fraud activity: (1) the Removal Letter Ex 13 and (2) Herrington's internal note to delete the negative reporting.  SUF 77.  Both of these were simply disregarded by BOA.  SUF 76, 77.  In connection with Plaintiff's Second Dispute, Pankowski could have contacted Herrington to find out what her

-13-
OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A.'S MSJ

note meant in the Bank's system. He refused to do so. SUF 78. He simply scribbled the Bank's response to Horowitz's Second Dispute and wrongfully confirmed the accuracy of the negative information. Ex 16.

Both of these investigations failed to meet the definition of an investigation as set forth by the *Gorman* court. Neither of these reinvestigations involved any inquiry likely to turn up information about the underlying facts and positions of the parties, as the law requires. BOA is not entitled to Summary Judgment on the Plaintiff's FCRA claims. In fact, Plaintiff is entitled to partial summary judgment on his claims under Count II of his First Amended Complaint for Willful Violation of the Fair Credit Reporting Act at 15 U.S.C. § 1681n.

### iii. Plaintiff Is Entitled To Damages For Lost Profits For Businesses He Was Prevented From Opening Due To The False Reporting By BOA.

When BOA's negative reporting reached Horowitz's Chex report, his business and personal accounts were closed at Orange County's Credit Union. Ex 18 and SUF 24. Horowitz owned over 50 domain names that he intended to finance for new business ventures. SUF 61. He intended to open at least a dozen businesses. SUF 62. However, in order to finance any of these, he needed a loan from the Small Business Administration ("SBA"). SUF 63. Unfortunately, the SBA requires its borrowers to engage a "partner bank" to obtain the loan for that SBA would guarantee. *Id.* Due to BOA's continued reporting to Chex, Horowitz was prevented from obtaining such a loan. SUF 64. Ironically, he has had an SBA loan with Bank of America in the past. SUF 65.

Horowitz's inability to open new businesses because of incorrect information reported on his personal credit report is a recoverable damage under the FCRA. *Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1069 (11th Cir. 2008. See also *Gorman v. Wolpoff & Abramson, L.L.P.*, *supra*, 584 F.3d at 1174 (rejecting argument that there was insufficient evidence of damages, in part because

-14-
OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A.'S MSJ

consumer who hoped to start business was refused credit or offered higher than advertised interest rates due to delinquencies on his credit report).

Horowitz's accounts at Orange County's Credit Union were closed when it learned that he had been reported to Chex. SUF 24. He attempted to open accounts at NuVision Credit Union after BOA sent him the Removal Letter. SUF 66. However, despite the assurances in the Removal Letter, BOA still had reported him to Chex. NuVision refused to open new accounts for him as well. *Id.* and Ex 23. Without the ability to open new accounts, he could not pursue his business ventures. SUF 67. To be sure, Horowitz was able to reopen his accounts at Orange County CU after BOA removed the negative reporting to Chex during this case. SUF 87.

C. The Facts Of This Case Support Plaintiff's Promissory Estoppel Claim.

**i. Plaintiff Reasonably Relied On BOA's Promise to Remove Negative Reporting.**

California has adopted the Restatement Second of Contracts doctrine of promissory estoppel: "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee … and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." The doctrine "employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced."' Promissory estoppel binds a promisor " 'when he should reasonably expect a substantial change of position, either by act or forbearance, in reliance on his promise, if injustice can be avoided only by its enforcement.'" *Jones v. Wachovia Bank*, 230 Cal.App.4th 935, 944 (2014).

Horowitz justifiably relied on the Removal Letter when he visited NuVision to open new business and personal accounts. SUF 68. He opened these accounts in the morning. That same afternoon, he was summoned back to the credit union,

-15-
OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A.'S MSJ

escorted into the manager's office and humiliated when she declined to open his accounts because he still appeared on the Chex report from BOA. SUF 66.

