James W. Kirby (State Bar No. 304136)
james@aklawgroup.net
AK Law Group
10850 Wilshire Blvd., Suite 301
Los Angeles, CA 90024
(530) 308-3097

Gary A. Hansz (*Pro Hac Vice*)
gary.hansz@crlam.com
Credit Repair Lawyers of America
39111 Six Mile Road, Suite 142
Livonia, MI 48152
(248) 353-2882

Attorneys for Plaintiff,
Brian Horowitz

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN HOROWITZ, | Case 8:22-cv-02002-DFM |
| Plaintiff, | OPPOSITION TO DEFENDANT CHEX SYSTEMS, INC.'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| CHEX SYSTEMS, INC., et al., | |
| Defendants. | Hearing<br>Date:      March 19, 2024<br>Time:      10:00 a.m.<br>Ctrm.:      6B |

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ iii

MEMORANDUM OF POINTS AND AUTHORITIES..........................................1

I.    SUMMARY OF ARGUMENT..................................................................1

II.   DISPUTED MATERIAL FACTS AND ADDITIONAL FACTS ...........1

III.  STANDARD FOR DECIDING A MOTION FOR SUMMARY JUDGMENT..........................................................................................4

IV.   LAW AND ARGUMENT ........................................................................5

V.    CHEXSYSTEMS IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FCRA CLAIMS AS QUESTIONS OF FACT EXIST AS TO WHETHER CHEX PREPARED CREDIT REPORTS REGARDING THE PLAINTIFF WITH REASONABLE PROCEDURES TO ASSURE MAXIMUM POSSIBLE ACCURACY..5

A.   Standard for Preparing Credit Reports. ..................................................5

B.   ChexSystems Procedures for Preparing Horowitz' Credit Reports Must be Reasonable and Present a Question of Fact. ..........................5

C.   Horowitz's Credit Reports Prepared by ChexSystems were Inaccurate as he never met the standard for being reported to Chex as having engaged in Suspected Fraud Activity. ................................................7

D.   ChexSystems' policies and procedures are not reasonable and do not comply with the statute. ........................................................................8

VI.   CHEXSYSTEMS' REINVESTIGATION OF PLAINTIFF'S DISPUTES PRESENT A QUESTION OF FACT PRECLUDING SUMMARY JUDGMENT..................................................................8

A.   Standard for Credit Reporting Agency's duty to Reinvestigate. ..........8

B.   A CRA is permitted to rely on a furnisher, so long as it has no basis to question or doubt its reliability..............................................................9

OPPOSITION TO DEFENDANT CHEX SYSTEMS, INC.'S MSJ

i.    ChexSystems had substantial reason to doubt the accuracy of the information supplied by BOA in Horowitz's First Dispute. ..........10

ii.    ChexSystems had substantial reason to doubt the accuracy of the information supplied by BOA in Horowitz's Second Dispute.......11

C.    If ChexSystems had Properly Investigated Horowitz's Disputes and had taken further investigative steps, whether the results would have been Different is a Question of Fact.................................................12

D.    ChexSystems Attempts to Misconstrue Its Own Standard for Reporting a Consumer as Having Engaged in Suspected Fraud Activity.......................................................................................13

E.    ChexSystems Reliance on the Kestenburg case is misplaced. ...........13

VII.    HOROWITZ IS ENTITLED TO DAMAGES FOR LOST PROFITS FOR BUSINESSES HE WAS PREVENTED FROM OPENING DUE TO THE FALSE REPORTING BY CHEXSYSTEMS.........................14

VIII.    PLAINTIFF'S RIGHT TO STATUTORY AND PUNITIVE DAMAGES IS A QUESTION OF FACT FOR THE JURY, PRECLUDING SUMMARY JUDGMENT. .......................................15

A.    ChexSystems' Violations of the FCRA could be viewed as willful, entitling the Plaintiff to Statutory and Punitive Damages, and thus, precluding Summary Judgment........................................................16

Conclusion......................................................................................................16

CERTIFICATE OF COMPLIANCE...............................................................19

OPPOSITION TO DEFENDANT CHEX SYSTEMS, INC.'S MSJ

# TABLE OF AUTHORITIES

Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...........................................5

*Bryant v. TRW, Inc.,* 487 F. Supp. 1234 (E.D. Mich. 1974)................................10

*Cahlin v General Motors Acceptance Corp.,* 936 F.2d 1151, 1156 (11th Cir 1991 6

*Campbell v. Chase Manhattan Bank*, 2005 WL 1514221 (D.N.J. June 27, 2005)10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). ......................................................4

