AUSTIN B. KENNEY (State Bar No. 242277)
abk@severson.com
MATTHEW J. ESPOSITO (State Bar No. 223445)
mje@severson.com
SEVERSON & WERSON
A Professional Corporation
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
Telephone: (949) 442-7110
Facsimile: (949) 442-7118

Attorneys for Defendants CHEX SYSTEMS, INC. and BANK OF AMERICA, N.A.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| BRIAN HOROWITZ,<br><br>    Plaintiff,<br><br>    vs.<br><br>CHEX SYSTEMS, INC., a foreign corporation, and BANK OF AMERICA, N.A., a foreign corporation,<br><br>    Defendants. | Case No. 8:22-cv-02002-DFM<br><br>*Assigned for all purposes to Hon. Douglas F. McCormick*<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>*Filed concurrently with Statement of Genuine Disputes; Declaration of Austin B. Kenney*<br><br>Date:    March 19, 2024<br>Time:    10:00 a.m.<br>Crtrm.:  6B<br><br>Trial Date:    May 7, 2024 |

70014.0757/16723469.2

DEFENDANTS' POINTS AND AUTHORITIES OPPOSING PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTION

# TABLE OF CONTENTS

*Page*

I. INTRODUCTION ........................................................................................... 1

II. HOROWITZ HAS NOT SATISFIED HIS INITIAL BURDEN ..................... 1

    A.    As Plaintiff Horowitz Is Required To Prove Each Element Of His Claims ........................................................................................... 1

    B.    Horowitz Has Not Proved The First Element Of His FCRA Claims ..... 2

    C.    Horowitz's Criticisms Of Thompson's Investigation Are Irrelevant ..... 4

III. DEFENDANTS HAVE RAISED GENUINE ISSUES OF FACT ABOUT THE REASONABLENESS OF THEIR REINVESTIGATIONS ..... 6

    A.    BANA's Reinvestigations Were Reasonable ......................................... 6

        1.    BANA's Reinvestigation Of The First Dispute Was Reasonable .................................................................................... 6

        2.    BANA's Reinvestigation Of The Second Dispute ...................... 9

        3.    BANA's Post-Litigation Conduct Is Irrelevant .......................... 11

        4.    BANA Did Not Violate Section 1681s-2 Willfully Or Negligently ............................................................................. 12

    B.    ChexSystems' Reinvestigations Were Reasonable ............................. 13

IV. CONCLUSION ............................................................................................ 19

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*,
  213 F.3d 474 ..................................................................................................... 1

*Carvalho v. Equifax Info. Servs., LLC*,
  629 F.3d 876 (9th Cir. 2010) ............................................................................ 3

*Denison v. Citifinancial Servicing LLC*,
  No. 16-cv-432, 2016 WL 1718220 (N.D. Cal. Apr. 29, 2016) .......................... 3

*Doster v. Experian Info. Sols., Inc.*,
  No. 16-cv-04629, 2017 WL 264401 (N.D. Cal. Jan. 20, 2017) .......................... 4

*Easley v. City of Riverside*,
  890 F.3d 851 (9th Cir. 2018) ......................................................................... 2, 9

*Gorman v. Wolpoff & Abramson, LLP*,
  584 F.3d 1147 (9th Cir. 2009) ............................................................... 6, 7, 13

*Grigoryan v. Experian Info. Sols., Inc.*,
  84 F. Supp. 3d 1044 (C.D. Cal. 2014) ............................................................ 15

*Henson v. CSC Credit Servs., Inc.*,
  29 F.3d 280 (7th Cir. 1994) ............................................................................ 14

*Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*,
  778 F.3d 593 (7th Cir. 2015) ............................................................................ 2

*Hunt v. Cromartie*,
  526 U.S. 541 (1999) ......................................................................................... 2

*Johnson v. MBNA Am. Bank, NA*,
  357 F.3d 426 (4th Cir. 2004) ............................................................................ 7

*Ketsenburg v. ChexSystems, Inc.*,
  No. 4:21-cv-220, 2022 WL 407136 (E.D. Mo. Feb. 10, 2022) .................... 14, 16

*Kong v. In Sik Shin*,
  No. 8:18-cv-1885, 2019 WL 6769870 (C.D. Cal. Dec. 12, 2019) ................ 2, 18

*Leslie v. Experian Info. Sols., Inc.*,
  No. 21-cv-334, 2023 WL 5000770 (D. Haw. Aug. 4, 2023) ........................... 14

DEFENDANTS' POINTS AND AUTHORITIES OPPOSING PLAINTIFF'S PARTIAL SUMMARY JUDGMENT
MOTION

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Maiteki v. Marten Transp. Ltd.*,
    828 F.3d 1272 (10th Cir. 2016) ................................................................................. 7

*Miller v. Glenn Miller Productions, Inc.*,
    454 F.3d 975 (9th Cir. 2006) ............................................................................... 1, 12

*Paul v. Experian Info. Sols., Inc.*,
    793 F. Supp. 2d 1098 (D. Minn. 2011) .................................................................. 14

*Poe v. Nw. Mut. Life Ins. Co.*,
    No. 8:21-cv-2065, 2023 WL 7273741 (C.D. Cal. Oct. 19, 2023) ........................... 1

*Rookaird v. BNSF Ry. Co.*,
    908 F.3d 451 (9th Cir. 2018) ................................................................ 2, 9, 12, 13

