James W. Kirby (State Bar No. 304136)
james@aklawgroup.net
AK Law Group
10850 Wilshire Blvd., Suite 301
Los Angeles, CA 90024
(530) 308-3097

Gary A. Hansz (*Pro Hac Vice*)
gary.hansz@crlam.com
Credit Repair Lawyers of America
39111 Six Mile Road, Suite 142
Livonia, MI 48152
(248) 353-2882

Attorneys for Plaintiff,
Brian Horowitz

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN HOROWITZ,<br><br>        Plaintiff,<br><br>  vs.<br><br>CHEX SYSTEMS, INC., et al.,<br><br>        Defendants. | Case 8:22-cv-02002-DFM<br><br>REPLY TO DEFENDANT DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br><u>Hearing</u><br>Date:    March 19, 2024<br>Time:    10:00 a.m.<br>Ctrm.:   6B |

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................i

TABLE OF AUTHORITIES ............................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES ...................................... 1

   I.     SUMMARY OF ARGUMENT ................................................................ 1

   II.    LAW AND ARGUMENT ........................................................................ 2

   III.   HOROWITZ IS ENTITLED TO SUMMARY JUDGMENT ON HIS FCRA CLAIMS AGAINST EACH DEFENDANT FOR THEIR RESPECTIVE FAILURES TO CONDUCT A REASONABLE REINVESTIGATION INTO HIS DISPUTES. ..................................... 2

      A.   ChexSystems Admitted that Bank of America Reported False Information about Horowitz. ................................................... 2

      B.   Bank of America's Attempt to Distance itself from Cables' Deposition Testimony Fails. .................................................... 4

      C.   Bank of America has no basis for a Fraudulent Transfer Defense Against Horowitz ................................................................... 5

      D.   Bank of America's Reinvestigations were Unreasonable as a Matter of Law. ...................................................................... 7

        i.   The Bank Wrongfully Attempts to Conflate its Subjective Belief that Horowitz engaged in Suspected Fraud Activity with its duty to comply with Chex's Objective Standard for Reporting him as such. ............................................. 7

        ii.   The Bank failed to Conduct any Reinvestigation into the First Dispute. ............................................................................... 8

        iii.   The Bank's Reliance on the Reasonableness of Thompson's Initial Investigation is Misplaced. ............................................ 9

        iv.   The Bank's Credit Reporting Staff's Job IS to question the Fraud Investigators. ........................................................... 10

OPPOSITION TO DEFENDANT CHEX SYSTEMS, INC.'S MSJ

v.    Bank of America's Reinvestigation of the Second Dispute was Unreasonable as a Matter of Law. ...................................................12

E.    The Bank's Post Litigation Refusal to Remove the False Information About Horowitz is admissible to Show the Continued Inflicting damages to him. ...........................................................................13

IV.   HOROWITZ IS ENTITLED TO DAMAGES FOR A WILLFUL VIOLATION OF THE FCRA at §1681n AGAINST BOTH DEFENDANTS FOR THEIR RESPECTIVE FAILURES TO CONDUCT A REASONABLE REINVESTIGATION.........................15

A.    ChexSystems Reinvestigations were Unreasonable as a Matter of Law. ........................................................................................17

i.    ChexSystems Attempt to Deflect Responsibility for its Own Duty to Conduct a Reasonable Reinvestigation under §1681I Fails As A Matter of Law. ..................................................................18

1.    ChexSystems Reliance on the Gorman Case to deflect its reinvestigative duties under statute is Misplaced. .......................18

2.    ChexSystems Reliance on the Ketsenburg Case is misplaced as that case is distinguishable. ...........................................................20

B.    ChexSystems Should Have Verified With  BOA Whether it had Sufficient Information to Comply with the Chex Standard as Horowitz raised a serious Question as to Whether the Furnisher had such information. ...........................................................................21

C.    ChexSystems Attempt to Mischaracterize the Admissions of its Own FRCP 30(b)(6) Witness is Futile. .......................................23

CONCLUSION ...................................................................................24

CERTIFICATE OF COMPLIANCE ...................................................25

OPPOSITION TO DEFENDANT CHEX SYSTEMS, INC.'S MSJ

# TABLE OF AUTHORITIES

Cases

*Cushman v. Trans Union Corp.,* 115 F.3d 220, 225 (3d Cir.1997 .......................18

*Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147 (9th Cir. 2009*)* .........11, 12

*Henson v. CSC Credit Services*  29 F.3d 280, 285 (7th Cir. 1994)................17, 20

*Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426 (4th Cir. 2004) ..........................9

*Ketsenburg v ChexSystems, Inc.* No. 4:21-cv-220, 2022 WL 407136, at *5 (E.D. Mo. Feb. 10, 2022)..................................................................................20

*Mullins v. Equifax Info. Serv., L.L.C.*, 2007 WL 2471080 (E.D. Va. Aug. 27, 2007) ..............................................................................................9, 17

