AUSTIN B. KENNEY (State Bar No. 242277)
abk@severson.com
MATTHEW J. ESPOSITO (State Bar No. 223445)
mje@severson.com
SEVERSON & WERSON
A Professional Corporation
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
Telephone: (949) 442-7110
Facsimile: (949) 442-7118

Attorneys for Defendants CHEX SYSTEMS, INC. and BANK OF AMERICA, N.A.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| BRIAN HOROWITZ,<br><br>Plaintiff,<br><br>vs.<br><br>CHEX SYSTEMS, INC., a foreign corporation, and BANK OF AMERICA, N.A., a foreign corporation,<br><br>Defendants. | Case No. 8:22-cv-02002-DFM<br><br>*Assigned for all purposes to Hon. Douglas F. McCormick*<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF BANK OF AMERICA, N.A.'S MOTION FOR SUMMARY JUDGMENT**<br><br>*Filed concurrently with Response to Plaintiff's Statement of Genuine Disputes*<br><br>Date:    March 19, 2024<br>Time:    10:00 a.m.<br>Crtrm.:  6B<br><br>Trial Date:    May 7. 2024 |

70014.0757/16729360.2

REPLY MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING BANA'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

*Page*

I.  BANA IS ENTITLED TO SUMMARY JUDGMENT ON HOROWITZ'S FCRA CLAIMS.................................................................1

    A.  The Information BANA Furnished Was Accurate ...............................1

    B.  BANA Conducted Reasonable Investigations Of Horowitz's Disputes ........................................................................2

    C.  Damages For Business Losses Are Not Recoverable Under The FCRA ....................................................................................4

    D.  Summary Judgment Should Also Be Granted As To Punitive Damages.....................................................................5

II.  BANA IS ENTITLED TO SUMMARY JUDGMENT ON HOROWITZ'S PROMISSORY ESTOPPEL CLAIM ...........................6

    A.  The January 5 Letter Made No Promise Of Future Performance.........6

    B.  Horowitz Did Not Rely To His Substantial Detriment........................6

    C.  Emotional Distress And Business Loss Damages Are Not Recoverable...............................................................................7

III.  BANA IS ENTITLED TO SUMMARY JUDGMENT ON HOROWITZ'S FRAUD CLAIM...............................................................8

    A.  Horowitz Cannot Prove Scienter Or Intent To Deceive ......................8

    B.  Horowitz Did Not Reasonably Rely On The January 5 Letter.............9

    C.  Horowitz Cannot Recover His Business Loss Damages On This Claim.......................................................................................10

IV.  CONCLUSION ................................................................................10

REPLY MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING BANA'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Dennis v. BEH-1, LLC*,
520 F.3d 1066 (9th Cir. 2008)................................................................5

*Erlich v. Menezes,*
21 Cal. 4th 543 (1999)...........................................................................7

*Gorman v. Wolpfoff & Abramson, LLP*,
584 F.3d 1147 (9th Cir. 2009)............................................................3, 5

*Grigoryan v. Experian Info. Sols., Inc.*,
84 F. Supp. 3d 1044 (C.D. Cal. 2014)...................................................5

*Henry v. Weinman*,
157 Cal. App. 2d 360 (1958)..............................................................6, 7

*Johnson v. MBNA Am. Bank, NA*,
357 F.3d 426 (4th Cir. 2004)..................................................................3

*Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.,* 34 Cal.
4th 960 (2004) ......................................................................................8

*Maiteki v. Marten Transp. Ltd.*,
828 F.3d 1272 (10th Cir. 2016).............................................................3

*Smith v. Wolf*,
No. 3:20-cv-1409, 2022 WL 17573917 (S.D. Cal. Nov. 14, 2022).....................7

*US Ecology, Inc. v. State of California,*
129 Cal. App. 4th 881 (2005)................................................................6

*Westra v. Credit Control of Pinellas*,
409 F.3d 825 (7th Cir. 2005)..................................................................3

*Statutes*

United States Code
Title 15
Section 1681n .........................................................................................5
Section 1681s-2 ......................................................................................5

# I.

## BANA IS ENTITLED TO SUMMARY JUDGMENT ON HOROWITZ'S FCRA CLAIMS

### A.   The Information BANA Furnished Was Accurate

Horowitz does not dispute that the essential first element of his FCRA claims against BANA, as a furnisher of credit information, is pleading and proof that the information BANA furnished was inaccurate. (*Cf.* Dkt. # 50-1, pp. 7-8 *with* Dkt. # 60, p. 10.)