### ii. Emotional Distress Damages Are Recoverable In Promissory Estoppel Cases Such As Plaintiffs Has Presented.

Cases have characterized promissory estoppel claims as being basically the same as contract actions, but only missing the consideration element, and therefore the damages recoverable logically are, like in a contract case, limited to those caused by the breaching party.  As one court stated, while " '[c]onceptually, promissory estoppel is distinct from contract in that the promisee's justifiable and detrimental reliance on the promise is regarded as a substitute for consideration required as an element of an enforceable contract[,] [t]here appears to be no rational basis for distinguishing the two situations in terms of the damages that may be recovered … .' " [Citation].  *US Ecology, Inc. v. State of California*, 129 Cal.App.4th 887, 903 (2005).

The "traditional rule . . . [provides] that damages are not recoverable for mental suffering resulting from a breach of contract."  *Wynn v. Monterey Club*, 111 Cal.App.3d 789, 799 (1980).  However, emotional distress damages may be recoverable when "the express object of the contract is the mental and emotional well-being of one of the contracting parties." *Erlich v. Menezes*, 21 Cal. 543, 559 (1999) (citations omitted).  As the California Supreme Court explained in justifying emotional distress damages for a breach of contract claim, "[w]henever the terms of a contract relate to matters which concern directly the comfort, happiness, or personal welfare of one of the parties, or the subject-matter of which is such as directly to affect or move the affection, self-esteem, or tender feelings of that party, he may recover damages for physical suffering or illness proximately caused by its breach." *Chelini v. Nieri*, 32 Cal.2d 480, 482 (1948); *Smith v. Wolf*,

2022 U.S. Dist. LEXIS 206603, *5-6, 2022 WL 17573917, at *2 (S.D. Cal., Nov. 14, 2022, No. 320CV01409JAHJLB).

In this case, the Removal Letter was intended by the Bank to assure Horowitz that it had or would take action to remove negative reporting about him from his personal credit report at Chex.

BOA's letter relates to Horowitz's personal use of credit. To this extent that the promise made by the bank affected Horowitz ability to obtain personal credit, it equally and directly affected his comfort, happiness, or personal welfare as outlined in by *Smith*. Plaintiff is entitled to emotional damages for BOA's violation of its promise to have the negative information removed from his Chex report within "10 business days."

### iii.  Plaintiff's Damages Due To BOA's Breach Of Its Promise Were Foreseeable To BOA.

BOA attempts to avoid damages under Horowitz's Promissory Estoppel claim by citing the Hadley Rule. The Hadley case is not relevant as its from 1854 and from outside the Ninth Circuit. A more relevant case that is relied upon by the Defendant is *Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 34 Cal.4th 960, 968-969 (2004), which held:

> Special damages are recoverable if the special or particular circumstances from which they arise were actually communicated to or known by the breaching party (a subjective test) or were matters of which the breaching party should have been aware at the time of contracting (an objective test).

This standard only requires that such damages are known by the breaching party or were matters to which it should have been aware. In this case, BOA was keenly aware of the damages that would have befallen Horowitz due to its failure to honor its promise to remove Horowitz from Chex.

When Audrey Battle declined to remove Horowitz from Chex, she was aware that financial institutions can refuse to open accounts for a consumer who

-17-
OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A.'S MSJ

so reported.  SUF 73.  She was also aware that banks can close accounts for consumers who are reported to Chex.  SUF 74.  BOA was well aware of the consequences that befall a consumer who is reported to Chex.  Horowitz did not need to inform BOA of the damages that he suffered as BOA already was aware of these.

Horowitz's lost business profits and opportunities are special damages that arise directly and inevitable from a similar breach of promise is misleading.  Indeed, Horowitz had previously obtained an SBA loan with BOA as his partner bank.  SUF 65.  BOA knew that Horowitz was a business owner as it closed both personal and business accounts that he had with it.  It was also keenly aware of the consequences that befall a consumer who is flagged in Chex as this is line of business in which this bank engages; commercial lending.  SUF 73, 74.