*Dennis v. BEH-1, LLC,* 520 F.3d 1066, 1069 (11th Cir 2008)..............................14

*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996)...................5

Edeh v. Equifax Info. Servs., LLC, 919 F. Supp. 2d 1006, 1012 (D. Minn. 2013) ......................................................................................................................13

*Gorman v. Wolpoff & Abramson, L.L.P.,* 584 F.3d 1147, 1174 (9th Cir. 2009)...15

*Guimond v. Trans Union Credit Information Co.* 45 F.3d 1329, 1333  (9th Cir. 1995)..........................................................................................................6

*Henson v. CSC Credit Services*  29 F.3d 280, 285 (7th Cir. 1994) ........................9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)..............5

*McIntyre v. RentGrow, Inc.*, 34 F.4th 87, 97–98 (1st Cir. 2022)...........................6

*Mullins v. Equifax Info. Serv., L.L.C.*, 2007 WL 2471080 (E.D. Va. Aug. 27, 2007)..........................................................................................................9

*O'Brien v. Equifax Info. Serv., L.L.C.,* 382 F. Supp. 2d 733, 739 (E.D. Pa. 2005).6

*See Guimond, 45 F.3d at 1332-33*................................................................15

*United States v. Diebold, Inc.*, 369 U.S. 654 (1962)...............................................4

*United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).......................................4

Statutes

15 U.S.C.A. § 1681n.............................................................................................16

15 USC §1681e.....................................................................................................17

-iii-

OPPOSITION TO DEFENDANT CHEX SYSTEMS, INC.'S MSJ

15 USC §1681i ...................................................................................................8

15 USC 1681e(b) ...............................................................................................5

Fed. R. Civ. P. 56..........................................................................................4, 5

<u>Other Authorities</u>

*FTC Staff Summary § 611(a) item 2* (2011)....................................................9

*In re Equifax, Inc.*, 96 F.T.C. 1045 (F.T.C. 1980) ...........................................9

OPPOSITION TO DEFENDANT CHEX SYSTEMS, INC.'S MSJ

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      SUMMARY OF ARGUMENT

Plaintiff made two disputes to ChexSystems, Inc. ("Chex" or "ChexSystems") regarding false information that was reported on his ChexSystems Report.  In each instance, Chex merely relied upon what the furnisher, Bank of America ("BOA"), had originally said about the disputed information and conducted no reinvestigation.  Chex merely relies upon its furnishers to provide accurate information.  Plaintiff brought claims for violation of the Fair Credit Reporting Act against Chex in Counts III and IV for Negligent and Willful violation of 15 U.S.C. §1681e(b) and i.

Chex has filed for Summary Judgment as to these claims stating that there is no genuine issue of any material fact.  The evidence in this case shows that whether Chex assembled credit reports with reasonable policies and procedures to assure maximum possible accuracy as required by 15 U.S.C. §1681e(b) is a question of fact.  Moreover, the question of whether Chex performed a reasonable reinvestigation into Plaintiff's disputes as required by 15 U.S.C. §1681i is also a question of fact.  These questions of fact preclude Chex's Motion for Summary Judgment.

### II.     DISPUTED MATERIAL FACTS AND ADDITIONAL FACTS

On April 14, 2023, Plaintiff filed his First Amended Complaint against ChexSystems for Negligent and Willful violations of the Fair Credit Reporting Act.  Dkt 31, Claims 3-4.  In 2018, Plaintiff Brian Horowitz was the Chief Executive Officer of an entity called COD USA, INC. ("COD").  SUF 1.  He never owned any interest in this entity.  SUF 63.

On January 16, 2018, COD's account at Union Bank was served with an out of state garnishment order for $115,000. SUF 3.  To avoid the garnishment, Horowitz directed the emptying of COD's account by purchasing from Union Bank

OPPOSITION TO DEFENDANT CHEXSYSTEMS, INC.'S MSJ

a $70,000 cashier's check payable to Horowitz (the "Check"). SUF 4. The Check was purchased with good funds. SUF 4. COD was the Check's remitter. SUF 5 and Ex 1. Horowitz deposited the Check in his personal Bank of America ("BOA") account, ending in 2815. SUF 7. At the time Horowitz deposited the Check into Account 2815, he also had another account at BOA ending in 6656 ("Account 6656"). SUF 41. Shortly after he deposited the Check into Account 2815, he made several distributions out of that account, believing the Check would be honored by Union Bank. SUF 8.

On January 17, 2018, Union Bank, without any notice or warning to Horowitz, issued a stop payment order on the Check. SUF 74.