*Sarver v. Experian Info. Sols.*,
    390 F.3d 969 (7th Cir. 2004) ................................................................................. 14

*Seamans v. Temple Univ.*,
    744 F.3d 853 (3d Cir. 2014) .................................................................................... 6

*Soghomonian v. United States*,
    278 F. Supp. 2d 1151 (E.D. Cal. 2003), vacated, No. 99-cv-5773,
    2005 WL 1972594 (E.D. Cal. June 20, 2005) ....................................................... 15

*Soremekun v. Thrifty Payless, Inc.*,
    509 F.3d 978 (9th Cir. 2007) ................................................................................... 2

*Thomas v. Gulf Coast Credit Servs., Inc.*,
    214 F. Supp. 2d 1228 (M.D. Ala. 2002) ............................................................... 14

*Westra v. Credit Control of Pinellas*,
    409 F.3d 825 (7th Cir. 2005) ................................................................................... 7

*Statutes*

United States Code
    Title 15
        Section 1681i ............................................................................................. 3, 13, 16
        Section 1681n ................................................................................................. 12, 18
        Section 1681o ................................................................................................. 13, 18
        Section 1681s-2 ................................................................................. 2, 3, 6, 11, 12

DEFENDANTS' POINTS AND AUTHORITIES OPPOSING PLAINTIFF'S PARTIAL SUMMARY JUDGMENT
MOTION

# TABLE OF AUTHORITIES

*Page(s)*

*Statutes*

California Civil Code
    Section 3439.04 ......................................................................................................6

California Commercial Code
    Section 3302 .........................................................................................................17
    Section 3305 .........................................................................................................17
    Section 3411 .........................................................................................................17

DEFENDANTS' POINTS AND AUTHORITIES OPPOSING PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTION

## I.

## INTRODUCTION

The Court should deny plaintiff Brian Horowitz's ("Horowitz's") motion for partial summary judgment on his Fair Credit Reporting Act ("FCRA") claims against defendants Chex Systems, Inc. ("Chex") and Bank of America, N.A. ("BANA").

Horowitz has not satisfied his initial burden of submitting evidence to prove beyond dispute each element of his FCRA claims. He has not even attempted to prove the crucial first element of those claims—that the information he disputed was inaccurate. That failure dooms his motion. There is no need to consider the rest of his motion.

However, should the Court venture farther, it will find that there are, at a minimum, genuine issues of fact as to whether defendants conducted reasonable reinvestigations of Horowitz's two disputes. And for that additional reason, Horowitz's motion must be denied.

## II.

## HOROWITZ HAS NOT SATISFIED HIS INITIAL BURDEN

**A.  As Plaintiff Horowitz Is Required To Prove Each Element Of His Claims**

Horowitz is the plaintiff in this case. At trial, he will bear the burden of proof on each element of each of his claims.

Accordingly, in moving for summary judgment, he bears "the initial burden of establishing the absence of a genuine issue of fact on each issue material to [his] case" by producing "evidence which would entitle[him] to a directed verdict if the evidence went uncontroverted at trial." *Miller v. Glenn Miller Productions, Inc*., 454 F.3d 975, 987 (9th Cir. 2006) (citations omitted); *C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc*., 213 F.3d 474, 480 (9th Cir. 2000; *Poe v. Nw. Mut. Life Ins. Co*., No. 8:21-cv-2065, 2023 WL 7273741, at *2 (C.D. Cal. Oct. 19, 2023).

DEFENDANTS' POINTS AND AUTHORITIES OPPOSING PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTION

"In other words, where, as here, the moving party 'is seeking summary judgment on a claim as to which it bears the burden of proof, it must lay out the elements of the claim, cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim.' " *Kong v. In Sik Shin*, No. 8:18-cv-1885, 2019 WL 6769870, at *4 (C.D. Cal. Dec. 12, 2019) (*quoting Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015)). "If the movant has failed to make this initial showing, the court is obligated to deny the motion." *Hotel 71 Mezz Lender LLC,* 778 F.3d at 601.

Furthermore, a plaintiff moving for summary judgment "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Rookaird v. BNSF Ry. Co*., 908 F.3d 451, 459 (9th Cir. 2018); *Soremekun v. Thrifty Payless, Inc*., 509 F.3d 978, 984 (9th Cir. 2007). "[T]he evidence [must be viewed] in the light most favorable to the nonmoving party and … all reasonable inference[s] [must be drawn] in the nonmoving party's favor." *Rookaird*, 908 F.3d at p. 459; *Easley v. City of Riverside*, 890 F.3d 851, 856 (9th Cir. 2018). "Summary judgment in favor of the party with the burden of persuasion ... is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## B.    Horowitz Has Not Proved The First Element Of His FCRA Claims

Horowitz has not met his initial burden on his partial summary judgment motion. He has not set out the elements of his FCRA claims. Nor has he shown that his evidence would entitle him to a directed verdict on each of those elements.

The inadequacy of Horowitz's showing is evident at the outset. The very first element of a claim that a credit reporting agency ("CRA") violated 15 U.S.C. § 1681i(a) or a furnisher violated 15 U.S.C. § 1681s-2(b) is a showing that the disputed information was incomplete or inaccurate.