*Snapp v. United Transportation Union* 889 F.3d 1088, 1103 (9th Cir. 2018)........4

*White v. Trans Union, LLC* 462 F.Supp.2d 1079, 1083 (C.D. Cal. 2006). ...........19

Statutes

*15 U.S.C. § 1681i(a)(2)* .......................................................................................14

15 U.S.C. § 1681s–2(b)(1) .....................................................................................7

15 USC §1681s-2(b) ....................................................................................5, 8, 12

Other Authorities

*FTC Staff Summary § 611(a) item 2 (2011)* ...............................................7, 13, 14

 *In re Equifax, Inc.*, 96 F.T.C. 1045 (F.T.C. 1980) ................................................13

In re MIB, Inc., 101 F.T.C. 415, 423 (F.T.C. 1983) ..............................................14

*Zala v. Trans Union, L.L.C.,* 2001 U.S. Dist. LEXIS 549 (N.D. Tex. Jan. 17, 2001) ...................................................................................................14

Rules

FRE 408 .................................................................................................................11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  SUMMARY OF ARGUMENT

Bank of America, in its response, has conflated the phrase "suspected fraud activity" as used for the reason it closed Plaintiff's accounts with that same phrase as it reported to ChexSystems. There is a huge difference between these uses of this phrase.  The former use is only for the Bank's internal purposes to note why it closed an account.  The phrase "suspected fraud activity" when used internally, is not governed by Chex or the FCRA.  On the other hand, the use of this phrase, when reported to ChexSystems, is governed by both Chex and the FCRA.  In this context, the phrase defines a standard that must be met by BOA as a precondition to reporting a consumer to Chex as having engaged in Suspected Fraud Activity. In its response, Chex blurs the line distinguishing these two different uses of this phrase.  This is patently misleading.

The Bank has avoided discussing Chex's standard for reporting a consumer for Suspected Fraud Activity in its response.  Instead, it implores this Court to believe that because Thompson suspected Horowitz of engaging in fraudulent activity, that it gave BOA the right to report him as such to Chex.  It did not give the Bank any such right.  Horowitz gave that Bank two chances to remove this unearned smear by positing two disputes.  The Bank laid waste to both of them and robotically confirmed to Chex its errant reporting of Horowitz.  The FCRA,

-1-
OPPOSITION TO DEFENDANT CHEX SYSTEMS, INC.'S MSJ

as discussed below, requires a re-investigation and not merely a cursory or sloppy review of one's records as both Defendants have done in this case.

## II.     LAW AND ARGUMENT

## III.    HOROWITZ IS ENTITLED TO SUMMARY JUDGMENT ON HIS FCRA CLAIMS AGAINST EACH DEFENDANT FOR THEIR RESPECTIVE FAILURES TO CONDUCT A REASONABLE REINVESTIGATION INTO HIS DISPUTES.

### A. ChexSystems Admitted that Bank of America Reported False Information about Horowitz.

ChexSystems has objectively defined the standard for reporting a consumer as having engaged in Suspected Fraud Activity as:

> *[A] violation of account privileges or furnisher policies allegedly to obtain unauthorized benefits or rights which has risen to the level of suspected fraud activity."*  Ex 17 24:6-10, Ex 25 p 5, Ex 31 p 3.  ("The Chex Standard").

The Chex Standard was contained in both Requests for Investigation initiated by Plaintiff and sent to BOA.  Chex testified that this is the standard for reporting a consumer to Chex for suspected fraud activity.  SUF 23.  Chex also testified that a consumer being reported for suspected fraud activity is a very serious notation to place on one's Chex report.  SUF 37d.  Determining whether Horowitz stopped payment on the Check was critical to the resolution of his dispute.  SUF 37f.  Chex also admitted that if the facts show that Union Bank and not Horowitz, stopped payment on the Check, as it was Union Bank's fault alone that the stop payment order was issued, then Horowitz should NOT have been

-2-
OPPOSITION TO DEFENDANT CHEX SYSTEMS, INC.'S MSJ

reported as suspected fraud activity.  SUF 37g.  This is precisely what the deposition testimony in this case has proven.

Union Bank testified that it stopped payment on the Check without any advance notice to Horowitz.  SUF 14-16.  Thus, Horowitz should never have been reported to Chex as having engaged in Suspected Fraud Activity in the first place. This was discussed in Plaintiff's brief Dkt 53 p 24:24-25:4.  However, BOA still reported him as such to Chex and not because Horowitz fit the definition or standard set forth by Chex in both its requests for investigation to BOA.  BOA reported Horowitz as having engaged in suspected fraud activity because the Check was "purchased by [a] business owned by the purchaser or the remitter and, according to Union Bank, the same remitter stopped payment on the check. SUF 23.  Thompson's criteria for causing BOA to report Horowitz to Chex did not meet the standard set forth by Chex.  SUF 23, 26.