BANA's motion showed that the information it furnished was accurate—i.e., that it closed Horowitz's 2815 Account because it suspected fraudulent activity in the account. After investigating the matter, Thompson reached that conclusion and recommended that the account be closed for that reason. (Dkt. # 50-1, p. 8; Dkt. # 51, ¶¶ 16, 17.)

In opposition, Horowitz argues that Thompson's conclusion did not match Chex's definition of "suspected fraud activity." (Dkt. # 60, p. 10.) But Horowitz does not say how Thompson's conclusion fell short of that standard. (*Id.*) BANA's opening memorandum showed that, contrary to Horowitz's argument, Thompson reached the reasonable conclusion that by depositing the Check into his 2815 Account, quickly transferring the money from that Account, before payment was stopped on the Check, and then not repaying BANA for the loss it suffered from those transactions, Horowitz had violated his account privileges to obtain unauthorized benefits—namely, $69,319 of BANA's money. (Dkt. # 50-1, p. 8.) That conclusion matches Chex's definition to a tee.

Horowitz also argues that before BANA closed his account for suspected fraudulent activity and reported that fact to Chex, it had to resolve who stopped payment on the Check—and it faults Thompson for not doing so. (Dkt. #60, p. 10.) Horowitz cites no authority for that proposition. Instead, he just mischaracterizes Chex's witness' testimony, which is not the law and is not binding on BANA. (*Id.*)

REPLY MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING BANA'S MOTION FOR SUMMARY JUDGMENT

Also, Horowitz fails to suggest how Thompson could possibly determine which of the conflicting accounts he received was the truth. He had no subpoena power. He was not a judge or jury. And his conclusion was a suspicion of fraudulent activity—not an indictment—a suspicion which was as justified by the actual facts later developed in discovery as it was by the fewer facts available to Thompson. (*See* Dkt. # 50-1, p. 9.)

Horowitz urges the Court to ignore his admission that the Check was issued with the actual intent of defrauding COD's garnishing judgment creditor because, he says, the answer waived the issue by not mentioning it. (Dkt. # 60, p. 10.) Horowitz is wrong. Inaccuracy is an element of his claim, not an affirmative defense. Horowitz's FAC alleged the furnished information was inaccurate. (Dkt. # 31, ¶¶ 7, 8, 40.) BANA's answer denied that allegation. (Dkt. # 33, ¶¶ 7, 8, 40.) Nothing further was required to preserve the issue.

Horowitz also contends that "this position avoids the standard required by Chex" (Dkt. # 60, p. 10.) Apparently, he means that Thompson did not know the true facts proving that Horowitz used his 2815 Account to obtain unauthorized benefits. But the issue here is accuracy of the furnished information, not what BANA knew when it closed the account. Chex's standards do not require the furnisher to know the true facts when it reports an account for *suspected* fraudulent activity.

Here, the furnished information was strictly accurate. BANA closed the 2815 Account for suspected fraudulent activity, as it reported to Chex. Its suspicion was fully justified both by the information available to it at the time and by the true facts. Horowitz cannot establish the critical first element of his FCRA claims. So, BANA is entitled to summary judgment on those claims.

**B.      BANA Conducted Reasonable Investigations Of Horowitz's Disputes**

Opposing BANA's showing that it conducted reasonable investigations of his two disputes, Horowitz largely repeats the arguments he stated in his cross-motion for partial summary judgment. (*Cf.* Dkt. # 60, pp. 10-12 *with* Dkt. 53, pp. 9-12.)

BANA has already answered those arguments in its opposition to Horowitz's cross-motion (Dkt. # 62, pp. 6-12) and, to avoid repetition, presents only a quick summary of them below.

Contrary to Horowitz's argument, BANA was not required to re-investigate the suspected fraudulent activity in response to his first dispute. The information Horowitz disputed was BANA's reason for closing the 2815 Account. That reason was stated in BANA's systems of record which Adams reviewed in response to his dispute. (Dkt. # 52-1, Ex. 3, 36:12-37:4, 50:20-51:13, 56:22-25, 57:4-20, 59:13-18.)

While a furnisher's investigation may be unreasonable if it *always* relies solely on the furnisher's own computer records, *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 432-33 (4th Cir. 2004), a furnisher may rely on its own records when, as here, the circumstances warrant its doing so, *Maiteki v. Marten Transp. Ltd.*, 828 F.3d 1272, 1276 (10th Cir. 2016); *Gorman v. Wolpfoff & Abramson, LLP*, 584 F.3d 1147, 1159-60 (9th Cir. 2009); *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005).