### D. The Facts Of This Case Support Plaintiff's Fraud Claim.

The elements of fraud, which give rise to the tort action for deceit, are (1) misrepresentation (false representation, concealment, or nondisclosure), (2) knowledge of falsity (or "scienter"), (3) intent to defraud (i.e., to induce reliance), (4) justifiable reliance, and (5) resulting damage.  *Lazar v. Superior Court*, 12 Cal.4th 631, 634 (1996).

BOA incorrectly believes that the facts do not show that Horowitz can prove the second, third, and fourth elements of this case.  For the following reasons, BOA is wrong.

**i. There is a Question of Fact as to when BOA Knew that It Had No Intention of Removing him from Chex.**

BOA is a large institution with many different individuals who perform varying tasks. Cal. Civ. Code § 2332 states: "As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other."  The knowledge of Battle and Herrington are both attributable to BOA.

-18-
OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A.'S MSJ

Herrington knew that that the Bank had sent Horowitz the Removal Letter stating that BOA had asked Chex to remove him and that he will receive that benefit within 10 business days. SUF 81. Equally true is Battle's knowledge that she declined Herrington's request to remove Horowitz from Chex.  SUF 40.  As BOA is a single institution, the knowledge of both of these employees was ascribed to it.  BOA promised to remove Horowitz from Chex while, at the same time, it had refused to do so. BOA's unsupported statement that "Horowitz cannot show that BANA, Herrington, or Battle knew, at the time the letter was generated and sent, that Herrington's request would be rejected. Battle took that step only afterwards" is false and irrelevant for two reasons.  Dkt 50-1 19:18-20.  This is a question of fact because the evidence in this case does not make clear whether the Removal Letter was sent to Horowitz before or after Battle declined Herrington's request to remove Horowitz from Chex.  If the Removal Letter was sent to Horowitz after Battle declined Herrington's request, then this is the scienter required to show that BOA defrauded Horowitz. Neither party has produced evidence to show timing of these events.  This is a question left for the jury.

### ii. During This Litigation, BOA Was Again Presented With The Removal Letter And Again Declined To Remove Plaintiff From Negative Reporting.

Any doubt about the existence of scienter was removed when, in the course of this litigation, Plaintiff's counsel brought the Removal Letter to the attention of Defense counsel via email. Ex 19 and SUF 95.  Defense counsel said that he would present it to BOA.  The very next day Defense counsel said that BOA still refused to remove the negative information.  Ex 19 and SUF 96.  This would tend to show that BOA never had any intention of removing Horowitz from Chex and would support his claim for Fraud.

-19-
OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A.'S MSJ

BOA eventually relented and removed Horowitz from Chex on March 28, 2023, during the course of this case.  Ex 20.  Moreover, BOA did not do remove it on its own; it was instructed to do so by counsel.  SUF 75.

### iii. The Removal Letter Was Specifically Intended To Induce Reliance By Plaintiff.

The Removal Letter stated: "You can use this letter as documentation that the request has been submitted." Ex 13.  This statement shows that BOA intended Horowitz to show this letter to any financial institution that he had been removed from negative reporting to Chex.  There is no other entity to which he would have a need to show this letter to other than a financial institution which would decline opening new accounts for him due to the reporting to Chex.

### iv. Plaintiff Justifiably Relied On The January 5 Letter And Suffered Even More Damage.

Horowitz justifiably relied on the Removal Letter when he visited NuVision Credit Union to open new accounts.  SUF 68.  The credit union opened new accounts for him that morning.  SUF 66.  In the afternoon, he summoned back to the credit union, ushered into the manager's office and tossed out because BOA had continued to report him to Chex.  *Id.*  He was embarrassed and mortified and made to feel like a criminal.  SUF 82.