On January 18, 2018, Horowitz noticed that his Account 2815 at BOA had not been credited for the Check. Horowitz sent an email to Kyle Connors ("Connors") inquiring as to why the Check had not yet cleared. Connors replied to Horowitz stating that "The funds leave the account as soon as the check is issued at the branch. There is still a processing time once it is deposited." Ex 21.

Horowitz played no role in causing Union Bank to issue a stop payment order on the Check. SUF 74. Resultantly, by February 5, 2018, Horowitz's Account 2815 was overdrawn by $69,316.08. Ex 3.

Christopher Thompson ("Thompson") from BOA's Fraud Team, was assigned to conduct the initial investigation ("Initial Investigation") into the overdraft of Account 2815. SUF 13. Horowitz had explained to Thompson that Horowitz did not stop payment on the Check. SUF 14.

Thompson called Union Bank's customer service department and was informed that the "remitter" stopped payment on the Check. SUF 13. This was the total investigation that Thompson performed to ascertain who stopped payment on the Check. SUF 72. He never knew who stopped payment on it. SUF 73. He believed that Horowitz was the remitter even though the face of the Check shows that COD was the remitter. SUF 17.

Thompson pursued Horowitz to pay out another $70,000 to bring Account 2815 into a positive status. SUF 14. When Horowitz could not pony up, Thompson caused BOA to report Horowitz to Chex as having engaged in "Suspected Fraud Activity" related to Account 2815. SUF 16. BOA took this action "punitively" against Horowitz for not coming up with the additional $70,000 on demand. SUF 83.

A day after reporting Horowitz to Chex for suspected fraud activity, Thompson asserted BOA's rights as Holder in Due Course against Union Bank and demanded payment on the Check. SUF 18. Union Bank ultimately made the Check good and paid the $70,000 to BOA on June 1, 2018. SUF 22. Thompson knew, since the day that BOA received the Check, that it would be paid by Union Bank. SUF 84.

On July 28, 2021, Horowitz's account at Orange County Credit Union was closed due the reporting of Suspected Fraud Activity by BOA. SUF 24.

On August 17, 2021, Horowitz disputed BOA's reporting of "suspected fraud activity" with Chex ("First Dispute"). In his First Dispute, Horowitz made clear that he obtained a cashier's check from Union Bank. He deposited that Check into his BOA account. He wired out funds and two days later, Union Bank stopped payment on the Check due to no fault of his own. He said he should not be listed as "fraud" or at fault. Ex 4.

Suspected Fraud Activity is defined, by Chex, as a violation of account privileges or furnisher policies allegedly to obtain unauthorized benefits or rights which has risen to the level of suspected fraud activity. SUF 59. A consumer being reported for suspected fraud activity is a very serious notation to place on one's Chex report. SUF 60. Determining whether Horowitz stopped payment on the Check was critical to the resolution of his dispute. SUF 61. Chex admitted that if the facts show that Union Bank and not Horowitz, stopped payment on the Check, then Horowitz should NOT have been reported as suspected fraud activity. SUF

-3-
OPPOSITION TO DEFENDANT CHEXSYSTEMS, INC.'S MSJ

62.

Strangely, Chex admitted that it had no reason to doubt Horowitz.  SUF 76.  But yet, Chex never performed any reinvestigation into Plaintiff's First Dispute other than confirm what it was told about the dispute by BOA.  SUF 78.  Chex believes that it's the furnisher's responsibility to verify the accuracy and completeness of information that it submits to ChexSystems.  SUF 75.  When a consumer disputes information appearing on his or her Chex report, it merely double checks with BOA to make sure its accurate.  SUF 75.  In this case, Chex had no contact with Union Bank because it is not a furnisher.  SUF 89.

On September 30, 2022, Horowitz sent a second Dispute Letter to Chex ("Second Dispute").  This time, he attached a copy of the Removal Letter.  Ex 5 and 2.  Even though the Removal Letter was on BOA's own letterhead, Chex disregarded it because it referred to an account that was never reported to Chex.  SUF 90.  Chex did not even find the Removal Letter curious.  *Id.*

## III.   STANDARD FOR DECIDING A MOTION FOR SUMMARY JUDGMENT

A court renders summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of informing the court of the basis for its belief that there is an absence of a genuine issue for trial and of identifying those portions of the record that demonstrate such absence.  *Celotex*, 477 U.S. at 323.

However, all evidence and reasonable inferences made must be viewed in the light most favorable to the party opposing the motion.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

-4-

OPPOSITION TO DEFENDANT CHEXSYSTEMS, INC.'S MSJ

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.  Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986).