DEFENDANTS' POINTS AND AUTHORITIES OPPOSING PLAINTIFF'S PARTIAL SUMMARY JUDGMENT
MOTION

> Although the FCRA's reinvestigation provision, 15 U.S.C. § 1681i, does not on its face require that an actual inaccuracy exist for a plaintiff to state a claim, many courts, including our own, have imposed such a requirement. [Citation.]. In *Dennis v. BEH–1, LLC, 520 F.3d 1066* (9th Cir. 2008), we held that a plaintiff filing suit under section 1681i must make a "prima facie showing of inaccurate reporting." *Id*. at 1069.

*Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010).

> As to the FCRA, plaintiff is required to plead the following four elements to state a claim against a credit furnisher: (1) a credit reporting inaccuracy existed on plaintiff's credit report; (2) plaintiff notified the consumer reporting agency that plaintiff disputed the reporting as inaccurate; (3) the consumer reporting agency notified the furnisher of the alleged inaccurate information of the dispute; and (4) the furnisher failed to investigate the inaccuracies or further failed to comply with the requirements in 15 U.S.C. 1681s-2(b) (1)(A)-(E).

*Denison v. Citifinancial Servicing LLC*, No. 16-cv-432, 2016 WL 1718220, at *2 (N.D. Cal. Apr. 29, 2016).

Horowitz's memorandum does not identify inaccuracy as an element of his FCRA claims or attempt to show how his evidence has proved that first element of his claims by evidence that would entitle him to a directed verdict on the issue.

The reason Horowitz is silent on the issue is that he has not and cannot prove it. The information that Horowitz disputed was BANA's statement that it had closed his 2815 Account for suspected fraudulent activity. (*See* Dkt. # 53-2, Ex. 16, p. 3; Dkt. 53-3, Ex. 20, 25 p. 3.) That statement was accurate. Suspected fraudulent activity was precisely the reason Christopher Thompson recommended that BANA close the account. (Dkt. # 52-2, Ex. 6, 81:9-20, 148:20-149:4.)

Furthermore, Thompson had good reason to suspect fraudulent activity. His investigation revealed that Horowitz had obtained and deposited the $70,000 cashier's check at issue (the "Check"), then quickly transferred the proceeds, before BANA learned payment had been stopped on the Check. This resulted in a $69,000 overdraft in the 2815 Account, which despite BANA's months-long efforts,

DEFENDANTS' POINTS AND AUTHORITIES OPPOSING PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTION

Horowitz still refused to pay. And, Union Bank had told Thompson that the cashier's check's remitter—i.e., purchaser—had stopped payment on that check. (Dkt. # 52-2, Ex. 6, 79:17-80:9, 81:1-12, 98:6-18, 118:7-119:1, 124:16-125:16, 174:2-175:4; Dkt # 53-1, Ex. 6, 61:25-62:13; Declaration of Austin B. Kenney Supporting Opposition (Kenney Opp. Decl., Ex. 3, (Thompson Depo.), 83:6-84:2; 113:12-115:4, 120:18-121:11.)

Because the disputed information—BANA's reason for closing the 2815 Account—was accurate, Horowitz's FCRA claims cannot succeed. "[I]f a plaintiff cannot establish that a credit report contained an actual inaccuracy, then the plaintiff's claims fail as a matter of law." *Doster v. Experian Info. Sols., Inc*., No. 16-cv-04629, 2017 WL 264401, at *3 (N.D. Cal. Jan. 20, 2017) (internal quotes & citation omitted).

But the Court need not even go that far. It can and should deny Horowitz's motion on the simple ground that he failed to meet his initial burden by presenting no evidence or argument on the first essential element of his FCRA claims.

**C.     Horowitz's Criticisms Of Thompson's Investigation Are Irrelevant**

Without attempting to show that BANA closed the 2815 Account for a reason other than suspected fraudulent activity, Horowitz's motion criticizes Thompson's investigation on several grounds that are both irrelevant and wrong.

The FCRA does not regulate a bank's investigation of its depositor's suspected misuse of his or her account. Instead, the FCRA requires only that the furnished or reported credit information be accurate—which, as just shown, the disputed information about the 2815 Account was. So, criticism of Thompson's investigation is irrelevant. Such criticism cannot show that the 2815 Account was closed a reason other than suspected fraudulent activity.

Moreover, Horowitz's criticisms are wrong. First, Horowitz's memorandum tries to get around the fact that Union Bank told Thompson that the remitter had stopped payment on the Check, stating instead that Union Bank's customer service

department " 'referred [him] to the "remitter" of the Check for details about who stopped payment on it.' SUF 21." (Dkt. # 53, pp. 4, 9.) Horowitz's SUF 21, however, states "Thompson testified that he was informed by Union Bank that the 'remitter' stopped payment on the Check."[1] (Dkt. # 54, ¶ 21.)

Second, Horowitz states that Thompson wrongly thought that Horowitz was the remitter even though the Check showed that COD was. (Dkt. # 53, pp. 4, 10.) There is no evidence showing that Thompson made that mistake. Instead, Thompson correctly thought that Horowitz was associated with the remitter, as he indeed was, being COD's CEO and the person who directed Barbara Tolbert to buy the Check.[2] (Dkt. 52-3, Ex. 9, 15:3-6, 25:3-19, 26:8-25, 35:14-36:5.)

Third, Horowitz wrongly focuses all his attention on whether he, personally, stopped payment on the Check. (Dkt. # 53, pp. 9, 10.) The disputed information concerned BANA's reason for closing the 2815 Account, not who stopped payment on the Check. And, even if Horowitz could premise FCRA liability on BANA's closing the account for a wrong reason—rather than on its furnishing inaccurate information—it still would not matter that Horowitz did not stop payment.