Thompson's subjective views of Horowitz do not meet the Chex Standard. SUF  23.  Suspected Fraud Activity is a very serious notation to place on a consumer's credit report.  SUF 37d.  While the Bank may have been satisfied that it closed Horowitz's accounts because Thompson had his subjective suspicions about Horowitz, this was insufficient to meet the Chex Standard for reporting him as such.  SUF 23.  The Chex Standard required BOA to conduct a further investigation to establish who stopped payment on the Check.  SUF 37f. Thompson never investigated this question to a conclusion.  SUF 24.  The only

-3-
OPPOSITION TO DEFENDANT CHEX SYSTEMS, INC.'S MSJ

information he ever received regarding the identity of who stopped payment on the Check, was a single telephone call to Union Bank's customer service department where he was "referred to the remitter" of the Check. SUF 21, 24. The remitter of the Check was COD and not Horowitz. Ex 7. Without proof that Horowitz stopped payment on the Check or caused it to happen, the Bank failed meet the Chex Standard to show that Horowitz attempted to obtain unauthorized benefits or rights which has risen to the level of suspected fraud activity, as defined by Chex. Conclusively, BOA's reporting of Horowitz for Suspected Fraud Activity was patently inaccurate.

### B. Bank of America's Attempt to Distance itself from Cables' Deposition Testimony Fails.

BOA attacks its co-Defendant's testimony, when it alleges that [Cables] did not testify as an expert. Her views do not set the standard for a reasonable reinvestigation and are not, in any sense, binding on BANA." Dkt 62 8:5-8. BOA is mistaken. As Chex' FRCP 30(b)(6) witness, her testimony is binding on Chex. *Snapp v. United Transportation Union* 889 F.3d 1088, 1103 (9th Cir. 2018). Because Chex, as a credit reporting agency, set forth that standard for when a consumer should be reported for suspected fraud activity, that testimony is binding on BOA, as a furnisher. That standard was communicated to BOA in both disputes that Horowitz posited to BOA. Ex 25 p 5, and Ex 31 p 3. Cables testified that this was the standard. SUF 23.

-4-
OPPOSITION TO DEFENDANT CHEX SYSTEMS, INC.'S MSJ

Moreover, Cables was not asked for her opinion about the standard for reporting a consumer for Suspected Fraud Activity, but was asked to verify the Chex Standard.  SUF 23.  Chex testified that it was an important factor, if not critical,  for BOA to have determined who stopped payment on the Check to resolve his dispute.  SUF 37f.  BOA never resolved this issue.  At least, it never had any information that Horowitz had anything to do with stopping payment on the Check.  SUF 24.  He never knew who stopped payment on the Check before reporting Horowitz to Chex for having engaged in suspected fraud activity.  Chex also testified that if Horowitz did not stop payment on the Check, that he should not have been reported as Suspected Fraud Activity.  SUF 37g.  Union Bank testified that Horowitz did NOT stop payment on the Check; rather Union Bank did.[1]

### C. Bank of America has no basis for a Fraudulent Transfer Defense Against Horowitz

BOA, for the first time, is defending this case alleging that Horowitz engaged in fraudulent activity.  This defense should not be considered by the Court as it was not alleged as a defense in its Answer to Plaintiff's First Amended Complaint.  Dkt 33 p 16-22.

---

[1] BOA falsely alleged that Plaintiff "snookered" Kyle Connors at Union Bank to lift the freeze on his account.  Dkt 62 11:5.  However this allegation is unsupported by the testimony from Union Bank.  Moreover, Defendant has failed to cite any evidence of any such "snookering."

OPPOSITION TO DEFENDANT CHEX SYSTEMS, INC.'S MSJ

Secondly, the Plaintiff's claims allege a violation of BOA's and Chex's respective duties to conduct a reasonable reinvestigation under the FCRA by failing to conduct a reasonable reinvestigation as required by 15 USC §1681s-2(b) and §1681i, respectively.  The Fraudulent Transfer Defense, even if there were a basis for such a defense, is not applicable to the question of whether either defendant performed a reasonable reinvestigation into Plaintiff's disputes.

As noted above, the phrase "Suspected Fraud Activity" has a specific definition as set forth in the Chex Standard.  The only question is whether BOA complied with that standard before reporting Plaintiff as such.  The evidence shows that it did not.  SUF 14-16.  Hence, by BOA confirming this false information to Chex, BOA failed to conduct a reasonable reinvestigation as did Chex.

Finally, Cal. Civ. Code §3439.04(a)(1) states, in part  "A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer….  By its plain language, this statute applies to "debtors."  Horowitz was not a debtor to the pending garnishment.  Moreover, BOA was not a creditor to Horowitz or to COD.  Hence this statute is wholly inapplicable.

OPPOSITION TO DEFENDANT CHEX SYSTEMS, INC.'S MSJ

**D. Bank of America's Reinvestigations were Unreasonable as a Matter of Law.**

    i. The Bank Wrongfully Attempts to Conflate its Subjective Belief that Horowitz engaged in Suspected Fraud Activity with its duty to comply with Chex's Objective Standard for Reporting him as such.