Horowitz does not claim that Adams should have looked to any other source of information to determine why BANA closed the 2815 Account. Instead, he criti-cizes Adams for not duplicating the investigation that Thompson had already carried out. (Dkt. # 60, pp. 10-11.) He is wrong. The disputed information was BANA's reason for closing the account. Adams correctly determined that the furnished infor-mation correctly reflected the real reason BANA closed the account. She was not called upon to determine whether the account should have been closed for that reason—that is, to recheck Thompson's investigation.

Furthermore, Horowitz cannot show that any duplication of Thompson's investigation would have led to a different conclusion. There is 's no reason to think that Union Bank would have answered a second inquiry any differently than it answered Thompson. And any more searching review would likely have revealed the truly fraudulent activity that Horowitz now admits he engaged in. (See Dkt.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING BANA'S MOTION FOR SUMMARY JUDGMENT

# 62, pp. 7-8; p. 2 above.)

Pankowski's reinvestigation of Horowitz's second dispute was also reasonable. Again, the disputed information was only BANA's reason for closing the 2815 Account. Pankowski reviewed BANA's systems, the account, and the RISC Department's comment as to the reason it recommended account closure, concluding that the account had, indeed, been closed for suspected fraudulent activity, as BANA reported to Chex. (Dkt. # 53-1, Ex. 8, 70:1-71:18.)

Horowitz castigates Pankowski for not asking more questions about the January 5, 2022 letter and Herrington's cryptic note on the Flash System. In doing so, Horowitz inappropriately applies 20-20 hindsight rather than pointing to facts that would have alerted Pankowski to the fact that either the letter or the note would have led him to discover that BANA closed the 2815 Account for some reason other than suspected fraudulent activity. (*See* Dkt. # 62, pp. 9-11.)

Contrary to another of Horowitz's repeated arguments, BANA does not have a policy of conducting reinvestigations only if new information is provided. (Dkt. # 60, p. 12.) Horowitz's argument is based on a gross mischaracterization of Kevin Williams' deposition testimony.

Williams was not asked about and did not testify concerning any general BANA policy regarding reinvestigations. Instead, he merely described the different functions assigned to the bank's fraud investigators as opposed to its credit reporting team. (Williams Depo., 44:20-45:20, 46:9-47:13.) The fraud investigators decide whether an account should be closed for suspected fraudulent activity. The credit reporting staff do not second guess that decision, but may, if given sufficient new information, ask the fraud investigators to do so. (*Ibid.*) Horowitz provided no new information which might have triggered such a request.

**C.      Damages For Business Losses Are Not Recoverable Under The FCRA**

As BANA's opening memorandum showed, the FCRA is a consumer protection statute under which damages may not be recovered for business losses. (Dkt.

70014.0757/16729360.2

- 4 -

REPLY MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING BANA'S MOTION FOR SUMMARY JUDGMENT

# 50-1, p. 13.) Horowitz does not attempt to distinguish the many decisions so holding. Instead, he argues that the Ninth Circuit approved recovery of business damages in *Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1069 (9th Cir. 2008) and *Gorman*, 584 F.3d at 1174. *Grigoryan v. Experian Info. Sols., Inc.*, 84 F. Supp. 3d 1044, 1082-84 (C.D. Cal. 2014) thoroughly refutes Horowitz's argument, showing why neither *Dennis* nor *Gorman* holds that business loss damages are recoverable on an FCRA claim.

**D.    Summary Judgment Should Also Be Granted As To Punitive Damages**

As BANA's opening memorandum showed, partial summary judgment should also be granted on Horowitz's claim for punitive damages under 15 U.S.C. § 1681n(a). (Dkt. # 50-1, pp. 13-14.) BANA's conduct was, at worst, negligent, not willful.

In opposition, Horowitz repeats his claim that BANA had a policy of not re-investigating absent new information. (Dkt. # 60, p. 13.) As already stated, Horowitz is wrong. BANA had no such policy. Horowitz simply mischaracterizes Williams' testimony. (Dkt. # 62, pp. 8-9; p. 4 above.) Horowitz also repeats his criticisms of Adams' and Pankowski's reinvestigations. (Dkt. # 60, pp. 13-14.) But, as already explained those criticisms are unwarranted. (Dkt. # 50-1, pp. 10-12, 14; Dkt. # 62, pp. 6-12; pp. 2-4 above.)

Also, Horowitz again mistakes the nature of the required reinvestigation—which was of the disputed information; namely, that suspected fraudulent activity was BANA's reason for closing the 2815 Account. To respond to Horowitz's disputes BANA was not required to redo Thompson's investigation and re-decide whether his suspicion of fraudulent activity was warranted. (Dkt. # 60, p. 14.)