Contrary to BOA's unsupported allegation, Horowitz did not notice that the Removal Letter recited the wrong account number.  Again, BOA has made an allegation that is unsupported by any testimony or evidence in this case.  The fact that Horowitz did not notice the account number referenced on the letter is understandable given that (1) BOA only reported Account 2815 to Chex and no other account and (2) both of Horowitz's disputes were aimed at Account 2815 and (3) BOA intended to remove Horowitz from negative reporting from Chex. SUF 33.

-20-
OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A.'S MSJ

Again, BOA is attempting to victimize Horowitz and hold him accountable for another one of its many "glitches."  Herrington earnestly took responsibility for the fact that the Removal Letter recited the wrong account number.  SUF 80. BOA contemptibly refers to Horowitz's failure to double check BOA's accuracy in its own letter  as "blind faith."  Dkt 50-1, p 20, ln 27.  In reality, this was "justifiable reliance."  Blind faith would imply the Horowitz have had some reason to not trust his own bank.

### v. Horowitz's Business Losses Are Sustainable Under His Fraud Claim.

Under California law, "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."  Cal. Civ. Code §1709.  California law also provides that "[f]or the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."  Cal. Civ. Code § 3333; *see Vieste, LLC v. Hill Redwood Dev.*, 2012 U.S. Dist. LEXIS 16064, 2011 WL 5914019, at *9-10 (N.D. Cal., Nov. 28, 2011, No. C 09-04024 JSW).

The Bank alleges that Horowitz cannot sustain his claim for business losses because the only act he took, in reliance on the January 5 letter, was to apply to open accounts at NuVision Credit Union.  Dkt 50-1, p 21:17-20.  Even if this was the only application that he had made, this does not vitiate the fact that he justifiably relied on the promise contained January 5 letter and it turned out to be false, nine months later.  This situation showed the proximate cause, which BOA is attacking, between Horowitz's reliance on the Removal Letter and the falsity of the information contained in it.  This one instance is enough to prove Horowitz's business damages as he intended to open personal and business accounts at NuVision.  There is no requirement under the law for Horowitz to repeatedly

-21-
OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A.'S MSJ

attempt to open bank accounts at other financial institutions, only to get thrown out as he had at NuVision.

## VI.    CONCLUSION

BOA's Motion for Summary Judgment as to Horowitz's claims for Violation of the Fair Credit Reporting Act should be denied.  The evidence shows that the Bank never conducted any reasonable reinvestigation.  Its institutional policies prevent it from doing so.  Its original investigation never resolved the critical question of who caused a stop payment order to be issued on the Check.  The evidence in this case shows that Union Bank, alone and without any prior notice to Horowitz, issued that stop payment order.

BOA's Motion for Summary Judgment as to Horowitz's Promissory Estoppel Claim should be denied.  The evidence in this case proves that Horowitz justifiably relied upon BOA's misrepresentations in its January 5 letter and to his detriment.  He was thrown out of NuVision Credit Union despite BOA's representations that it had removed negative reporting about him.  Even worse is, when its own counsel was presented with this letter in the course of this litigation, it again refused to remove Horowitz from Chex.

Finally, BOA's Motion for Summary Judgment as to Horowitz's Fraud Claim should be denied.  Horowitz has proven that he, in fact, should be granted summary judgment on this claim as BOA knew, even after this lawsuit was started, that it was reporting false information about him to Chex.

Dated: February 27, 2024        By: /s/ James W. Kirby
                                    James W. Kirby
                                    Gary A. Hansz
                                    Attorneys for Plaintiff,
                                    Brian Horowitz

-22-
OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A.'S MSJ

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Brian Horowitz certifies that this brief contains 6722 words, which complies with the word limit of L.R. 11-6.1.

Dated: February 27, 2024        By: /s/ James W. Kirby

James W. Kirby
Gary A. Hansz
Attorneys for Plaintiff,
Brian Horowitz

-23-
OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A.'S MSJ