The party defending against the motion for summary judgment cannot defeat the motion unless he provides specific facts that demonstrate a genuine issue of material fact such that a reasonable jury might return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).  Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment.  *Id.* at 249–50.  In other words, conclusory statements, speculation, and unsubstantiated assertions will not suffice to defeat a motion for summary judgment.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).  Further, a court has no duty to search the record for evidence of a genuine issue.  Fed. R. Civ. P. 56(c) (1), (3).

## IV.   LAW AND ARGUMENT

## V.   CHEXSYSTEMS IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FCRA CLAIMS AS QUESTIONS OF FACT EXIST AS TO WHETHER CHEX PREPARED CREDIT REPORTS REGARDING THE PLAINTIFF WITH REASONABLE PROCEDURES TO ASSURE MAXIMUM POSSIBLE ACCURACY.

### A. Standard for Preparing Credit Reports.

15 U.S.C. 1681e(b) states:

> *Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.*

### B. ChexSystems Procedures for Preparing Horowitz' Credit Reports

OPPOSITION TO DEFENDANT CHEXSYSTEMS, INC.'S MSJ

**Must be Reasonable and Present a Question of Fact.**

Liability under § 1681e(b) is predicated on the reasonableness of the credit reporting agency's procedures in obtaining credit information.  In order to make out a prima facie violation under § 1681e(b), a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information. *Cahlin v General Motors Acceptance Corp.,* 936 F.2d 1151, 1156 (11th Cir 1991). The FCRA does not impose strict liability, however— an agency can escape liability if it establishes that an inaccurate report was generated despite the agency's following reasonable procedures.  The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases.  *Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329, 1333  (9th Cir. 1995).

Credit Reporting Agencies cannot just report verbatim whatever is provided them by their sources; they must have procedures in place to ensure that the information from those sources is accurate. *McIntyre v. RentGrow, Inc*., 34 F.4th 87, 97–98 (1st Cir. 2022) (jury could find that CRA's failure to have procedures to verify whether court records received from vendor were accurate or complete violated §1681e(b).  See also *O'Brien v. Equifax Info. Serv., L.L.C.,* 382 F. Supp. 2d 733, 739 (E.D. Pa. 2005) (declining to hold CRA's procedures reasonable as matter of law whenever it simply repeats information from reputable source).

In this case, Horowitz gave notice to Chex in his First Dispute that he did not stop payment on the Check.  Ex 4.  He also identified Union Bank as the party that stopped payment on the Check.  Id.  Chex testified that it had no reason to doubt Horowitz. SUF 76.  This means that BOA's reporting of Horowitz for suspected fraud activity, itself, was suspect because what BOA was reporting about Horowitz and what Horowitz was saying, both could not be true at the same time. Chex should have followed up with BOA and/or Union Bank to determine who stopped payment on the Check.  Its failure to do so calls into question whether its

-6-
OPPOSITION TO DEFENDANT CHEXSYSTEMS, INC.'S MSJ

policies and procedures for assembling credit reports about Horowitz were reasonable.

Chex believes that it's the furnisher's responsibility to verify the accuracy and completeness of information that it submits to ChexSystems. SUF 87. When a consumer disputes information appearing on his or her ChexSystems report, it merely double checks with BOA to make sure its accurate. SUF 88. Again, this makes the reasonableness of Chex's policies for assembling credit reports at least questionable and most likely violative of its duties under 15 U.S.C. §1681(e)(b). For these reasons, Chex's Motion for Summary Judgment as to Plaintiff's claims for negligent and willful violations of the FCRA must be denied as the reasonableness of its policies and procedures is a question of fact.

**C. Horowitz's Credit Reports Prepared by ChexSystems were Inaccurate as he never met the standard for being reported to Chex as having engaged in Suspected Fraud Activity.**

Sarah Cables, ChexSystems' FRCP 30(b)(6) witness, testified that Suspected Fraud Activity is defined as "[A] violation of account privileges or furnisher policies allegedly to obtain unauthorized benefits or rights which has risen to the level of suspected fraud activity." SUF 59. For a consumer, being reported for suspected fraud activity is a very serious notation to place on one's ChexSystems report. SUF 60. Cables also testified that BOA needed to determine who stopped payment on the Check before Horowitz could be reported as having engaged in suspected fraud activity. SUF 61. If the facts showed that Union Bank stopped payment on the Check and not Horowitz, then Horowitz should ***not*** have been reported to ChexSystems as having engaged in Suspected Fraud Activity. SUF 62. Unfortunately for Horowitz, BOA never determined who stopped payment on the Check prior to it reporting him to ChexSystems. SUF 73. Indeed, the facts of this case show that Union Bank, without Horowitz's prior knowledge, unilaterally stopped payment on the Check. SUF 9, 74. Hence, BOA should never have reported Horowitz to Chex for having engaged in suspected fraud activity.