Horowitz admits that he, in fact, did engage in fraudulent activity with respect to the Check and his 2815 Account—just not in the way Thompson suspected. According to Horowitz, he obtained the $70,000 cashier's check because he "learned of an impending garnishment on the COD bank account and moved the money [to his personal account] to avoid [the garnishment]." (Dkt. # 53-1, Ex. 1, 35:14-19; Dkt. # 52-3, Ex. 9, 25:3-19, 26:17-25, 27:12-28:25; Kenney Opp. Decl.,

---

[1] Horowitz has apparently taken the "refer to remitter" language from the last two sentences of Thompson's April 13, 2018 email to Horowitz, which stated "Yesterday, I contacted Union Bank customer service and was informed 'the remitter requested the stop payment.' They referred me to the remitter of the check for additional information." (Dkt. 53-2, Ex.11.)

[2] Horowitz tries, unsuccessfully, to distance himself from COD, by saying that he does not own it, Heather Smulson, now his wife, does instead. (Dkt. # 53, p. 2.)

DEFENDANTS' POINTS AND AUTHORITIES OPPOSING PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTION

Ex. 4 (Horowitz Depo.), Ex. 5; Dkt. #52-1, Ex. 3, Supp. Ans to Interrog. #19.) Thus, the Check was a fraudulent transfer made with the actual intent to defraud the garnishing creditor. *See* Cal. Civ. Code, § 3439.04(a)(1).

What is more: the fraudulent transfer led directly to Union Bank's stopping payment on the Check. Union Bank's representative, Kyle Connors, was snookered[3] into releasing the freeze on COD's account to allow issuance of the Check, not realizing that Union Bank's Legal Department had frozen the account after receiving the garnishment papers. When Connors realized his mistake, he stopped payment on the Check. (Dkt. # 54, ¶¶ 6(b), 6(d), 11.)

So, Horowitz's criticisms of Thompson's investigation are irrelevant and wrong. Most importantly, they do not demonstrate that the furnished and reported information was inaccurate. Since Horowitz has not borne his burden of proving that first element of his FCRA claims, his motion must be denied.

## III.

### DEFENDANTS HAVE RAISED GENUINE ISSUES OF FACT ABOUT THE REASONABLENESS OF THEIR REINVESTIGATIONS

**A.    BANA's Reinvestigations Were Reasonable**

**1.    BANA's Reinvestigation Of The First Dispute Was Reasonable**

To comply with 15 U.S.C. § 1681s-2(b)(1), a furnisher must conduct a "reasonable" investigation of the consumer's dispute of furnished information—that is, "'one that a reasonably prudent person would undertake under the circumstances.' ". *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009); *Seamans v. Temple Univ*., 744 F.3d 853, 864 (3d Cir. 2014).

A furnisher need not investigate information that the consumer does not dispute. Nor is the furnisher required to retrace steps it has already taken in the

---

[3]    Needless to say, neither Horowitz nor Tolbert told Connors what they were up to—hurriedly withdrawing funds to avoid a garnishment of the COD account.

absence of new information or some other indication that the earlier review was mistaken. *Gorman*, 584 F.3d at 1160.

Horowitz's first dispute challenged only the stated reason for closing the 2815 Account—namely, suspected fraudulent activity. To investigate whether "suspected fraudulent activity" was, indeed, the reason why BANA closed the account, Carly Adams, BANA's investigator, correctly reviewed BANA's Flash system on which Thompson had recorded the reason he recommended that the account be closed as well as several of BANA's other systems of record. (Dkt. # 52-1, Ex. 3, 36:12-37:4, 50:20-51:13, 56:22-25, 57:4-20, 59:13-18.)

There was no reason to look further because there was no reason to doubt the accuracy of the Flash system notes. While a furnisher's investigation may be unreasonable if it *always* relies solely on the furnisher's own computer records, *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 432-33 (4th Cir. 2004), a furnisher may rely on its own records when, as here, the circumstances warrant its doing so, *Maiteki v. Marten Transp. Ltd.*, 828 F.3d 1272, 1276 (10th Cir. 2016); *Gorman*, 584 F.3d at 1159-60; *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005).

Horowitz's contrary arguments are wrong. BANA was not required to re-investigate whether Horowitz or Union Bank had stopped payment on the Check. (*See* Dkt. # 53, p. 9.) Thompson had already investigated that issue, receiving conflicting stories from the two participants. (Dkt. # 52-2, Ex. 6, 35:23-36:3; Kenney Opp. Decl., Ex. 3, 37:6-18, 42:14-22, 87:18-89:3, 125:18-126:2.) Horowitz's dispute simply reiterated his version of the events without supplying any new information calling into question Thompson's investigation or his conclusions. (Dkt. # 53-2, Ex. 16 p. 3.)

Horowitz cites no authority for discounting Thompson's pre-dispute investigation of this very issue or for requiring a reinvestigation of that same issue absent relevant new information. (*See* Dkt. # 53, pp. 9, 10.) The mere fact that Thompson's

DEFENDANTS' POINTS AND AUTHORITIES OPPOSING PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTION

investigation was not regulated by the FCRA is no reason to do so. Thompson's investigation was reasonable. Horowitz does not claim Thompson left any stone unturned.[4] A reasonably prudent person would not re-plow the same field under such circumstances.