The Bank attempts to conflate its reason for closing Horowitz's account with its requirement to meet the Chex Standard for Horowitz to Chex. This is confusing and highly misleading. The Bank's closing of Horowitz's account for suspected fraud has no applicability to Chex and no effect on Horowitz outside of the Bank. BOA is certainly free to close out accounts for whatever reasons it wants. However, that is not true when it comes to credit reporting.

In order to report Horowitz to Chex for having engaged in Suspected Fraud Activity, a term that appeared glaringly on his consumer credit report, BOA was required to have very certain information in its possession that met the Chex Standard. SUF 37h, Ex 25 p 5 and 31 p 3. That standard is "[A] violation of account privileges or furnisher policies allegedly to obtain unauthorized benefits or rights which has risen to the level of suspected fraud activity." SUF 37. This is an objective standard. The Bank's attempt to conflate its reason for closing Horowitz's account did not meet the Chex Standard for reporting him to Chex.

The Defendants attempt to state that Horowitz disputed *the reason* for his account closure. Dkt 62 14:17-18. The *reason* for BOA's closure of Plaintiff's accounts was not what Horowitz was disputing. He was disputing the phrase "suspected fraud activity" that appeared on his Chex report and caused financial

-7-

OPPOSITION TO DEFENDANT CHEX SYSTEMS, INC.'S MSJ

institutions such as Orange County's Credit Union to close his accounts, and NuVision to deny him new accounts. SUF 34, 75-78, 89. This phrase, "suspected fraud activity", was disseminated to other financial institutions as it appeared on his credit report with Chex and it was inaccurate. The Bank had no right to report Horowitz to Chex for Suspected Fraud Activity without complying with Chex stated standard. Thompson's subjective opinions about Horowitz did not meet the Chex standard. Dkt 62 15:23-24. Thompson's opinion simply did not meet the Chex Standard and thus, BOA's reporting of Horowitz for suspected fraud activity was inaccurate.

> ii. The Bank failed to Conduct any Reinvestigation into the First Dispute.

In his First Dispute, Horowitz made clear that he should not have been reported to Chex as Suspected Fraud Activity because Union Bank stopped payment on the Check and not him. Ex 31, p 3, SUF 36. In this case Carly Adams investigated nothing about the dispute before verifying it as accurate to Chex. SUF 38-44, 45-47. She was instructed by BOA to use the information provided by the RISC Department in the Flash System. SUF 45-46. She had no idea why Horowitz was reported as such to Chex, or whether he ever engaged in any such behavior to earn that red flagged reporting. SUF 40-42. Worse yet, she had no idea what Suspected Fraud Activity even meant before she confirmed it as accurate reporting to Chex. SUF 39. This is not a re-investigation. This is not

-8-
OPPOSITION TO DEFENDANT CHEX SYSTEMS, INC.'S MSJ

any kind of an investigation.   In *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430-431 (4th Cir. 2004), the Court held that the plain meaning of "investigation" clearly requires some degree of careful inquiry by creditors.  15 U.S.C. § 1681s–2(b)(1) requires creditors, after receiving notice of a consumer dispute from a credit reporting agency, to conduct a reasonable investigation of their records to determine whether the disputed information can be verified.  Bank of America failed to perform any investigation into the Plaintiff's First Dispute.  As a matter of law, its purported reinvestigation was unreasonable.

> iii.  The Bank's Reliance on the Reasonableness of Thompson's Initial Investigation is Misplaced.

The Bank relies heavily on Thompson's initial investigation as being reasonable.  Dkt 62 8:1-2.  But this is not the standard for a reinvestigation.  The investigation is called a reinvestigation, presumably because the CRA initially added to its files the item of disputed information only after employing reasonable procedures to ensure maximum possible accuracy in the first place. See *Mullins v. Equifax Info. Serv., L.L.C.*, 2007 WL 2471080 at *5 (E.D. Va. Aug. 27, 2007).  A reinvestigation must be a good faith effort to determine the accuracy of the disputed item.  *FTC Staff Summary § 611(a) item 2* (2011).

In this case, Carly Adams failed to conduct any reinvestigation required by statute and interpreted by case law.  She did not perform any degree of inquiry to determine whether Horowitz's dispute, that he did not stop payment on the

-9-

OPPOSITION TO DEFENDANT CHEX SYSTEMS, INC.'S MSJ

Check, could have been verified.  A reasonable reinvestigation required Adams to double check with the RISC Department to determine if Horowitz had stopped payment on the Check.  If it answered her truthfully and responded either "We don't know for sure" as Thompson had testified or even "We were referred to the remitter", as Thompson had also testified, she would have realized that the Bank lacked sufficient information to meet the Chex Standard for reporting Horowitz for  Suspected Fraud Activity.  Instead, she robotically confirmed the negative reporting about Horowitz as having engaged in this nefarious activity, as accurate.  SUF 44 and Ex 31.  Again, as a matter of law, BOA's response to Horowitz's First Dispute fails as a matter of law.