At worst, BANA's reinvestigations were negligent, not willful, violations of § 1681s-2, so partial summary judgment should be granted on Horowitz's claim for punitive damages under § 1681n(a).

## II.

### BANA IS ENTITLED TO SUMMARY JUDGMENT ON HOROWITZ'S PROMISSORY ESTOPPEL CLAIM

**A.     The January 5 Letter Made No Promise Of Future Performance**

BANA's opening memorandum showed that Horowitz cannot prove the first required element of his promissory estoppel claim; namely, that BANA made a promise—that is an assurance of performance *in the future*. (Dkt. # 50-1, pp. 15-16.) BANA's January 5, 2022 letter, on which the claim is based, stated only something about a *past* event, not anything BANA would do in the future: "*we've submitted* a request … You can use this letter as documentation that the request *has been submitted.*" (Dkt. # 51, ¶ 34; Dkt. # 52-3, p. 47; emphasis added.)

Horowitz's opposition says nothing in response.[1] Its silence on this critical element of the promissory estoppel claim concedes that summary judgment should be entered on this claim. There is no need to explore the claim's other failings.

**B.     Horowitz Did Not Rely To His Substantial Detriment**

To support his promissory estoppel claim, Horowitz is also required to show that reasonably and foreseeably relied on BANA's supposed promise, thereby suffering a substantial detriment such that injustice can be avoided only by enforcement of the promise. (*See* Dkt. # 50-1, p. 16 (*citing US Ecology, Inc. v. State of California,* 129 Cal. App. 4th 887, 901 (2005)).) Horowitz suffered no "substantial detriment." He only spent a couple fruitless hours unsuccessfully applying to open accounts at NuVision Credit Union. (Dkt. # 50-1, p. 16.) That is not enough. *Henry v.*

---

[1]     At the end of his discussion of emotional distress damages, Horowitz does try to characterize the January 5 letter as a "promise to have the negative information removed from his Chex report within '10 business days.' " (Dkt. # 60, p. 17.) But that is not what the letter says. The letter states that BANA has already requested removal, but that third party CRAs may take up to 10 days to act on BANA's request.

70014.0757/16729360.2                                    - 6 -
REPLY MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING BANA'S MOTION FOR SUMMARY JUDGMENT

*Weinman,* 157 Cal. App. 2d 360, 366-67 (1958).

Horowitz does not dispute the legal rule stated in BANA's opening memorandum and just repeated here. (Dkt. # 60, pp. 15-16.) He does not dispute the relevant facts either. He simply repeats that he relied on the letter, applied to open accounts at NuVision, and was called back the same afternoon to be told the accounts would not be opened. (*Id.*) Horowitz cites no authority supporting the notion that such minimal inconvenience is sufficient detriment to support a promissory estoppel claim. There is none.

**C.      Emotional Distress And Business Loss Damages Are Not Recoverable**

Partial summary judgment should also be entered insofar as Horowitz seeks emotional distress and business loss damages on his promissory estoppel claim. (*See* Dkt. # 50-1, pp. 17-18.)

Horowitz agrees that emotional distress damages are awardable on contract and promissory estoppel claims only when "the express object of the contract [or promise] is the mental and emotional well-being of one of the contracting parties." (Dkt. # 60, p. 16 (*citing Erlich v. Menezes,* 21 Cal. 4th 543, 559 (1999)).)

Contrary to Horowitz's argument (Dkt. # 60, p. 17), the express object of the purported promise to request removal of negative information from Horowitz's credit report was not to promote Horowitz's emotional well-being. A consumer may incidentally suffer emotional distress as a result of inaccurate credit information. But the express object of credit reporting is credit, not emotional tranquility.

*Smith v. Wolf,* No. 3:20-cv-1409, 2022 WL 17573917, at *2 (S.D. Cal. Nov. 14, 2022), on which Horowitz seems principally to rely (*see* Dkt. # 60, p. 17), undermines, rather than supports, his argument. *Smith* involved a claim for breach of a 90-day lease of a residence—a contract far more closely tied to the tenant's "comfort, happiness, or personal welfare" than a promise about credit reporting. Yet, *Smith* held that emotional distress damages were not recoverable. *Id.* The same is true here.

Horowitz is also wrong in arguing he can recover business loss damages on his promissory estoppel claim. Again, he does not contest that special damages are only recoverable "if the special or particular circumstances from which they arise were actually communicated to or known by the breaching party (a subjective test) or were matters of which the breaching party should have been aware at the time of contracting (an objective test)." (Dkt. # 60, p. 18 (*citing Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.,* 34 Cal. 4th 960, 968-969 (2004)).)