-7-
OPPOSITION TO DEFENDANT CHEXSYSTEMS, INC.'S MSJ

ChexSystems and BOA's reporting of Horowitz for having engaged in suspected fraud activity was inaccurate.

### D. ChexSystems' policies and procedures are not reasonable and do not comply with the statute.

Cables testified that it is the furnishers' responsibility to verify the accuracy and completeness of the information that it submits to ChexSystems. SUF 75. Cables admitted that in its reinvestigations of consumer disputes, Chex merely double checks with the furnisher to make sure that the information is accurate. SUF 75. This does not meet the standard for reasonable policies and procedures when assembling credit reports to assure maximum possible accuracy as contemplated by 15 U.S.C. 1681e(b). ChexSystems, as a credit reporting agency, is not entitled to merely repeat verbatim whatever is provided them by their sources; it must have procedures in place to ensure that the information from those sources is accurate. *McIntyre, supra*, at 97–98.

### VI. CHEXSYSTEMS' REINVESTIGATION OF PLAINTIFF'S DISPUTES PRESENT A QUESTION OF FACT PRECLUDING SUMMARY JUDGMENT.

### A. Standard for Credit Reporting Agency's duty to Reinvestigate.

15 U.S.C. §1681i states:

Reinvestigations of Disputed Information
    (1) Reinvestigation Required
        (A) In general. Subject to subsection (f), if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, <u>conduct a reasonable reinvestigation</u> to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

-8-
OPPOSITION TO DEFENDANT CHEXSYSTEMS, INC.'S MSJ

A CRA's reinvestigation must be reasonable. A CRA on notice as to potentially inaccurate information in the consumer's file is in a very different position than a CRA without such notice. *Henson v. CSC Credit Services*, 29 F.3d 280, 285 (7th Cir. 1994). The investigation is called a reinvestigation, presumably because the CRA initially added to its files the item of disputed information only after employing reasonable procedures to ensure maximum possible accuracy in the first place. See *Mullins v. Equifax Info. Serv., L.L.C.*, 2007 WL 2471080 at *5 (E.D. Va. Aug. 27, 2007). A reinvestigation must be a good faith effort to determine the accuracy of the disputed item. *FTC Staff Summary § 611(a) item 2* (2011). The CRA must reinvestigate; it cannot merely tell users that the consumer disputes the report. *In re Equifax, Inc.*, 96 F.T.C. 1045 (F.T.C. 1980). More is usually required than simply confirming that the disputed information was in fact reported as it was received from the original source. In appropriate circumstances, the CRA must contact third parties for information and must consider all relevant information at its disposal.

### B. A CRA is permitted to rely on a furnisher, so long as it has no basis to question or doubt its reliability.

A CRA is generally permitted to rely on a furnisher, so long as it has no basis to question or doubt its reliability. *Henson, supra*. CRAs are not required to independently verify information provided by credit furnishers *unless* the CRA knew or had reason to know that the furnisher was unreliable or reporting inaccurate information. The CFPB has made clear that a CRA may not solely rely on a furnisher's response in a dispute investigation. In a March 2017 report, the CFPB characterized as a "violation" the nationwide CRAs practice of relying entirely on the furnisher to investigate a dispute, and their failure to review and consider the consumer's proof documents. CFPB, Supervisory Highlights Consumer Reporting Special Edition 10–11, Issue 14 (Mar. 2, 2017). Generally,

-9-
OPPOSITION TO DEFENDANT CHEXSYSTEMS, INC.'S MSJ

the reliability of a furnisher is a question of fact. *Campbell v. Chase Manhattan Bank*, 2005 WL 1514221 at *13 (D.N.J. June 27, 2005); *Bryant v. TRW, Inc.,* 487 F. Supp. 1234, 1235(E.D. Mich. 1974).

In this case, Horowitz put Chex on notice, twice, that BOA's reporting of him as having engaged in suspected fraud activity was incorrect. Ex 4 and 5. Chex did nothing more than send a Request for Investigation form to BOA to confirm what it said to Chex was correct. SUF 76. This does not nearly measure up to the standard of a reasonable reinvestigation as required by the FCRA. Still, whether Chex's reinvestigations fall below that standard, and how far, is a question of fact that prevents the grant of Summary Judgment on Plaintiff's FCRA claims.