And, Cables' opinion about the importance of who stopped payment is both mischaracterized by Horowitz and irrelevant. (Dkt. # 53, p. 9.) She did not testify as an expert. Her views do not set the standard for a reasonable reinvestigation and are not, in any sense, binding on BANA.

Horowitz also criticizes Adams, claiming she conducted no reinvestigation at all. (Dkt. # 53, p. 10.) He is wrong. As already stated, Adams consulted several of BANA's systems of record to assure that the disputed information—the reason BANA closed the 2815 Account—was accurate. (Dkt. # 52-1, Ex. 3, 36:12-37:4, 50:20-51:13, 56:22-25, 57:4-20, 59:13-18.)

Horowitz does not suggest where else Adams could have gone to find out why BANA had closed the account. He only seems to suggest that Adams should have asked Union Bank the same question it had already answered in response to Thompson's inquiry. (*See* Dkt. # 53, pp. 9-10.) Not only would Union Bank's answer not show the reason BANA closed the 2815 Account, but there is no reason to think a second answer to the same question would differ from the first. Also, as already explained, a full answer regarding the circumstances leading to the stop payment on the Check would have led to the same suspicion of fraudulent activity. (*See* p. 7 above.)

Horowitz also criticizes what he conceives to be BANA's "policies" regarding reinvestigation. (Dkt. # 53, pp. 10-11.) That whole discussion is based on a gross mischaracterization of Kevin Williams' deposition testimony—evidence that, on

---

[4]    Horowitz's claim that Thompson wrongly thought Horowitz was the remitter is false for the reasons stated above. (*See* pp. 4-5 above; Dkt. # 53, p. 10.)

DEFENDANTS' POINTS AND AUTHORITIES OPPOSING PLAINTIFF'S PARTIAL SUMMARY JUDGMENT
MOTION

this motion must be construed most favorably to BANA, the non-moving party. *Rookaird*, 908 F.3d at p. 459; *Easley*, 890 F.3d at 856.

Williams was not asked about and did not testify concerning any general BANA policy regarding reinvestigations. Instead, he merely described the different functions assigned to the bank's fraud investigators as opposed to its credit reporting team. (Dkt. # 53-2, Ex. 19, 46: 9-47:13; Kenney Opp. Decl., Ex. 1 (Williams Depo.), 44:20-45:20.) The fraud investigators decide whether an account should be closed for suspected fraudulent activity. The credit reporting staff do not second guess that decision, but may, if given sufficient new information, ask the fraud investigators to do so. (*Ibid.*) Horowitz did not provide significant new information, so there was no reason to ask Thompson to reevaluate his decision. (*Ibid.*) Williams' testimony does not support Horowitz's assertion that BANA's policies regarding reinvestigations are unreasonable.

### 2. BANA's Reinvestigation Of The Second Dispute

BANA's reinvestigation of Horowitz's second dispute was reasonable for much the same reason as its first reinvestigation was.

Again, the only disputed information was the "Suspected Fraud Activity" given for closure of the 2815 Account. And, again, the BANA investigator, this time Michael Pankowski, reviewed BANA's systems, the account, and the RISC Department's comment as to the reason it recommended account closure, concluding that the account had, indeed, been closed for suspected fraudulent activity, as BANA reported to Chex. (Dkt. # 53-1, Ex. 8, 70:1-71:18.)

The only additional information provided by Horowitz's second dispute were BANA's January 5, 2022 letter and Horowitz's comment that the Request to Reinvestigate restated as follows:

> Consumer stated that he resolved this with your institution, and you reported that you are removing the information. This was not an accurate reporting. Please find enclosed copy of letter from your institution.

70014.0757/16723469.2                                   - 9 -

DEFENDANTS' POINTS AND AUTHORITIES OPPOSING PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTION

(Dkt. # 53-3, p. 4.)

Pankowski reviewed the attached January 5 letter, found that it referred to a different account than the one on which the disputed information was reported, and concluded that it was not related to the dispute he was working on. (Dkt. # 53-1, Ex. 8 59:10-24, 60:19-23.)

Horowitz castigates Pankowski for not asking what Horowitz—with the clarity of hindsight—now says was the obvious question of why the January 5 letter said it had removed negative reporting relating to an account that had never been reported to Chex. (Dkt. # 53, p. 12.) But that assumes a fact that Horowitz's evidence does not prove; nothing in the Request for Reinvestigation intimated that the letter referred to an account never reported to Chex.

Horowitz also calls Pankowski out for not questioning Herrington about her note which said "Fraud Ops — Deposit Fraud Detection Delete (Herrington Leslie) 01/05/2022"—a message that Horowitz did not understand. (Dkt. # 53, p. 12.) But Horowitz again operates with the clarity of hindsight. There was nothing in the cryptic note, written two years after the account closure, to indicate that the account was closed for any reason other than suspected fraudulent activity.

Moreover, Horowitz's evidence does not show that had Horowitz made further inquiries about the January 5 letter or the confusing note, he would have been led to a different conclusion about the accuracy of the information that Horowitz disputed.

Further inquiry would not have revealed that BANA had closed the 2815 Account for a reason other than suspected fraudulent activity. Thompson did not change his mind about his suspicion of fraud. Nor did either Herrington or Thompson change the reason for account closure stated in BANA's systems of record. As Thompson explained, the January 5 letter was not issued because the initial decision to close the 2815 Account for suspected fraudulent activity was wrong; the decision

DEFENDANTS' POINTS AND AUTHORITIES OPPOSING PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTION

to delete the reporting was purely gratuitous. (Dkt. # 52-2, Ex. 6, 151:12-154:21, 158:13-159:6.)