> iv.  The Bank's Credit Reporting Staff's Job IS to question the Fraud Investigators.

Kevin Williams testified as BOA's FRCP 30(b)(6) witness on reinvestigations.  He testified that "The fraud investigators decide whether an account should be closed for suspected fraudulent activity.  The credit reporting staff do not second guess that decision, but may, if given sufficient new information, ask the fraud investigators to do so."  SUF Willaims Dep 44:20-45:20.  This process is contrary to the statutory requirements required of a furnisher such as BOA under 15 USC §1681s-2(b) for two reasons.

First, it IS the credit reporting staff's job to conduct a reasonable reinvestigation.  By its ordinary meaning, an "investigation" requires an inquiry

-10-
OPPOSITION TO DEFENDANT CHEX SYSTEMS, INC.'S MSJ

likely to turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review of the dispute. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1155 (9th Cir. 2009) (emphasis added). Carly Adams did not do that. She simply responded to Horowitz's First Dispute with the information that she was instructed to by the RISC Department.  SUF 44,45. A reasonable reinvestigation would have required her to double check with the Fraud Investigator, whether Horowitz met the Chex Standard of  "[A] violation of account privileges or furnisher policies allegedly to obtain unauthorized benefits or rights which has risen to the level of suspected fraud activity."  SUF 37g. William's testimony stating that she is not permitted to second guess the fraud investigator absent new information, puts a reasonable reinvestigation out of her reach.  There is no requirement under §1681s-(b) for a consumer provide any new information in order to require an investigator to conduct a reasonable reinvestigation.

Second, BOA's prohibition of an investigator "second guessing" a fraud investigator's finding of fraud, conflates the Bank's internal reason for closing an account with the Chex Standard.  The Bank's internal notes showing that it believed that consumer engaged in suspected fraud activity, whether well founded or not, is not governed by the FCRA.  However, the Bank may not report a customer to Chex as Suspected Fraud Activity unless it has information showing that the customer met the Chex Standard.  These are two very different things which is why a credit

-11-
OPPOSITION TO DEFENDANT CHEX SYSTEMS, INC.'S MSJ

report investigator should absolutely question a fraud investigator as to whether the Bank has information to meet the Chex Standard.

### v. Bank of America's Reinvestigation of the Second Dispute was Unreasonable as a Matter of Law.

Pankowski received Plaintiff's Second Dispute along with the Removal Letter. Ex 25, Ex 30. He was informed by Horowitz, that the latter had resolved the issue with the Bank and attached the Removal Letter as proof. Ex 25 p 5. By its ordinary meaning, an "investigation" requires an inquiry likely to turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review of the dispute. *Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1155 (9th Cir. 2009*)* (emphasis added). Pankowski simply disregarded the Removal Letter without questioning why his employer, the Bank, would have sent Horowitz a letter stating that it removed him from Chex related to an account never reported to it. SUF 81c.

BOA believes that it took the "clarity of hindsight" to ask this question. Dkt 62 p 10:6-9. This is not so. Pankowski testified that at the time he simply disregarded the Removal Letter, he knew that it recited the wrong account number and that BOA had not reported any other account number to Chex. SUF 81a-c. Thus, it did not take "hindsight" to form such an obvious question; just a bit more consideration. Pankowski failed to ask himself or anyone else, this very question.

OPPOSITION TO DEFENDANT CHEX SYSTEMS, INC.'S MSJ

Worse yet, Pankowski saw Herrington's note in the Flash System to delete the negative reporting about Horowitz, but he did not understand what she meant. SUF 81e. He never called or emailed her for clarification. SUF 81f. He simply disregarded that, too. SUF 81e. Defendant muses whether it was the benefit of hindsight that allowed one to come to the conclusion that may be Pankowski should have picked up a phone or sent an email to Herrington. Hindsight has nothing to do with it. This is the very essence of a sloppy review. Pankowski was not in search of the truth or attempting any inquiry likely to turn up information about the underlying facts; he was completely apathetic to his job.

### E. The Bank's Post Litigation Refusal to Remove the False Information About Horowitz is admissible to Show the Continued Inflicting damages to him.

Horowitz, through counsel, attempted to mitigate the damage inflicted on him for the false information it reported to Chex, by bringing it to the attention of its counsel. Ex 26. When Horowitz's counsel presented the Removal Letter and asked for the removal of the negative information, the Bank, through its counsel declined that request. *Id*. This email exchange is admissible to show two things. First, Horowitz attempted to mitigate his damages by bringing the Removal Letter to the attention of the Bank's counsel who, hopefully, would have noticed the error in account number and caused the Bank to remove the information immediately.

-13-
OPPOSITION TO DEFENDANT CHEX SYSTEMS, INC.'S MSJ

Secondly, the email exchange shows that the Bank's refusal to remove the inaccurate information was not a "glitch" as it glibly described in its Motion for Summary Judgment; rather, it was part of a pattern to willfully flaunt its duties under the FCRA and continue to  cause damage to the Plaintiff.  Dkt After all, Horowitz was finally able to open bank accounts only after BOA had agreed to remove the negative reporting to Chex.  SUF 89-90.