Horowitz argues that BANA knew that other financial institutions might refuse to open accounts for Horowitz and that he owned a business. (Dkt. # 60, p. 18.) Both of those facts are true. But they do not add up to knowledge of the particular circumstance which allegedly gave rise to Horowitz's business losses—namely, his inability to borrow from other standard business lenders (or others) at favorable interest rates.

### III.

### BANA IS ENTITLED TO SUMMARY JUDGMENT ON HOROWITZ'S FRAUD CLAIM

**A.    Horowitz Cannot Prove Scienter Or Intent To Deceive**

BANA's opening memorandum showed that it was mistake, not intent to deceive, which led Herrington to send the January 5 letter, using the same mistaken account number that caused Battle to reject Herrington's contemporaneous request to send ChexSystems a request to remove negative reporting on Horowitz's account. (Dkt. # 50-1, p. 19.)

In response, Horowitz claims there is a question of fact because the January 5 letter might actually have been mailed after Battle rejected Herrington's request. (Dkt. # 60, pp. 18-19.) Horowitz is wrong for two reasons. First, scienter and intent are things only a human being, not a machine, may entertain. It was Herrington who issued the instructions which automatically generated the January 5 letter. It was her intent at the time she gave that instruction that determines scienter and intent for

70014.0757/16729360.2

- 8 -

REPLY MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING BANA'S MOTION FOR SUMMARY JUDGMENT

purposes of the fraud claim, not the later act of a computer or other machine in following the instruction, printing, and sending the letter. There is no dispute that at the time Herrington issued the instruction, she actually intended to remove the negative credit reporting, and did not know that Battle would later deny her request for removal.

Second, even if the letter left BANA after Battle had rejected Herrington's request, and even if the knowledge of both Battle and Herrington is attributed to BANA, there is still no evidence that anyone knew that the negative reporting would not be removed. Herrington was totally unaware of that fact. Battle knew that she had rejected Herrington's initial request, but she also knew that the rejection automatically generated an email to Herrington, alerting her to the fact so that she could, if appropriate, correct her error, resubmit a correct request, and remove negative reporting from the account she actually intended.

Horowitz is also wrong in claiming that BANA's counsel's initial (but soon revoked) rejection of a post-litigation demand to remove negative reporting from Horowitz's account somehow retroactively proves that BANA entertained a fraudulent intent over a year earlier when it sent the January 5 letter. (*See* Dkt. # 60, pp. 19-20.) The claim is a complete *non-sequitur*.

**B.     Horowitz Did Not Reasonably Rely On The January 5 Letter**

Horowitz did not reasonably rely on the January 5 letter which on its face referred to an account other than the one on which there had been negative reporting. Horowitz now claims in his opposition that he did not read the letter sufficiently to notice which account it referenced. (Dkt. # 60, p. 20.) That's not what he said at his deposition. (*See* Dkt. # 51, ¶¶ 37, 38 (*citing* Horowitz's deposition testimony).) But even were his current position true, it merely confirms that he did not act reasonably. On a matter of obvious concern to him, Horowitz now says he did not read the January 5 letter closely enough to notice which account it referred to. That is not reasonable for a man of Horowitz's experience and business acumen.

**C.      Horowitz Cannot Recover His Business Loss Damages On This Claim**

Horowitz cannot recover his business loss damages on his fraud claim because those losses were not caused by his reliance on the January 5 letter but were instead (according to Horowitz) caused by the negative information that remained on his credit report. (*See* Dkt. 50-1, p. 21.)

Horowitz response is that he relied on the letter in seeking to open accounts at NuVision and that he need not keep trying to open accounts at other institutions in order to recover damages. (Dkt. # 60, pp. 21-22.) That is true, but irrelevant.

The issue here is causation: Did Horowitz's reliance on the letter by opening accounts at NuVision cause him to have to pay higher interest rates on his business' borrowings? The answer is obviously no. Opening the accounts did not cause his business to incur higher interest charges.

Instead, the higher interest was caused (according to Horowitz), by the presence of negative information in his credit report. Because the supposed fraud did not cause those damages, they are not recoverable on Horowitz's fraud claim.

**IV.**

**CONCLUSION**

For the reasons stated in BANA's opening memorandum and in this reply, the Court should grant BANA summary judgment on each of Horowitz's claims against BANA or, alternatively, grant partial summary judgment as to emotional distress, business loss, and punitive damages.

DATED: March 5, 2024

SEVERSON & WERSON
A Professional Corporation

By:   */s/ Austin B. Kenney*
          AUSTIN B. KENNEY

Attorneys for Defendants CHEX SYSTEMS, INC. and BANK OF AMERICA, N.A.

70014.0757/16729360.2

- 10 -