**i. ChexSystems had substantial reason to doubt the accuracy of the information supplied by BOA in Horowitz's First Dispute.**

In his First Dispute, Horowitz disputed the accuracy of the BOA information to ChexSystems. He informed Chex as follows:

> *Consumer states that he had a cashier's check from his business account at Union Bank. He states that he deposited the funds into his Bank of America account. Two days later, the funds were wired out. After this happened, Union Bank put a stop payment on the cashier's check. He states that at the time the cashier's check was drawn, the funds were available. At the time the cashier's check was deposited, the funds were available. He states that this issue was no fault of his own and should not be listed as fraud on his part. In fact, Union Bank paid this account in full as it was their fault, not his. Please research and provide results below.*

In reviewing Dispute 1, Cables testified that ChexSystems had no reason to doubt the validity of Horowitz's position. SUF 76. In fact, ChexSystems admitted that Horowitz played no role in issuing a stop payment order on the Check. SUF 77. Chex also admitted if what Horowitz said in Dispute 1 was true, then he should

-10-

OPPOSITION TO DEFENDANT CHEXSYSTEMS, INC.'S MSJ

NOT have been reported as having engaged in suspected fraud activity.  SUF 62. Horowitz's dispute brings squarely into question, whether Horowitz should fit ChexSystems' criteria as having engaged in suspected fraud activity.   Yet, ChexSystems failed to conduct any further investigation into Horowitz's dispute, even though it had no reason to doubt Horowitz. SUF 76.  If it had no reason to doubt Horowitz's account that he did NOT stop payment on the Check, then it certainly had reason to doubt BOA's reporting him as having engaged in suspected fraud activity.  ChexSystems admitted that the extent of its "reinvestigation" into Dispute 1 was simply to rely on BOA's response.   SUF 78. Whether this "reinvestigation" was reasonable is a question fact.

Horowitz's inaccurate report, after his First Dispute, was viewed by NuVision Credit Union when it declined him as a customer.  SUF 69.

### ii. ChexSystems had substantial reason to doubt the accuracy of the information supplied by BOA in Horowitz's Second Dispute

In connection with his second dispute, Plaintiff attached a copy of the Removal Letter from the Bank, stating that it had or would remove negative information about him to ChexSystems within 10 days. Ex 2.  The letter recited the wrong account number; namely the account ending in 6566 ("Account 6566"). This account number was never reported to ChexSystems.  SUF 51.  BOA only reported Account 2815 to ChexSystems.   SUF 7, 20, 41.

In its Motion for Summary Judgment, ChexSystems admitted that it was aware of this error in account numbers in the Removal Letter.  Dkt 47-1, p 15:17-20 ("This discrepancy was, indeed, apparent – to BANA as well as ChexSystems. And it was underscored by ChexSystems' second request for reinvestigation which attached the letter and noted the reason for the reinvestigation:").  This surprising admission by ChexSystems underscores its knowledge that the information supplied by BOA may have been inaccurate.  Horowitz said that the issue was resolved between himself and BOA. Ex 5.  He supplied the Removal Letter to

-11-
OPPOSITION TO DEFENDANT CHEXSYSTEMS, INC.'S MSJ

ChexSystems along with Dispute 2. Instead of investigating whether the "apparent discrepancy" in the Removal Letter, as it should have, ChexSystems simply shipped the letter off to BOA without ever investigating this discrepancy, further. Ex 5. Again, ChexSystems reinvestigation into Plaintiff's Second Dispute presents a question of fact as to whether its reinvestigation was reasonable. For these reasons, ChexSystems is not entitled to Summary Judgment on Plaintiff's FCRA Claims.

### C. If ChexSystems had Properly Investigated Horowitz's Disputes and had taken further investigative steps, whether the results would have been Different is a Question of Fact

ChexSystems believes that if additional steps were taken by it to resolve Horowitz's disputes, the results would have been the same. Dkt 47-1 15:2-4. This would, of course, depend on whether ChexSystems resolved the ultimate question of whether BOA knew who stopped payment on the Check or whether ChexSystems would follow its own policies of merely double checking whether BOA gave the answers it did to the Request for Reinvestigation. If ChexSystems asked BOA's RISC Department who stopped payment on the Check and the Bank did not have an answer for ChexSystems, then according to ChexSystems' admission, Horowitz should not and could not have been reported for suspected fraud activity. SUF 61, 62. If, however, ChexSystems called BOA to merely ask "Are these the answers you meant to transmit to us?", then ChexSystems would have failed to conduct a reasonable reinvestigation into whether BOA met the standard for reporting Horowitz as having engaged in suspected fraud activity.