FCRA imposes liability only for failure to reasonably reinvestigate disputed inaccurate information, not for failure to properly carry out a promised deletion of accurate but negative credit information.

### 3. BANA's Post-Litigation Conduct Is Irrelevant

In his motion, Horowitz also argues that BANA exhibited "willful and deliberate to Plaintiff's" plight by initially rebuffing Horowitz's lawyer's post-litigation plea to remove the negative credit reporting and then reversing course three weeks later and doing just as the lawyer had asked. (Dkt. # 53, p. 13.)

This argument is completely irrelevant. Horowitz's FCRA claims against BANA are solely for failure to reinvestigate his disputes as required by 15 U.S.C. § 1681s-2(b). (Dkt. # 31, ¶¶ 37-48.) Horowitz concedes that his lawyer's email request to BANA's lawyer was not a dispute triggering any reinvestigation duty under that section.[5] (Dkt. # 53, p. 13.)

Horowitz cites no authority allowing or reason for consideration of such post-litigation conduct for any purpose in this FCRA case—in which the Horowitz's claim is that BANA's reinvestigations were either negligently or willfully violative of the FCRA, not whether BANA has acted badly in some other respect.

Moreover, even were BANA's post-litigation conduct relevant, the tale Horowitz's evidence tells is hardly one of indifference or willfulness. Despite the initial pushback—not unexpected from an institution the plaintiff has sued for a large sum—BANA took only three weeks to change its mind and grant Horowitz's re-

---

[5] Importantly, the email correspondence from BANA's lawyer to Horowitz's lawyer on this issue, dated March 6, 2023, was clearly labeled as a "CONFIDENTIAL SETTLEMENT COMMUNICATION." (Dkt. # 53, Ex. 26, pp. 1-2.) The document is therefore not admissible to prove BANA's alleged liability in this matter. FRE 408.

quest without asking for anything in return. And, Horowitz does not claim that his lawyer asked for instant action or that the three-week delay caused him any harm.

### 4. BANA Did Not Violate Section 1681s-2 Willfully Or Negligently

Largely repeating its earlier erroneous arguments, Horowitz's motion contends that BANA violated 15 U.S.C. § 1681s-2 willfully or, at least, negligently. (Dkt. # 53, pp. 14-16.)

First, Horowitz argues that BANA acted willfully because its "policy" supposedly was to perform a reinvestigation only if the consumer presented new information that was actionable. (*Id.*, p. 14.) This is a repackaging of the mischaracterization of Kevin Williams' testimony discussed at pages 8-9 above. The assertion is simply wrong. BANA has no such policy, and Williams never said it did.

Second, Horowitz argues that Pankowski acted willfully in "disregarding" the January 5 letter and Herrington's cryptic note. (*Id.*, p. 15.) As already explained, it is only by application of 20-20 hindsight and facts Pankowski did not have that Horowitz claims Pankowski should have realized the relevance of the letter and note to the reinvestigation with which he was tasked. (*See* p. 10 above.) His failure to divine the pertinence of the letter and note are no sign of willful misconduct—and certainly far from proof of willfulness so damning as to entitle Horowitz to a directed verdict on the issue—particularly when all inferences are drawn in BANA's favor as they must be on this motion. *See Miller*, 454 F.3d at 987; *Rookaird*, 908 F.3d at p. 459.

Saving his "most shocking" evidence for last, Horowitz claims that BANA's three-week delay in acceding to his counsel's post-litigation request to remove the negative information from his credit report is a sure sign of willfulness. Nonsense. For the reasons already stated, the post-litigation conduct is completely irrelevant. The issue under 15 U.S.C. § 1681n is whether the defendant willfully failed to comply with an FCRA requirement. The only FCRA requirement that Horowitz claims BANA violated is the requirement of making a reasonable reinvestigation of

DEFENDANTS' POINTS AND AUTHORITIES OPPOSING PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTION

his disputes. (Dkt. # 31, ¶¶ 37-48.) The post-litigation conduct does not involve a dispute or a reinvestigation, so it cannot show any willful violation of an FCRA requirement.

As to negligent violation under 15 U.S.C. § 1681o, Horowitz only repeats his bashing of Pankowski for supposedly "ignoring two major pieces of exculpatory data." (Dkt. # 53, p. 16.) For the reasons already stated twice (*see* pages 9-10 above) a jury could reasonably find that Pankowski was not negligent in thinking that the January 5 letter and cryptic note were not relevant to the reinvestigation he was tasked with. No directed verdict could be rendered on that issue; so no summary judgment may be granted either. *See Rookaird*, 908 F.3d at p. 459.

**B.     ChexSystems' Reinvestigations Were Reasonable**

As to Chex, Horowitz's motion boils down to the simple proposition that a CRA that has received a consumer's dispute of information must always conduct its own reinvestigation through its own independent inquiries of third-party sources of information and may never rely on the information provided by the furnisher follow-ing its own reinvestigation. (Dkt. # 53, pp. 18-19.) Chex did not query third parties; ergo, it must have committed a willful or negligent violation of 15 U.S.C. § 1681i(a). (*Ibid.*)

Horowitz is wrong on the law as well as the facts. First, the law: Contrary to Horowitz's assertion, the FCRA does not require a CRA to conduct its own reinves-tigation and forbid reliance on the furnisher's investigation of every dispute.