Defendant's attempt to cloak its response email with "Confidential Settlement Communication" is unavailing.  Plaintiff's counsel did not send an email asking for any settlement.  He just wanted to stem the tide of damages to Plaintiff which the Bank refused to do.  Defense counsel's response declining to stem the tide of damages is not protected by FRE 408.   This Rule of Evidence provides:

> *(a) Prohibited Uses. Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:*
> *(1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and*
> *(2) conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.*

> *Fed. Rules Evid. 408*

-14-
OPPOSITION TO DEFENDANT CHEX SYSTEMS, INC.'S MSJ

In this case, Plaintiff had not offered to compromise his claims with BOA. He was merely attempting to stem the tide of damages inflicted by BOA's negative reporting to Chex.  This court rule does not make the email exchange between counsel, inadmissible.

### IV. HOROWITZ IS ENTITLED TO DAMAGES FOR A WILLFUL VIOLATION OF THE FCRA at §1681n AGAINST BOTH DEFENDANTS FOR THEIR RESPECTIVE FAILURES TO CONDUCT A REASONABLE REINVESTIGATION.

Kevin William's testimony shows that the Bank, institutionally, does not conduct any reinvestigation in response to a consumer's dispute unless the consumer produces new information.  SUF 48-53.  Defendant repeated accuses Plaintiff of "mischaracterizing" that testimony and yet is silent on *how* Plaintiff had done so.  To remove any doubt, Williams testified: "*But the actual reinvestigation process was to review new information that was provided.· There was no new  actionable reinvestigation information provided; therefore, the original decision stands*."  SUF 53.  This is the very definition of a failure to conduct a reasonable reinvestigation.  There is no requirement under 15 USC §1681s-2(b) for a consumer to provide "new actionable information" in connection with a dispute as a condition to triggering a furnisher's duty to reinvestigate.

Pankowski's reinvestigation into Plaintiff's Second Dispute was an absolute abdication of BOA's duty to conduct a reasonable reinvestigation. Again, Defendant attempts to excuse Pankowski from his job duties due to "hindsight." There was no "hindsight" required for a reasonable person to have asked the question that he should have. He received the Removal Letter from the Bank, his employer, on its own letterhead, addressed to Horowitz stating that it would remove negative reporting about him to Chex. He disregarded the letter because, according to his testimony, it recited the wrong account number. Any reasonable person performing that job of reinvestigating a dispute to uncover facts likely to turn up information would have asked "Why did the Bank issue a letter related to an account not reported to Chex?"

Secondly, there was a notation in the Bank's Flash System informing Pankowski and others that the negative information should be removed about Horowitz. SUF 79e. Pankowski did not understand it. But the phrase that appeared "Fraud Opps – deposit fraud detection delete, Herrington, Leslie 1/5/22" did not require the benefit of hindsight to know what this message meant or even to what it was alluding. That note had the same date as the Removal Letter of January 5, 2022. Ex 30. Instead of investigating further, as was his job and required by the FCRA, he simply disregarded it. SUF 79 e and f. If a reasonable person, performing a reasonable investigation saw both the Removal Letter and Herrington's note in the Flash system, he or she would not have needed the

-16-
OPPOSITION TO DEFENDANT CHEX SYSTEMS, INC.'S MSJ

benefit of "hindsight" to ask the simple question of why these two items exist and both suggest that the negative reporting should have been removed.

### A. ChexSystems Reinvestigations were Unreasonable as a Matter of Law.

As discussed in Plaintiff's Memorandum for Summary Judgment against ChexSystems, a CRA's reinvestigation must be reasonable.  A CRA on notice as to potentially inaccurate information in the consumer's file is in a very different position than a CRA without such notice.  *Henson v. CSC Credit Services*, 29 F.3d 280, 285 (7th Cir. 1994).  The investigation is called a reinvestigation, presumably because the CRA initially added to its files the item of disputed information only after employing reasonable procedures to ensure maximum possible accuracy in the first place.  See *Mullins v. Equifax Info. Serv., L.L.C.*, 2007 WL 2471080 at *5 (E.D. Va. Aug. 27, 2007).  A reinvestigation must be a good faith effort to determine the accuracy of the disputed item.  *FTC Staff Summary § 611(a) item 2* (2011).  The CRA must reinvestigate; it cannot merely tell users that the consumer disputes the report.  *In re Equifax, Inc.*, 96 F.T.C. 1045 (F.T.C. 1980).  More is usually required than simply confirming that the disputed information was in fact reported as it was received from the original source.  At a minimum, the CRA must check with both the original sources and other reliable sources of the disputed information.  See *15 U.S.C. § 1681i(a)(2); FTC Staff Summary § 611(a) item 2 (2011),* See also *Zala v. Trans Union, L.L.C.,*

-17-
OPPOSITION TO DEFENDANT CHEX SYSTEMS, INC.'S MSJ

2001 U.S. Dist. LEXIS 549 (N.D. Tex. Jan. 17, 2001); In re MIB, Inc., 101 F.T.C. 415, 423 (F.T.C. 1983) (consent order).

> i. ChexSystems Attempt to Deflect Responsibility for its Own Duty to Conduct a Reasonable Reinvestigation under §1681ı Fails As A Matter of Law.