ChexSystems contradicts its own testimony when it states that "Even if Union Bank had said it stopped payment on the cashier's check – rather than telling ChexSystems, as it told Thompson, that the remitter had done, that information would not have led to a different resolution." Dkt 47 p 15:10-13. This statement directly contradicts its own testimony that: (1) It was critical for BOA to determine who stopped payment on the Check before reporting Horowitz as having engaged

-12-

OPPOSITION TO DEFENDANT CHEXSYSTEMS, INC.'S MSJ

in suspected fraud activity (SUF 61) and (2) If Union Bank had stopped payment on the Check and not Horowitz, then Horowitz should not have been reported as such. SUF 62.

If the standard for reporting a consumer as having engaged in suspected fraud activity is merely the subjective judgment of the bank, then consumers would have no recourse to appeal the bank's errant judgment. This is probably why ChexSystems has an objective standard rather than BOA's subjective one.

### D. ChexSystems Attempts to Misconstrue Its Own Standard for Reporting a Consumer as Having Engaged in Suspected Fraud Activity.

ChexSystems would have this Court conveniently ignore its own deposition testimony as to the standard for reporting a consumer as having engaged in suspected fraud activity. ChexSystems now states that because its investigator, Thompson, had suspected Horowitz of fraudulent activity, that it had right to report Horowitz as such. This argument ignores ChexSystems's own standard for reporting consumers as such, as testified to by Cables. SUF 59. Horowitz should have never been reported for suspected fraud activity. There is no evidence that he ever met the criteria. In fact, Cables testified that if Horowitz did not issue the stop payment order on the Check, then he should not have been reported as such. SUF 62.

### E. ChexSystems Reliance on the Kestenburg case is misplaced.

Chex's reliance on the *Kestenberg v. ChexSystems, Inc.*, 2022 WL 407136 (E.D. Mo., Feb. 10, 2022, No. 4:21-CV-220 RLW)is misplaced as its distinguishable. The court dismissed the Plaintiff's claim in *Kestenburg* under Section 1681i(a) because he had not demonstrated that the information reported was inaccurate. *See id*. at *5; see *Murphy*, 456 F. Supp. 2d at 1089; *Edeh v. Equifax Info. Servs., LLC*, 919 F. Supp. 2d 1006, 1012 (D. Minn. 2013) ("a claim under § 1681i requires a showing that the information in the credit file was inaccurate"). *Kestenberg* is distinguishable from this case where Horowitz has shown that the

-13-

OPPOSITION TO DEFENDANT CHEXSYSTEMS, INC.'S MSJ

information provided by BOA was inaccurate.  SUF 59-62.  The testimony from Union Bank shows that it stopped payment on the Check and not Horowitz.  SUF 9, 74.  According to Chex's own witness, the reporting of Horowitz was inaccurate. SUF 62.

## VII.  HOROWITZ IS ENTITLED TO DAMAGES FOR LOST PROFITS FOR BUSINESSES HE WAS PREVENTED FROM OPENING DUE TO THE FALSE REPORTING BY CHEXSYSTEMS.

When BOA's negative reporting reached Horowitz's ChexSystems report, his business and personal accounts were closed by Orange County's Credit Union. Ex L.  Still, as a business owner, Horowitz owed over 50 domain names that he intended to finance for new business ventures.  SUF 65.  He intended to open at least a dozen businesses.  SUF 66.  However, in order to finance any of these, he needed a loan from the Small Business Administration ("SBA").  SUF 67. Unfortunately, the SBA requires its borrowers to engage a "partner bank" to obtain the loan for which SBA would guarantee the obligation.  *Id*.  Due to ChexSystems' failure to conduct a reasonable reinvestigation and by its continued reporting of Horowitz, he was prevented from obtaining an SBA guaranteed loan.  SUF 68.