"[T]he [credit reporting agency's] 'reasonable reinvestigation' consists largely of triggering the investigation by the furnisher." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156 (9th Cir. 2009). "[A]s the statute recognizes, the furnisher of credit information stands in a far better position to make a thorough investigation of a disputed debt than the [credit reporting agency] does on reinvesti-gation. With respect to the accuracy of disputed information, the [credit reporting agency] is a third party, lacking any direct relationship with the consumer, and its

responsibility is to 're investigate' a matter once already investigated in the first place." *Id.* at 1156-57.

Generally, a credit reporting agency "conducts a reasonable reinvestigation by notify[ing] the furnisher of the disputed information of the substance of the dispute and provid[ing] it with all relevant information received from the consumer." *Ketsenburg v. ChexSystems, Inc*., No. 4:21-cv-220, 2022 WL 407136, at *5 (E.D. Mo. Feb. 10, 2022) (internal quotes & citations omitted); *Paul v. Experian Info. Sols., Inc*., 793 F. Supp. 2d 1098, 1102 (D. Minn. 2011).

"[A]bsent reason to doubt the reliability of such sources, a consumer reporting agency acts reasonably by relying upon reputable sources of information. *See, e.g., Henson v. CSC Credit Servs., Inc*., 29 F.3d 280, 285 (7th Cir. 1994) ...." *Thomas v. Gulf Coast Credit Servs., Inc*., 214 F. Supp. 2d 1228, 1234 (M.D. Ala. 2002). " '[A] reporting agency's procedures will not be deemed unreasonable unless the agency has a reason to believe that the information supplied to it by a data furnisher is unreliable,' and nonetheless reports such information." *Leslie v. Experian Info. Sols., Inc*., No. 21-cv-334, 2023 WL 5000770, at *7 (D. Haw. Aug. 4, 2023) (*quoting Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 945 (11th Cir. 2021)); *see also Sarver v. Experian Info. Sols*., 390 F.3d 969, 972 (7th Cir. 2004).

The authorities that Horowitz cited do not support his contrary contention. The CFPB publication he cites states only:

> As part of the CRC's reasonable reinvestigation, the CRC is required to review and consider all relevant information submitted by the consumer. [¶] Examiners found that one or more CRCs did not comply with this obligation in certain circumstances. For example, in cases where consumers submitted certain categories of documentary evidence in support of a dispute, ***one or more CRCs failed to review and consider the attached documentation and relied entirely on the furnisher to investigate the dispute***.

CFPB, Supervisory Highlights Consumer Reporting Special Edition, Issue 14, pp. 10-11 (March 2, 2017) (fn. omitted; emphasis added).

That is a far cry from a requirement that a CRA conduct its own inquiries of third parties in every consumer dispute. Moreover, Horowitz does not contend that Chex did not consider the only document he attached to either of his disputes; namely, BANA's January 5, 2022 letter. Nor does he suggest what additional steps Chex should reasonably have taken other than what it did—that is, ask the letter's author, BANA, whether it showed that the furnished information was inaccurate.

Horowitz's other principal authority is equally off-base. He cites *Grigoryan v. Experian Info. Sols., Inc.*, 84 F. Supp. 3d 1044, 1066 (C.D. Cal. 2014). (Dkt. # 53, p. 18.) That portion of the *Grigoryan* decision discusses inaccuracy—the element of his claim that Horowitz has wrongly ignored—not a CRA's duties in response to a consumer dispute. It holds that a CRA's reported information is not, ipso facto, "accurate" simply because it faithfully transmits the information a furnisher provided. That, of course, is not the issue here, particularly has Horowitz has submitted neither evidence nor argument to prove the furnished information was inaccurate.

The portion of *Grigoryan* which does discuss a CRA's reinvestigation duties also does not support Horowitz's argument, holding only that genuine issues remained, barring summary judgment for a CRA which only submitted evidence that it had relied on its ACDV query and the furnisher's response, but did not show it had sent the furnisher all the information that the consumer had provided in his dispute. *Grigoryan*, 84 F. Supp. 3d at 1074-75. Of course, the fact that a CRA is not entitled to summary judgment does not show that the consumer is. Factual issues may remain for resolution barring summary judgment for either party.[6]

---

[6] "[A]s the Ninth Circuit has stated, the reasonableness of a credit reporting agency's procedures under the FCRA and whether the agency actually followed these procedures 'will be jury questions in the overwhelming majority of cases.' " *Soghomonian v. United States*, 278 F. Supp. 2d 1151, 1156 (E.D. Cal. 2003), vacated, No. 99-cv-5773, 2005 WL 1972594 (E.D. Cal. June 20, 2005) (*quoting Guimond v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1333 (9th Cir. 1995)).

70014.0757/16723469.2                                    - 15 -

DEFENDANTS' POINTS AND AUTHORITIES OPPOSING PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTION

Furthermore, Chex does not use the ACDV process at all (to be sure, Horowitz has shown no evidence to the contrary). Its proprietary Request for Reinvestigation form is different, more specific, and tailored to the different type of consumer data that Chex reports. Also, Horowitz does not and cannot claim that Chex failed to transmit to BANA all information his disputes contained.