**1. ChexSystems Reliance on the Gorman Case to deflect its reinvestigative duties under statute is Misplaced.**

In *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156 (9th Cir. 2009), the Ninth Circuit, in dicta, has stated that a CRA's investigation consists "largely of triggering the investigation by a furnisher and its obligations are more limited given the "reasonable" qualifier in section 1681i(a)). Defendant ChexSystems falsely believes that this relieves it of its duty to conduct a reasonable reinvestigation because all it is required to do is notify BOA of the dispute. This reliance is misplaced.

A CRA that seeks to deflect responsibility for this inaccuracy to the creditors upon whom it relies for information and falls back on its assertion that "a creditor is in a better position than a consumer reporting agency with regard to the ability to detect and correct errors in the reporting of a consumer's account" hardly suffices to establish, as a matter of law, that a "reasonable reinvestigation" amounts to an inquiry that goes only to confirmation of the accuracy of information from its original source. *Cushman v. Trans Union Corp.,* 115 F.3d 220, 225 (3d Cir.1997) ("The 'grave responsibility' imposed by § 1681i(a) must

consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute.") *White v. Trans Union, LLC* 462 F.Supp.2d 1079, 1083 (C.D. Cal. 2006).

In this case, ChexSystems attempts to deflect its responsibility to conduct a reasonable reinvestigation to Bank of America. Chex did nothing but forward the Plaintiff's disputes to BOA for dispute. In Plaintiff's First Dispute, Chex admitted that it had no reason to doubt Horowitz's position that he did not stop payment on the Check. SUF 37e. ChexSystems knew that in order for him to be reported as Suspected Fraud Activity, that BOA was required to show that Horowitz caused the stop payment order on the Check. SUF 37f. Horowitz raised this issue in his First Dispute. Ex 31. Chex did nothing to reinvestigate this question and simply relied on what it was told by BOA. SUF 37h, 37k. Further still, BOA had never resolved this question either. SUF 24. Indeed, Chex admitted that it takes no blame for BOA reporting information inaccurately. SUF 37l. Chex admits that relies upon the furnisher for reporting accurate information. SUF 37m. If a consumer disputes information, Chex merely double checks with the furnisher if that information is accurate. SUF 37n. ChexSystems reinvestigation in response to the Plaintiff's First Dispute fails as a matter of law. Likewise, its response to Plaintiff's Second Dispute, also fails as a matter of law as its policies and

OPPOSITION TO DEFENDANT CHEX SYSTEMS, INC.'S MSJ

procedures were no different. It simply forwarded Horowitz's dispute to BOA. SUF 37k.

As noted by Chex, if a CRA has reason to doubt the reliability of a source, it may not rely upon the furnisher's information. *Henson v. CSC Credit Services* 29 F.3d 280, 285 (7th Cir. 1994). [E]xclusive reliance may not be justified once the credit reporting agency receives notice that the consumer disputes information contained in his credit report. When a credit reporting agency receives such notice, it can target its resources in a more efficient manner and conduct a more thorough investigation. *Henson* at 286–287.

### 2. ChexSystems Reliance on the Ketsenburg Case is misplaced as that case is distinguishable.

The Defendants also attempts to avoid liability for their respective failures to conduct a reasonable reinvestigation by relying on *Ketsenburg v ChexSystems, Inc.* No. 4:21-cv-220, 2022 WL 407136, at *5 (E.D. Mo. Feb. 10, 2022) for the proposition that because furnisher reported that the Defendant's account was closed due to non sufficient funds, that this was proper reporting to Chex and thus, there was no inaccurate reporting by either the furnisher or by Chex as the CRA. Besides this case being out of circuit, not reported and not binding on this Court, the most distinguishing feature of this case from the present case is that Suspected Fraud Activity has a definite standard definition with which BOA was required to comply before it could report Horowitz as such. In Ketsenburg, there

was no discussion that "non sufficient funds" had any definition other than what the furnisher objectively reported and experienced.  Ketsenburg is distinguishable.