Horowitz's inability to open new businesses because of incorrect information reported on his personal credit report is a recoverable damage under the FCRA. *Dennis v. BEH-1, LLC,* 520 F.3d 1066, 1069 (11th Cir 2008).  In *Dennis*, the Court held:

> *Here, too, the district court erred. Dennis testified that he hoped to start a business and that he diligently paid his bills on time for years so that he would have a clean credit history when he sought financing for the venture. The only blemish on his credit report in April 2003 was the erroneously reported judgment. According to Dennis, that was enough to cause several lenders to decline his applications for credit, dashing his hopes of starting a new business. Dennis also claims that Experian's error caused his next landlord to demand that Dennis pay a greater security deposit. In*

-14-

OPPOSITION TO DEFENDANT CHEXSYSTEMS, INC.'S MSJ

> *addition to those tangible harms, Dennis claims that Experian's inaccurate report caused him emotional distress, which [**6] we've held to be "actual damages." See Guimond, 45 F.3d at 1332-33.*

*Dennis* at 1069See also *Gorman v. Wolpoff & Abramson, L.L.P.*, 584 F.3d 1147, 1174 (9th Cir. 2009) (rejecting argument that there was insufficient evidence of damages, in part because consumer who hoped to start business was refused credit or offered higher than advertised interest rates due to delinquencies on his credit report).

Horowitz was prevented from opening new businesses because he could not find a traditional bank that would open an account for him. SUF 68. His accounts at Orange County's Credit Union were closed when it learned that he had been reported to ChexSystems. SUF 24. He attempted to open accounts at NuVision Credit Union after the Bank sent him the Removal Letter. SUF 44. However, BOA still had reported him to ChexSystems and NuVision refused to open new accounts for him as well. *Id*. Without the ability to open new accounts, he could not pursue his business ventures. SUF 67, 68. To be sure, Horowitz was able to reopen his accounts at Orange County Credit Union after BOA removed the negative reporting to ChexSystems during this case. SUF 79.

## VIII. PLAINTIFF'S RIGHT TO STATUTORY AND PUNITIVE DAMAGES IS A QUESTION OF FACT FOR THE JURY, PRECLUDING SUMMARY JUDGMENT.

15 U.S.C.A. § 1681n of the Fair Credit Reporting Act provides:

> (a) In general
> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of--
>     (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or

-15-
OPPOSITION TO DEFENDANT CHEXSYSTEMS, INC.'S MSJ

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

**A. ChexSystems' Violations of the FCRA could be viewed as willful, entitling the Plaintiff to Statutory and Punitive Damages, and thus, precluding Summary Judgment.**

In this case, whether ChexSystems prepared credit reports about Horowitz with reasonable policies and procedures to assure maximum possible accuracy is a question of fact.  15 U.S.C. §1681e. Plaintiff has produced evidence to show that not only had it failed to do so, but willfully violated its duties under the FCRA by solely putting the responsibility for its own duty to accuracy report credit information on its furnishers.  SUF 75, 82.   This is less than what the statute requires.

Moreover, whether ChexSystems' conduct reasonable reinvestigations into the Plaintiff's consumer disputes is also a question of fact.  When a consumer posits a dispute, a furnisher must conduct a reasonable reinvestigation.  15 U.S.C. §1681i. CRAs cannot just report verbatim whatever is provided them by their sources; they must have procedures in place to ensure that the information from those sources is accurate.  *McIntyre, supra*.  ChexSystems' testimony is that this is exactly what was done.

If the Court were to find that ChexSystems willfully failed to comply with its duties under the FCRA at 15 U.S.C. §1681(e)(b) or (i), then the Court could find for Plaintiff under 15 U.S.C. §1681n and award statutory and punitive damages. Again, this would be a question of fact for the Court to resolve and cannot be adjudicated in Defendant's motion.

**CONCLUSION**

Defendant has failed to show that it is entitled to Summary Judgment on Plaintiff's FCRA claims.  Horowitz has shown that ChexSystems did not prepare

his consumer reports with reasonable procedures to assure maximum possible accuracy. He has also provided evidence that ChexSystems failed to perform any reasonable reinvestigation into his disputes. Each of these issues present questions of fact that preclude Summary Judgment in favor of Defendant.

OPPOSITION TO DEFENDANT CHEXSYSTEMS, INC.'S MSJ

Respectfully submitted

Dated: February 27, 2024          By: /s/ James W. Kirby

James W. Kirby
Gary A. Hansz
Attorneys for Plaintiff,
Brian Horowitz

-18-
OPPOSITION TO DEFENDANT CHEXSYSTEMS, INC.'S MSJ

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiff Brian Horowitz certifies that this brief contains 5133 words, which complies with the word limit of L.R. 11-6.1.

Dated: February 27, 2024     By: /s/ James W. Kirby
                                  James W. Kirby
                                  Gary A. Hansz
                                  Attorneys for Plaintiff,
                                  Brian Horowitz

-19-
OPPOSITION TO DEFENDANT CHEXSYSTEMS, INC.'S MSJ