Second, the facts: Horowitz is flat wrong in claiming that Chex "as a matter of policy does not perform reinvestigations" and "merely relies upon what it is told by its furnishers." (Dkt. # 53, pp. 18-19.) Chex's 30(b)(6) witness, Sarah Cables, said nothing of the sort. As detailed in defendants' Statement of Genuine Disputes (¶¶ 36(f)-(*l*)), Horowitz's argument is based on his gross mischaracterization of Cables' deposition testimony.

Chex scrupulously carried out its primary responsibility under § 1681i(a) of "notify[ing] the furnisher of the disputed information of the substance of the dispute and provid[ing] it with all relevant information received from the consumer." *Ketsenburg*, 2022 WL 407136, at *5; *see* Dkt. # 52-2, Ex. 5, Exs. 1, 8, 10, 13. Horowitz does not claim that Chex omitted any relevant information from the Requests for Reinvestigation that it sent BANA.

When Chex received BANA's responses to its Requests for Reinvestigation, it checked them to assure that they provided complete answers to Horowitz's disputes, verifying that the furnished information was accurate and complete and that the reason for closing the account matched the definition of "suspected fraud activity." Chex investigators noted BANA's responses in the consumer electronic file before sending Horowitz notice of the resolution of his disputes. (Dkt. # 47-2, ¶¶ 17-18.)

Horowitz's discussion of Chex's response to his first dispute is, again, based on gross mischaracterizations of Cables' testimony. She did not say that "if Horowitz did not stop payment on the Check, he should NOT have been reported as having engaged in suspected fraud activity." (Dkt. # 53, p. 18.) Instead, Cables testified

DEFENDANTS' POINTS AND AUTHORITIES OPPOSING PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTION

that Horowitz's account should not have been reported if the Check was the basis for BANA's reporting the account and if the facts stated in Horowitz's first dispute were true; namely, that Union Bank issued a stop payment on the Check through no fault of his own and that Union Bank made the check good as it was Union Bank's fault alone that the stop payment order was issued. (Kenney Opp. Decl., Ex. 2 (Cables Depo.), 61:8-62:14.)

In fact, as previously stated, the Check was *not* the sole basis for BANA's reporting the account. (*See* p. 4 above.) And the facts that Horowitz's first dispute stated were *not* true. Union Bank stopped payment on the Check, but not through no fault of Horowitz's. As already explained, the Check was issued by mistake despite the garnishment freeze on COD's account and as a result of Horowitz's attempt to transfer funds out of the account to avoid the garnishment and defraud the garnishing creditor. (*See* p. 6 above.) Horowitz's conduct caused the mistake which was the reason the stop payment was placed once Union Bank realized its mistake. Nor was it true that Union Bank eventually paid BANA because it was Union Bank's fault alone that the stop payment order was issued. Union Bank paid because it had issued a cashier's check of which BANA was a holder in due course against whom a stop payment order was no defense. Com. Code, §§ 3302(a)(1), 3305(b), 3411(b).

More importantly, BANA was clearly in a better position to determine these facts than Chex was. Only BANA knew why it suspected fraudulent activity and closed the 2815 Account. As a fellow bank, BANA was far better able to secure relevant information from Union Bank than Chex was. And, as the one which had demanded and received payment from Union Bank, BANA was better able to determine why the payment had been made.

Other than his dispute, Horowitz points to no fact that should have made Chex question the information BANA provided after reinvestigating the matter. That Horowitz disputed BANA's information was not sufficient reason to cause

DEFENDANTS' POINTS AND AUTHORITIES OPPOSING PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTION

Chex to question BANA's response to the Request for Reinvestigation. Otherwise, Chex would be required to conduct its own reinvestigation whenever a consumer disputed furnished information. As already shown, the FCRA imposes no such burdensome duty on a CRA.

Horowitz's second dispute was spare. The only information it provided was BANA's January 5, 2022 letter and Horowitz's statement that he had resolved his dispute with BANA and that it had agreed to remove the negative information. Chex sent that information, including the January 5 letter, to BANA with its Request for Reinvestigation. (Dkt. 53-3, Ex. 25.) Chex carefully reviewed BANA's response. (Dkt. # 47-2, ¶¶ 17-18.) Horowitz says that Chex should have considered the letter and made further inquiry as to its validity. (Dkt. # 53, p. 19.) But that is exactly what Chex did. It considered the letter and sent it to BANA asking it to verify that the furnished information was accurate even in light of the letter. There was no one else to ask about the January 5 letter or the supposed resolution of the dispute between Horowitz and BANA.

In short, the evidence is not " 'so one-sided as to rule out the prospect of a finding in favor of [Chex,] the non-movant on the claim' " under § 1681o, let alone § 1681n. *Kong*, 2019 WL 6769870, at *4. Accordingly, Horowitz's motion must be denied.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

70014.0757/16723469.2

- 18 -

DEFENDANTS' POINTS AND AUTHORITIES OPPOSING PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTION

## IV.

## CONCLUSION

For the reasons stated above, the Court should deny Horowitz's motion for partial summary judgment.

DATED: February 27, 2024         SEVERSON & WERSON
                                 A Professional Corporation


                                 By:    _*/s/ Matthew J. Esposito*_____
                                        MATTHEW J. ESPOSITO

                                 Attorneys for Defendants CHEX SYSTEMS, INC. and BANK OF AMERICA, N.A.

70014.0757/16723469.2                   - 19 -