**B. ChexSystems Should Have Verified With  BOA Whether it had Sufficient Information to Comply with the Chex Standard as Horowitz raised a serious Question as to Whether the Furnisher had such information.**

Horowitz's First Dispute stated that he did not stop payment on the Check. Ex 31.  ChexSystems testified that establishing who stopped payment on the Check was critical to resolving Horowitz's Dispute.  SUF 37f.  Chex went even further and testified that if Horowitz did not stop payment on the Check, then he should not have been reported to Chex for Suspected Fraud Activity.  SUF 37g. In its response to Plaintiff's Motion for Summary Judgment, Chex defiantly states "[Horowitz does not] suggest what additional steps Chex should reasonably have taken other than what it did.  Dkt 62 p 15:4-5.  Common sense would dictate that in the face of this pivotal factual question of whether Horowitz stopped payment on the Check, that Chex was required to have verified with BOA whether Horowitz had stopped payment.  Failure to have this information means that BOA could not show that Horowitz met the Chex Standard.  Yet, Chex failed to make this simple inquiry to BOA. SUF 37h and 37i.  Instead, simply reported the information it received from BOA.  Ex 37k.  This is a willful violation of the

-21-
OPPOSITION TO DEFENDANT CHEX SYSTEMS, INC.'S MSJ

FCRA at §1681i and o.   Once Chex received Horowitz's First Dispute claiming that he did not have anything to do with the stop payment, Chex had reason to doubt the validity of the information that it was furnished by BOA.  At that moment, Chex was no longer entitled to rely upon BOA for continued reporting of that item, without conducting its own investigation.  *Henson* at 285-286.

Likewise, Chex's handling of Plaintiff's Second Dispute was also woefully inadequate.  Chex received the Removal Letter[2] and disregarded it because it recited an account number not provided to Chex. An investigator who attempts to search for information about the underlying facts as required by §1681i, would have asked BOA the question "Why did you create a letter removing negative information about an account that was never reported to Chex?"   It failed to do this. Like Horowitz's First Dispute, when he informed Chex that he had resolved the issue with BOA, Chex was no longer entitled to rely upon the information furnished by BOA.  It was required to perform a reasonable reinvestigation to uncover the truth.  ChexSystems' reinvestigation to Plaintiff's Second Dispute was unreasonable as a matter of law. *Henson* at 285-286

---

[2] Chex incorrect alleges that Horowitz attached the letter to both of his disputes.  Dkt 62 20:3.  This is untrue.  Horowitz only attached the Dispute Letter to his second dispute as the Dispute Letter was not written until well after he posited his First Dispute.

-22-
OPPOSITION TO DEFENDANT CHEX SYSTEMS, INC.'S MSJ

### C.   ChexSystems Attempt to Mischaracterize the Admissions of its Own FRCP 30(b)(6) Witness is Futile.

Chex attempts to mischaracterize its own witnesses' deposition testimony.

Chex states that Cables did not testify that if Horowitz did not stop payment on the Check, then she should have been reported as having engaged in Suspected Fraud Activity.  Dkt 62 16:26-28.  To remove any doubt, here is the colloquy between Plaintiff's counsel and Cables:

> Q.   Well, Mr. Horowitz informed Chex that Union
> 18   Bank issued a stop payment on a cashier's check through
> 19   no fault of his own and that Union Bank made the check
> 20   good as it was Union Bank's fault alone that the stop
> 21   payment order was issued.  Did you have any reason to
> 22   dispute that?
> 23        MR. MELAMED:  Objection.
> 24        THE WITNESS:  No, I mean -- but we just
> 25   provide the information to Bank of America to verify
>
> Page 62
> 1   what the consumer has indicated.
> 2   BY MR. JAVITCH:
> 3        Q.   Indeed, if this were the fact, would you
> 4   agree with me that Mr. Horowitz should not have been
> 5   reported as having engaged in suspected fraud activity
> 6   if this cashier's check was the basis for Bank of
> 7   America reporting him as such?
> 8             MR. MELAMED:  Objection.
> 9             THE WITNESS:  Would I agree that he shouldn't
> 10   have been reported as suspected fraud activity if what
> 11   he explained in the -- in his dispute is what occurred?
> 12   BY MR. JAVITCH:
> 13        Q.   Correct.
> 14        A.   I could agree with that.

Cables Dep p 61:17-62:14, SUF g.

Cables' testimony is irrefutable.  She gave this testimony.

-23-
OPPOSITION TO DEFENDANT CHEX SYSTEMS, INC.'S MSJ

## CONCLUSION

For these reasons, Plaintiff is entitled to Summary Judgment against both Bank of America and ChexSystems for violation of the Fair Credit Reporting Act. Neither Defendant conducted a reasonable reinvestigation into either of the Plaintiff's Disputes. As a matter of law, each reinvestigation was unreasonable.

Respectfully submitted

Dated: March 5, 2024      By: /s/ James W. Kirby
James W. Kirby
Gary A. Hansz
Attorneys for Plaintiff,
Brian Horowitz

-24-

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Brian Horowitz certifies that this brief contains 5769 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 5, 2024          By: /s/ James W. Kirby
                                   James W. Kirby
                                   Gary A. Hansz
                                   Attorneys for Plaintiff,
                                   Brian Horowitz

-25-
OPPOSITION TO DEFENDANT CHEX SYSTEMS, INC.'S MSJ