AUSTIN B. KENNEY (State Bar No. 242277)
abk@severson.com
MATTHEW J. ESPOSITO (State Bar No. 223445)
mje@severson.com
SEVERSON & WERSON
A Professional Corporation
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
Telephone: (949) 442-7110
Facsimile: (949) 442-7118

Attorneys for Defendants CHEX
SYSTEMS, INC. and BANK OF
AMERICA, N.A.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| BRIAN HOROWITZ, | Case No. 8:22-cv-02002-DFM |
| Plaintiff, | *Assigned for all purposes to Hon. Douglas F. McCormick* |
| vs. | |
| CHEX SYSTEMS, INC., a foreign corporation, and BANK OF AMERICA, N.A., a foreign corporation, | **BANK OF AMERICA, N.A.'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: CHEX SYSTEMS, INC.'S MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | *Filed concurrently with Reply Memorandum of Points and Authorities* |
| | Date: March 19, 2024 |
| | Time: 10:00 a.m. |
| | Crtrm.: 6B |
| | Trial Date: May 7. 2024 |

70014.0757/16731302.1

Defendant BANK OF AMERICA, N.A. ("BANA") respectfully submits this Response to Plaintiff's Statement of Genuine Disputes in re: BANA's Motion for Summary Judgment.

## BANA's Uncontroverted Facts

| BANA's Uncontroverted Facts and Supporting *Evidence* | Plaintiff's Response to Cited Fact and Supporting *Evidence* | BANA's Response |
|---|---|---|
| 1.  In 2018, Plaintiff BRIAN HOROWITZ ("Horowitz") was the CEO of COD USA, Inc. ("COD"), a business owned by Heather Smulson, whom Horowitz later married.<br><br>*Evidence*: Declaration of Austin B. Kenney ("Kenney Decl."), ¶ 10, Ex. 9, Deposition of Plaintiff Brian Horowitz ("Plaintiff Depo."), 15:3-6, 26:8-16, 35:20-36:5. | Undisputed, but to be clear, Horowitz was not married to Heather Smulson until December of 2022.<br><br>*Evidence*: Horowitz Depo., 15:5-6. | None. |
| 2.  COD maintained its bank accounts at Union Bank.<br><br>*Evidence*: Plaintiff Depo., 27:12-28:3. | Undisputed. | None. |
| 3.  In January 2018, Horowitz learned that one of COD's creditors, Marigold Funding, LLC, had secured a judgment by confession against COD in New York state court and was threatening to garnish COD's Union Bank account(s) to satisfy that judgment.<br><br>*Evidence*: Plaintiff Depo., 27:12-28:9; Kenney Decl., ¶ 3, Ex. 2, | Undisputed. | None. |

70014.0757/16731302.1

BANA'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: BANA'S MOTION FOR SUMMARY JUDGMENT

| BANA's Uncontroverted Facts and Supporting *Evidence* | Plaintiff's Response to Cited Fact and Supporting *Evidence* | BANA's Response |
|---|---|---|
| Plaintiff's Responses to Supplemental Interrogatories, Request No. 19. | | |
| 4.  To avoid the garnishment, Horowitz directed the emptying of COD's account by purchasing from Union Bank a $70,000 cashier's check payable to Horowitz.<br><br>*Evidence*: Plaintiff Depo., 25:3-19, 26:17-25, 27:12-28:9, 35:14-19 & Ex. 4;<br><br>Plaintiff's Responses to Supplemental Interrogatories, Request No. 19. | Undisputed. To be clear, COD purchased the cashier's check ("The Check") with good funds in its bank account.<br><br>*Evidence*: Biszantz Depo. 17:7-17. | The "to be clear" sentence is not true. The funds in COD's account were subject to a freeze order due to a garnishment served on Union Bank by COD's judgment creditor, Marigold Funding, LLC.<br><br>*Evidence*: Biszantz Depo., 12:19-13:12, 24:22-25:11 & Ex. 7. |
| 5.  COD was the check's remitter.<br><br>*Evidence*: Plaintiff Depo., 177:20-178:11 & Ex. 4;<br><br>Kenney Decl., ¶ 12, Ex. 11, Deposition of Julie Biszantz ("Biszantz Depo."), 12:6-13:22 & Ex 1. | Undisputed. | None. |
| 6.  Horowitz used a portion of the transferred money to pay COD's rent.<br><br>*Evidence*: Plaintiff Depo. 36:10-37:22. | Undisputed. | None. |
| 7.  On January 16, 2018, Horowitz deposited the check in his personal Bank of America ("BANA") account. | Undisputed. | None. |

| BANA's Uncontroverted Facts and Supporting *Evidence* | Plaintiff's Response to Cited Fact and Supporting *Evidence* | BANA's Response |
|---|---|---|
| ending in 2815.<br><br>*Evidence*: Kenney Decl., ¶ 13, Ex. 12, First Amended Complaint ("FAC"), ¶ 9;<br><br>Plaintiff Depo. 30:24-31:4, 31:21-24 & Ex. 6.;<br><br>Declaration of Thomas Jordan ("Jordan Decl."), Ex. A. | | |
| 8.  Over the next two days, 19 transfers were made from the 2815 Account, reducing the account balance to less than $700.<br><br>*Evidence*: Plaintiff Depo., 35:7-13, 36:10-37:22 & Ex. 7. | Undisputed. | None. |
| 9.  On January 18, 2018, Union Bank returned the check to BANA unpaid and marked "08-PAYMENT STOPPED."<br><br>*Evidence*: Biszantz Depo., 24:8-25:7 & Ex. 8;<br><br>Jordan Decl., ¶ 6 & Ex. B. | Undisputed. | None. |
| 10.  BANA charged the item back to the 2815 Account, leaving the account overdrawn by $69,315.08 at the end of the statement cycle.<br><br>*Evidence*: Plaintiff Depo., 38:17-20, 39:3-11;<br><br>Kenney Decl., ¶ 8, Ex. 7. | Undisputed. | None. |

70014.0757/16731302.1

- 4 -

BANA'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: BANA'S MOTION FOR SUMMARY JUDGMENT

| BANA's Uncontroverted Facts and Supporting *Evidence* | Plaintiff's Response to Cited Fact and Supporting *Evidence* | BANA's Response |
|---|---|---|
| Deposition of Diane DeLoney ("DeLoney Depo."), 23:15-25; Jordan Decl., ¶ 6 & Ex. B. | | |
| 11.  BANA personnel contacted Horowitz several times in unsuccessful efforts to collect the overdrawn balance of the 2815 Account. *Evidence*: Kenney Decl., ¶ 7, Ex. 6, Confidential Deposition of Christopher Thompson ("Thompson Depo. (Conf.)"), 63:14-65:1, 69:15-23. | Disputed. Horowitz responded to BOA in each instance that it had contacted him. Indeed, BOA admitted that Horowitz had cooperated with it to get Union Bank to honor the Check. *Evidence*: Thompson Depo., 43:23-44:15. | Disputed. Thompson testified that Horowitz tried to get Union Bank to make the Check good. But he also testified that BANA's Overdraft Service Collections Department had contacted Horowitz in unsuccessful efforts to collect the overdraft from him. *Evidence*: Thompson Depo., 63:14-65:1, 69:15-23, 70:24-71:9. |
| 12.  BANA's Overdraft Collections Department referred the 2815 Account to BANA's Global Financial Crimes Compliance ("GFCC") investigation team for review. *Evidence*: Thompson Depo. (Conf.), 58:21-60:22, 63:3-64:1, 174:13-175:4. | Undisputed. | None. |
| 13.  GFCC investigator Christopher Thompson ("Thompson") spoke to a Union Bank representative who told Thompson that the remitter stopped payment on the $70,000 cashier's check. *Evidence*: Kenney Decl., ¶ 7, Ex. 6, Non- | Undisputed. | None. |

70014.0757/16731302.1                                                      - 5 -

| BANA's Uncontroverted Facts and Supporting *Evidence* | Plaintiff's Response to Cited Fact and Supporting *Evidence* | BANA's Response |
|---|---|---|
| Confidential Deposition of Christopher Thompson ("Thompson Depo. (Non-Conf.)"), 11:25-12:14, 35:23-36:3, 125:18-126:2; <br><br> Thompson Depo. (Conf.), 174:13-175:4. | | |
| 14.  Thompson also called Horowitz who said that he had not stopped payment on the cashier's check. <br><br> *Evidence*: *See* Thompson Depo. (Non-Conf.), 111:11-112:11, 120:2-16. | Undisputed. | None. |
| 15.  Based on past experience that information obtained from another bank in similar situations was reliable, Thompson credited Union Bank's statement. <br><br> *Evidence*: Thompson Depo. (Non-Conf.), 111:11-112:11, 120:2-16. | Disputed. Thompson repeatedly testified "he did not know who to believe" as to who stopped payment on the Check. <br><br> *Evidence*: Thompson Depo., 43:20-22. | The alleged dispute mischaracterizes Thompson's testimony. He said he did not know who was correct, not who to believe. Since he did not know who was correct, he accepted Union Bank's statement based on his past experience. <br><br> *Evidence*: Thompson Depo., 43:20-22, 111:11-112:11, 120:2-16. |
| 16.  On April 12, 2018, Thompson recommended that Horowitz's personal and business accounts be closed and referred for reporting by defendant CHEX SYSTEMS, INC. ("ChexSystems") for suspected fraud activity. <br><br> *Evidence*: Thompson Depo. (Conf.), 81:9-20. | Undisputed. | None. |

BANA'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: BANA'S MOTION FOR SUMMARY JUDGMENT

| BANA's Uncontroverted Facts and Supporting *Evidence* | Plaintiff's Response to Cited Fact and Supporting *Evidence* | BANA's Response |
|---|---|---|
| 148:20-149:4. | | |
| 17.  Thompson recommended that the account be closed and reported to ChexSystems based the recommendation on the fact that the $70,000 cashier's check was purchased by an entity related to Horowitz and was deposited in Horowitz's account from which the funds were swiftly transferred, leaving the account overdrawn, before BANA received notice that the cashier's check was returned unpaid due to a stop payment request, which Union Bank told Thompson the remitter had made.  *Evidence*: Thompson Depo. (Conf.), 148:20-149:4;  Thompson Depo. (Non-Conf.), 98:6-18, 112:13-113:10, 118:7-119:1, 124:16-126:2. | Disputed. Thompson testified that he made his decision to report Horowitz for having engaged in suspected fraud activity to ChexSystems because Thompson erroneously believed that Horowitz was the remitter of the Check, when in fact, it was COD, USA, Inc.  *Evidence*: Thompson 72:7-15. Ex 7. | The alleged dispute mischaracterizes Thompson's testimony. He considered several facts as the basis for his decision to recommend account closure and reporting, not just stop payment by the remitter. Nor was he confused about who was the remitter. Horowitz was COD's CEO, a signer on its Union Bank account, and the person who directed Tolbert to obtain the Check in order to avoid Marigold Funding, LLC's garnishment.  *Evidence*: Thompson Depo., 98:6-18, 112:13-113:10, 118:7-119:1, 124:16-126:2, 148:20-149:4.  Plaintiff's Depo., 25:3-19, 26:17-25, 27:12-28:9, 35:14-19 & Ex. 4;  Plaintiff's Responses to Supplemental Interrogatories, Request No. 19. |
| 18.  On April 13, 2018, BANA sent multiple emails to Union Bank requesting that it send BANA $70,000, as BANA was a holder in due course of the cashier's check entitled to enforce payment of | Undisputed. | None. |

BANA'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: BANA'S MOTION FOR SUMMARY JUDGMENT

| BANA's Uncontroverted Facts and Supporting *Evidence* | Plaintiff's Response to Cited Fact and Supporting *Evidence* | BANA's Response |
|---|---|---|
| that item.<br><br>*Evidence*: Thompson Depo. (Non-Conf.), 94:11-95:25, 103:11-104:20 105:15-106:1. | | |
| 19.  On May 22, 2018, per Thompson's recommendation, BANA closed the 2815 Account and booked the 2815 Account's negative balance of $68,515.67 as a bank loss.<br><br>*Evidence*: Plaintiff Depo., 56:13-24;<br><br>Thompson Depo. (Non-Conf.), 52:12-53:10 & Ex. 7. | Undisputed. | None. |
| 20.  Also per Thompson's recommendation, BANA furnished information to defendant ChexSystems, specifically that Horowitz's 2815 Account was closed for suspected fraud activity with an original charge off amount of $68,003.75 and a closure status of paid in full.<br><br>*Evidence*: Declaration of Sarah Cables ("Cables Decl."), ¶ 10 & Ex. A;<br><br>Kenney Decl., ¶ 6, Ex. 5, Deposition of Sarah Cables ("Cables Depo."), 21:6-22:16, Ex. 5. | Undisputed. | None. |
| 21.  ChexSystems reported that Horowitz's 2815 Account was closed for suspected fraud | Undisputed. | None. |

70014.0757/16731302.1

- 8 -

BANA'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: BANA'S MOTION FOR SUMMARY JUDGMENT

| BANA's Uncontroverted Facts and Supporting *Evidence* | Plaintiff's Response to Cited Fact and Supporting *Evidence* | BANA's Response |
|---|---|---|
| activity, according to the information furnished by BANA.<br><br>*Evidence*: *See* Cables Decl., ¶ 10 & Ex. A;<br><br>Cables Depo., 21:6-22:16 & Ex. 5. | | |
| 22.  In response to BANA's demands, Union Bank sent BANA a $70,000 check in June 2018, which BANA offset against its loss on closure of the 2815 Account, leaving a small balance in BANA's hold harmless fund that was eventually paid to Horowitz.<br><br>*Evidence*: Thompson Depo. (Non-Conf.), 56:18-57:24;<br><br>Plaintiff Depo., 58:13-21. | Undisputed. | None. |
| 23.  In late July 2021, Horowitz opened an account for Creative Arcades LLC at Orange County's Credit Union.<br><br>*Evidence*: Plaintiff Depo., 59:13-61:5. | Undisputed. | None. |
| 24.  On or about July 28, 2021, Orange County's Credit Union sent Horowitz a letter saying it had closed his account due to suspected fraud activity and account abuse, based on information provided by ChexSystems.<br><br>*Evidence*: Plaintiff | Undisputed. | None. |

BANA'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: BANA'S MOTION FOR SUMMARY JUDGMENT

| BANA's Uncontroverted Facts and Supporting *Evidence* | Plaintiff's Response to Cited Fact and Supporting *Evidence* | BANA's Response |
|---|---|---|
| Depo., Ex. 11. | | |
| 25.  Horowitz obtained a copy of a credit report from ChexSystems, according to which BANA said that the 2815 Account was closed for suspected fraud activity with an original charge off amount of $68,003.75 and a closure status of paid in full.<br><br>*Evidence*: FAC, ¶ 15,<br><br>Plaintiff Depo., 62:2-64:11 & Ex. 13;<br><br>Cables Decl., ¶ 10 & Ex. A. | Undisputed. | None. |
| 26.  In August 2021, Horowitz submitted a dispute to ChexSystems, which sent BANA a request for reinvestigation stating that Horowitz disputed the information that his BANA account was closed for "suspected fraud activity."<br><br>*Evidence*: Plaintiff Depo., 67:10-13;<br><br>Cables Decl., ¶ 11 & Ex. B. | Undisputed. | None. |
| 27.  Carly Adams, BANA's lead operations representative in deposit credit bureau disputes, conducted BANA's investigation and pre-pared its response to ChexSystems' reinvesti-gation request. | Disputed. Carly Adams admitted that no reinves-tigation was performed by her. She relied exclusively on what was told to her by the RISC Department.<br><br>*Evidence*: Carly Adams Depo., 29:8-13, 48:12 - 49:18; 49:20-50:18; 55:9- | The alleged dispute mischaracterizes Adams' testimony. She said she relied on the RISC Department's statement to determine the reason for its decision to close the account, but that she had reviewed several |

BANA'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: BANA'S MOTION FOR SUMMARY JUDGMENT

| BANA's Uncontroverted Facts and Supporting *Evidence* | Plaintiff's Response to Cited Fact and Supporting *Evidence* | BANA's Response |
|---|---|---|
| *Evidence*: Kenney Decl., ¶ 4, Ex. 3, Deposition of Carly Adams ("Adams Depo."), 12:1-13, 33:2-4 & Ex. 9;<br><br>Cables Decl., ¶ 11 & Ex. C. | 56:25. | of BANA's systems of record to check whether the disputed information was accurate.<br><br>*Evidence*: Adams Depo., 36:5-36:4, 43:1-9. |
| 28.  The response stated: "Due to deposit activity, this account was placed under review.· During the review, it was determined that the account breached the account agreement. Because of this breach the account was closed."<br><br>*Evidence*: Adams Depo., 35:5-18 & Ex. 9. | Undisputed. | None. |
| 29.  The response added: "Suspected fraud activity was placed by RISC department.· Please contact RISC at 1-877-240-6886, Option 2."<br><br>*Evidence*: Adams Depo., 41:22-42:5 & Ex. 9. | Undisputed. | None. |
| 30.  In preparing the response, Adams relied on notes in BANA's Flash computer system, as well as BANA's CFC, Epic. RMS, CCMS and BOSS systems.<br><br>*Evidence*: Adams Depo., 36:12-37:4, 50:20-51:13, 56:22-25, 57:4-20, 59:13-18. | Disputed. Carly Adams admitted only that she reviewed the Flash System and nothing else. Moreover, no reinvestigation was performed by her. She merely filled in the information already present in BOA's records. She had no idea why Plaintiff was reported for suspected fraud and admitted that she did not have sufficient information to justify reporting Plaintiff as | The alleged dispute is simply wrong. Adams specifically stated that she "consulted Flash, CFC and CCMS before responding to [Horowitz's] dispute," and that Epic would also have been reviewed.<br><br>*Evidence*: Adams Depo., 36:12-37:4, 59:13-18.<br><br>Also. BANA disputes |

BANA'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: BANA'S MOTION FOR SUMMARY JUDGMENT

| BANA's Uncontroverted Facts and Supporting *Evidence* | Plaintiff's Response to Cited Fact and Supporting *Evidence* | BANA's Response |
|---|---|---|
| | having engaged in suspected fraud activity.<br><br>*Evidence*: Carly Adams Dep 49:20-50:11; 50:13-18; 56:22-25. | the allegation that Adams did not perform a reinvestigation; the testimony cited by BANA proves otherwise.<br><br>Contrary to Horowitz's argument, BANA was not required to re-investigate the suspected fraudulent activity in response to his first dispute. The information Horowitz disputed was BANA's reason for closing the 2815 Account. That reason was stated in BANA's systems of record which Adams reviewed in response to his dispute.<br><br>*Evidence*: Adams Depo., 36:12-37:4, 50:20-51:13, 56:22-25, 57:4-20, 59:13-18. |
| 31.  The Flash notes Adams viewed reflected that BANA's RISC department closed 2815 Account per GFCC's recommendation.<br><br>*Evidence*: Adams Depo., 37:15-22 , 43:2-9, 45:12-25, 46:9-47:6, 49:12-50:11, 51:4-13. | Undisputed. | None. |
| 32.  On January 5, 2022, Leslie Herrington, a senior fraud analyst on BANA's high risk mitigation team, submitted a request to delete the negative reporting to ChexSystems regarding Horowitz— | Disputed. Defendant's citations to the deposition testimony do not support this fact as stated. Herrington testified that she submitted a request to delete the negative reporting to ChexSystems regarding Horowitz. There is no | The alleged dispute is simply wrong. Here is the testimony:<br><br>Q. And was this note to remove any and all Chex reporting on Mr. Horowitz? |

70014.0757/16731302.1                    - 12 -

| BANA's Uncontroverted Facts and Supporting *Evidence* | Plaintiff's Response to Cited Fact and Supporting *Evidence* | BANA's Response |
|---|---|---|
| identifying him by his BANA party ID number.<br><br>*Evidence*: Kenney Decl., ¶ 9, Ex. 8, Non-Confidential Deposition of Leslie Herrington ("Herrington Depo. (Non-Conf.)"), 10:25-11:7, 48:19-49:20;<br><br>Kenney Decl., ¶ 9, Ex. 8, Confidential Deposition of Leslie Herrington ("Herrington Depo. (Conf.)") 30:18-31:20. | testimony about how she identified him.<br><br>*Evidence* - Herrington Depo., 48:22-49:4 | A. The Chex reporting is for that specific ID number. So you see that ends in 9702? That's the one that it would apply to. There was an account number that would have been associated with it.<br><br>Q. And is that, like, his customer profile number with Bank of America?<br><br>A. Correct. We call it a party ID.<br><br>*Evidence*: Herrington Depo., 31:12-20. |
| 33.  Herrington intended to have the negative information related to Account 2815 removed from Horowitz consumer credit reports; she failed to achieve that objective only because she made a mistake and referenced the wrong account number in her request.<br><br>*Evidence*: Herrington Depo. (Non-Conf.), 51:2-15. | Undisputed. | None. |
| 34.  Also on January 5, 2022, BANA sent a letter to Horowitz (the "January 5 Letter") that stated: "we've submitted a request to Chex Systems, Inc., and Early Warning Services, LLC, on to remove the reporting from your credit file.· …·You can use this letter as documentation that the | Undisputed. | None. |

BANA'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: BANA'S MOTION FOR SUMMARY JUDGMENT

| BANA's Uncontroverted Facts and Supporting *Evidence* | Plaintiff's Response to Cited Fact and Supporting *Evidence* | BANA's Response |
|---|---|---|
| request has been submitted." *Evidence*: Herrington Depo., 48:19-49:20 & Ex. 14; Thompson Depo. (Non-Conf.), Ex. 21; FAC, ¶ 65. | | |
| 35.  The letter was not issued because the initial decision to close the 2815 Account for suspected fraudulent activity was wrong. *Evidence*: Thompson Depo. (Conf.), 151:12-154:21, 158:13-159:6. | Disputed. The letter was issued because BOA was paid in full for the Check by Union Bank. BOA knew, since the time the Check was deposited into Horowitz's account, that it was a holder in due course as to the Check and would get paid by Union Bank. *Evidence*: Thompsons Depo., 65:20- 66:9, 154:15-21, 156:2-15, 158:7-11. | The alleged dispute is both wrong and irrelevant. Thompson testified that while it was his opinion that Union Bank was liable on the Check because BANA was a holder in due course, he did not know that Union Bank would agree and pay. Furthermore, Union Bank's payment of BANA's claim has no bearing on whether the January 5 letter was sent because the initial decision to close the account was wrong. *Evidence*: Thompson Depo., 156:16-23, 157:23-158:17. |
| 36.  The January 5 Letter erroneously referred to Horowitz's account ending in 6566, rather than the 2815 Account. *Evidence*: Herrington Depo. (Non-Conf.), 51:2-15. | Undisputed. | None. |
| 37.  Horowitz believed the January 5 Letter referred to the 2815 Account because that | Undisputed. | None. |

| BANA's Uncontroverted Facts and Supporting *Evidence* | Plaintiff's Response to Cited Fact and Supporting *Evidence* | BANA's Response |
|---|---|---|
| was the only account that BANA had reported to ChexSystems.<br><br>*Evidence*: Plaintiff Depo., 81:15-25, 84:11-20, 87:7-88:1, 179:2-12. | | |
| 38.  Horowitz never verified with BANA whether the January 5 Letter referred to the 2815 Account.<br><br>*Evidence*: Plaintiff Depo., 81:15-25, 84:11-20, 87:7-88:1, 179:2-12. | Disputed. Horowitz sent a second dispute letter to ChexSystems, attached the January 5 letter stating that the matter had been re-solved between him and Bank of America. Bank of America received that dispute and letter and disre-garded it.<br><br>*Evidence* - Pankowski dep 55:16-23, Ex 25. | The alleged dispute does not address the fact stated. Horowitz's second dispute did not ask whether the Janu-ary 5 letter referred to the 2815 Account. Had it done so, Pankowski would have realized that the letter related to the dispute he was to reinvestigate.<br><br>*Evidence*: 81:15-25, 84:11-20, 87:7-88:1, 179:2-12/<br><br>Pankowski Depo., 55:16-23. |
| 39.  Herrington's request to delete negative ChexSystems reporting on Horowitz's account was sent to Audry Battle, BANA's Hotfile FCRA analyst.<br><br>*Evidence*: Kenney Decl., ¶ 11, Ex. 10, Non-Confidential Deposition of Audrey Battle ("Battle Depo. (Non-Conf.)"), 8:19-20. | Undisputed. | None. |
| 40.  Battle declined Herrington's request because it referenced an account ending in 6566, while the only previous negative reporting had been on the 2815 | Undisputed. | None. |

70014.0757/16731302.1

- 15 -

BANA'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: BANA'S MOTION FOR SUMMARY JUDGMENT

| BANA's Uncontroverted Facts and Supporting *Evidence* | Plaintiff's Response to Cited Fact and Supporting *Evidence* | BANA's Response |
|---|---|---|
| Account.<br><br>*Evidence*: Battle Depo. (Non-Conf.), 21:19-22:12. | | |
| 41.  Battle never saw the January 5 Letter.<br><br>*Evidence*: Battle Depo. (Non-Conf.), 19:4-9. | Undisputed. | None. |
| 42.  Battle's rejection of Herrington's request should have generated an automated email to Herrington, telling her the request was rejected because the only negative reporting was on a different account than the one referenced in her request.<br><br>*Evidence*: Battle Depo. (Non-Conf.), 26:7-25;<br><br>Kenney Decl., ¶ 11, Ex. 10, Confidential Deposition of Audrey Battle ("Battle Depo. (Conf.)"), 29:7-30:14. | Undisputed. | None. |
| 43.  Herrington was unaware that Battle had denied her request because she never received an email telling her the request was rejected.<br><br>*Evidence*: Herrington Depo. (Non-Conf.), 52:20-23. | Disputed. Herrington's testimony was only that she was unaware that her request to Ms. Battle had been rejected. She did not testify that she never received the automated email from Battle.<br><br>*Evidence*: Herrington Depo. (Non- Conf.), 52:20-23. | The stated fact is the only reasonable inference from Herrington's testimony. If Herrington had received and read the email she would not have been unaware that Battle had denied her request. |
| 44.  At the end of September 2022, Horowitz tried to set up a new personal and | Undisputed. | None. |

| BANA's Uncontroverted Facts and Supporting *Evidence* | Plaintiff's Response to Cited Fact and Supporting *Evidence* | BANA's Response |
|---|---|---|
| business accounts at NuVision Credit Union but a few hours later was informed that the accounts could not be opened while Horowitz was still appearing on ChexSystems.<br><br>*Evidence*: Plaintiff Depo., 83:14-84:7, 91:4-13, 93:21-94:24, 97:3-98:6 & Ex. 18. | | |
| 45.  In September 2022, after NuVision turned him down, Horowitz submitted another dispute to ChexSystems, saying he had resolved the matter with BANA and attaching BANA's January 5, 2022 letter.<br><br>*Evidence*: Plaintiff Depo., 98:12-100:4. | Undisputed. | None. |
| 46.  Based on Horowitiz's dispute, ChexSystems sent BANA another request for reinvestigation, showing that Plaintiff disputed the "suspected fraud activity" reason for closure of the 2815 Account and stated "that he resolved this with your institution, and you reported that you are removing the information."<br><br>*Evidence*: Kenney Decl., ¶ 5, Ex. 4, Deposition of Michael Pankowski ("Pankowski Depo."), 53:15-25, 55:10-23 & Ex. 10; | Undisputed. Horowitz also attached the Bank of America Removal Letter of January 5, 2022 to his dispute.<br><br>*Evidence*: Ex 13 and 16. | Undisputed. |

BANA'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: BANA'S MOTION FOR SUMMARY JUDGMENT

| BANA's Uncontroverted Facts and Supporting *Evidence* | Plaintiff's Response to Cited Fact and Supporting *Evidence* | BANA's Response |
|---|---|---|
| Cables Decl., ¶ 13 & Ex. D. | | |
| 47.  Michael Pankowski, a member of BANA's deposit credit bureau disputes team, conducted BANA's investigation and prepared its response to ChexSystems' reinvestigation request.<br><br>*Evidence*: Pankowski Depo., 8:5-9, 9:8-20, 36:7-37:1, 54:1-9. | Disputed. Pankowski did not perform a reasonable reinvestigation. He merely reviewed some of BOA's records to fill in the Request for Information form. He saw the BOA Removal Letter from January 5, stating that BOA had removed Horowitz from ChexSystems, but he disregarded it. He also saw a notation in the computer system from Leslie Herrington stating that Horowitz should have been removed from negative reporting to Chex. He did not understand that reference and disregarded that too. He never followed up with Herrington. He had no idea why the Bank was reporting Horowitz to ChexSystems.<br><br>*Evidence*: Pankowski 46:23-48:1, 55:16-23; 58:7-20; 59:10-24; 60:19-23; 67:19-68:18.<br><br>Moreover, institutionally, BOA's FCRA investigators do not conduct any reinvestigation unless the consumer provides "new information." In this case, the Bank determined that Plaintiff failed to provide any new information with either of his disputes and so, it failed to conduct any reinvestigation.<br><br>Kevin Williams Dep 46:5-8. | Horowitz does not actually dispute that Pankowski conducted a reinvestigation on behalf of BANA; he only disputes the reasonableness of the investigation, to which the enumerated fact does not specifically apply.<br><br>The alleged dispute regarding the reasonableness of the investigation is not genuine. The disputed information was only BANA's reason for closing the 2815 Account. Horowitz does not dispute that Pankowski reviewed BANA's systems, the account, and the RISC Department's comment as to the reason it recommended account closure, concluding that the account had, indeed, been closed for suspected fraudulent activity, as BANA reported to Chex.<br><br>*Evidence*: Pankowski Depo., 70:1-71:18.<br><br>The alleged dispute regarding Pankowski's review of the January 5 letter also mischaracterizes the cited testimony. Pankowski testified: "I did review this document. It was sent |

- 18 -

| BANA's Uncontroverted Facts and Supporting *Evidence* | Plaintiff's Response to Cited Fact and Supporting *Evidence* | BANA's Response |
|---|---|---|
| | | along with the Request for Reinvestigation from Chex. As far as verifying its validity, I can't -- I couldn't do that." He did not say he disregarded the letter because he could not verify its validity. He rather testified that the letter referenced a different account and therefore was not related to the dispute he was working on.<br><br>*Evidence*: Pankowski Depo., 55:20-23, 59:10-24.<br><br>As to Herrington's system notation, Pankowski testified that he saw the note and did not understand it, but he did not say he disregarded it.<br><br>*Evidence*: Pankowski Depo., 67:21-68:24.<br><br>It is undisputed that Pankowski did not follow up with Herrington about the notation, but it is wholly untrue that he "had no idea why the Bank was reporting Horowitz to ChexSystems," as Horowitz claims. The cited testimony does not state anything remotely resembling the stated fact. |
| 48.  Pankowski reviewed the RISC teams notes on the Flash system to | Disputed. Pankowski did not perform any reinvestigation. He merely | Horowitz's allegation that no reinvestigation was performed is |

| BANA's Uncontroverted Facts and Supporting *Evidence* | Plaintiff's Response to Cited Fact and Supporting *Evidence* | BANA's Response |
|---|---|---|
| determine the reason the 2815 Account was closed. He also reviewed notes from prior disputes and BANA's RMS system.<br><br>*Evidence*: Pankowski Depo., 38:15-39:22, 45:8-48:1, 64:3-23, 70:6-71:18. | reviewed some of BOA's records to fill in the Request for Information form. He saw the BOA letter from January 5, stating that BOA had removed Horowitz from ChexSystems, but he disregarded it. He also saw a notation in the computer system from Leslie Herrington stating that Horowitz should have been removed from negative reporting to Chex. He did not understand that reference and disregarded that too. He never followed up with Herrington. He had no idea why the Bank was reporting Horowitz to ChexSystems.<br><br>*Evidence*: Pankowski 46:23-48:1, 55:16-23; 58:7-20; 59:10-24; 60:19-23; 67:19-68:18.<br><br>Moreover, institutionally, BOA's FCRA investigators do not conduct any reinvestigation unless the consumer provides "new information." In this case, the Bank determined that Plaintiff failed to provide any new information with either of his disputes and so, it failed to conduct any reinvestigation.<br><br>Kevin Williams Dep 46:5-8. | conclusory and is not supported by the cited testimony.<br><br>Horowitz does not dispute that Pankowski reviewed BANA's Flash and RMS systems, the account, and the RISC Department's comment as to the reason it recommended account closure, concluding that the account had, indeed, been closed for suspected fraudulent activity, as BANA reported to Chex.<br><br>*Evidence*: Pankowski Depo., 70:1-71:18.<br><br>The alleged dispute regarding Pankowski's review of the January 5 letter also mischaracterizes the cited testimony. Pankowski testified: "I did review this document. It was sent along with the Request for Reinvestigation from Chex. As far as verifying its validity, I can't -- I couldn't do that." He did not say he disregarded the letter because he could not verify its validity. He rather testified that the letter referenced a different account and therefore was not related to the dispute he was working on.<br><br>*Evidence*: Pankowski Depo., 55:20-23. |

BANA'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: BANA'S MOTION FOR SUMMARY JUDGMENT

| BANA's Uncontroverted Facts and Supporting *Evidence* | Plaintiff's Response to Cited Fact and Supporting *Evidence* | BANA's Response |
|---|---|---|
| | | 59:10-24. As to Herrington's system notation, Pankowski testified that he saw the note and did not understand it, but he did not say he disregarded it. *Evidence*: Pankowski Depo., 67:21-68:24. It is undisputed that Pankowski did not follow up with Herrington about the notation, but it is wholly untrue that he "had no idea why the Bank was reporting Horowitz to ChexSystems," as Horowitz claims. The cited testimony does not state anything remotely resembling the stated fact. The allegation regarding BANA's "institutional" process in regard to reinvestigations misstates Kevin Williams's testimony. Williams did not testify about BANA's reinvestigation process in general but instead said that Horowitz's dispute supplied no new information that his team could take back to the fraud investigation team to see if the new information would change its original |

BANA'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: BANA'S MOTION FOR SUMMARY JUDGMENT

| BANA's Uncontroverted Facts and Supporting *Evidence* | Plaintiff's Response to Cited Fact and Supporting *Evidence* | BANA's Response |
|---|---|---|
| | | decision.<br><br>*Evidence*: Williams Depo., 44:20-45:20.<br><br>Williams further testified that fraud investigation and maintaining accurate credit reporting are separate processes. Adams and Pankowski were involved with the credit reporting process and it was not up to them to investigate fraud. So, since there was no new information that they could send to the fraud investigation team to see if that information would change its decision, they were not to hold to that team's original decision.<br><br>*Evidence*: Williams Depo., 46:9-47:13. |
| 49.  Pankowski did not have access to or consult the information that GFCC or the RISC team reviewed in deciding to close the account.<br><br>*Evidence*: Pankowski Depo., 20:20-21:6, 48:18-49:22. | Disputed. Pankowski testified that he did not have access to the GFCC notes. However, he did not testify that he had lacked access to the RISC notes. Moreover, he also saw a notation in the computer system from Leslie Herrington stating that Horowitz should have been removed from negative reporting to Chex. He did not understand that reference and disregarded it. He never followed up with Herrington for clarification of her note, even though he could have done so through email or a | The alleged dispute regarding Pankowski's access to system notes completely disregard's the cited testimony. He was specifically asked, "Did you have access to anything at GFCC to determine why Risk closed the account?" and he responded, in pertinent part, "No access to their information. No, I do not."<br><br>*Evidence*: Pankowski Depo., 49:10-18. |

70014.0757/16731302.1

| BANA's Uncontroverted Facts and Supporting *Evidence* | Plaintiff's Response to Cited Fact and Supporting *Evidence* | BANA's Response |
|---|---|---|
| | phone call. *Evidence*: Pankowski Dep 67:19-68:24. | As to Herrington's system notation, Pankowski testified that he saw the note and did not understand it, but he did not say he disregarded it. *Evidence*: Pankowski Depo., 67:21-68:24. |
| 50.  Pankowski disregarded the January 5 Letter because it referenced an account number which had not been reported on. *Evidence*: Pankowski Depo., 59:4-60:23. | Undisputed. | None. |
| 51.  Pankowski's response to ChexSystems' request for reinvestigation stated that '[t]he reporting of suspected fraud activity is accurate and shall remain. The account is PIF [paid in full] as of 06/01/2018." *Evidence*: Pankowski Depo., 53:15-54:9, 55:25-56:12 & Ex. 10; Cables Decl., ¶ 14 & Ex. E. | Undisputed. | None. |
| 52.  The only inaccuracy that Horowitz has ever disputed with ChexSystems related to the 2815 Account is that the account was closed for suspected fraud activity. *Evidence*: Cables Decl., ¶¶ 11, 13, 15-16 & Exs. | Disputed. Horowitz posited two disputes to ChexSystem, each of which were provided to BOA. The First dispute stated that Horowitz did not stop payment on the certified check from Union Bank. The Second Dispute stated that he resolved the | The supporting evidence cited by Horowitz do not at all support the cited facts; Horowitz's dispute is therefore not genuine. Ex. 16 is a Chex Request for Reinvestigation. It |

70014.0757/16731302.1

- 23 -

| BANA's Uncontroverted Facts and Supporting *Evidence* | Plaintiff's Response to Cited Fact and Supporting *Evidence* | BANA's Response |
|---|---|---|
| B and D. | issue of being reported for suspected fraud activity by BOA and that this designation should be removed.<br><br>*Evidence*: Ex 16 and 25. | specifically states under "Information to Verify" and "Reason for Reinvestigation" that the consumer disputed the information "Suspected Fraud Activity."<br><br>Ex. 25 is the deposition of Sarah Cables. The excerpted testimony does not in any way support the allegation that Horowitz disputed inaccuracies on his Chex report other than "Suspected Fraud Activity." |
| 53.  In this action, Horowitz seeks damages for profits he or his businesses would have earned if he had taken out loans that he admittedly never applied for.<br><br>*Evidence*: Plaintiff Depo., 59:13-61:5, 83:14-84:7, 91:4-13, 93:21-94:24, 97:3-98:6, 110:4-111:23, 113:7-114:16, 117:1-10, 119:7-18, 135:7-15, 141:1-18, 146:7-147:13, 179:13-183:3 & Exs. 11 and 18. | Disputed in part. Horowitz seeks emotional and financial damages as well. He is also seeking damages for lost business opportunities because he could not get a bank to open an account for him, let alone partner with the Small Business Administration due to being reported by BOA to ChexSystem[s] as having engaged in suspected fraud activity.<br><br>*Evidence*: Plaintiff Depo., 110:5-16, 110:25-111:4, 111:5-23, 112:17-113:1, 113:7-16, 117:1-5, 119:18, 152:18-153:5. | Undisputed that Horowitz seeks emotional and financial damages. Horowitz's alleged disputes are otherwise neither responsive nor relevant to the uncontroverted fact cited by BANA. Damages for business losses are not recoverable under the FCRA.<br><br>*See* Dkt. 50-1, pp. 12-13; BANA Reply Memo., pp. 4-5. |
| 54.  Horowitz did not communicate or make known to BANA the special circumstances from which his alleged business loss damages arose. | Disputed. BOA was already aware that Horowitz was a businessman and knew the damages that he would suffer from its improper credit reporting to Chex. In fact, Horowitz had a prior | Horowitz's alleged disputes are not responsive to the uncontroverted fact cited by BANA. The alleged disputes lack foundation, based on the self-serving |

BANA'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: BANA'S MOTION FOR SUMMARY JUDGMENT

| BANA's Uncontroverted Facts and Supporting *Evidence* | Plaintiff's Response to Cited Fact and Supporting *Evidence* | BANA's Response |
|---|---|---|
| *Evidence*: *See* Herrington Depo., Exs. 8, 10, 16, 17. | loan with Bank of America as his lender and guaranteed by the Small Business Administration.<br><br>*Evidence*: Horowitz Dep 153:14; 179:14-180:12; 181:13-23; 182:3-24. | testimony of Horowitz himself, and the lack of any admission by BANA that it was aware of the alleged special circumstances from which his alleged losses arose.<br><br>Horowitz's loan history with BANA has no bearing on his alleged business losses in this matter, which do not involve a BANA loan and are not recoverable under the FCRA in any event. Nor may damages be awarded for lost profits of unformed new businesses.<br><br>*See* Dkt. 50-1, pp. 12-13; BANA Reply Memo., pp. 4-5. |

### BANA's Responses to Plaintiff's Additional Uncontroverted Facts

| Plaintiff's Additional Facts | BANA's Response |
|---|---|
| 55.  Suspected Fraud Activity is defined as a violation of account privileges or furnisher policies allegedly to obtain unauthorized benefits or rights which has risen to the level of suspected fraud activity.<br><br>*Evidence*: Cables Depo., 24:6-10. | Undisputed that Chex Systems defines Suspected Fraud Activity as described. |
| 56.  A consumer being reported for suspected fraud activity is a very serious notation to place on one's ChexSystems report.<br><br>*Evidence*: Cables 28:5-9. | Undisputed. |

| Plaintiff's Additional Facts | BANA's Response |
|---|---|
| 57. Determining whether Horowitz stopped payment on the Check was critical to the resolution of his dispute.<br><br>*Evidence*: Cables 57:11-58:6 | Mischaracterizes Cables' testimony. Cables testified that it was important for BANA to review the reason that Horowitz indicated the account was closed to see whether that was the actual reason BANA closed the account.<br><br>*Evidence*: Cables Depo., 57:11-58:6. |
| 58. According to ChexSystems, if the facts show that Union Bank and not Horowitz, stopped payment on the Check, then Horowitz should NOT have been reported as suspected fraud activity according to ChexSystems.<br><br>*Evidence*: Cables 61:17 – 62:14. | Mischaracterizes Cables' testimony. Cables testified that Horowitz's account should not have been reported if the Check was the basis for BANA's reporting the account and if all the facts stated in Horowitz's first dispute were true; namely, that Union Bank issued a stop payment on the Check through no fault of his own and that Union Bank made the check good as it was Union Bank's fault alone that the stop payment order was issued.·<br><br>*Evidence*: Cables Depo., 61:8-62:14. |
| 59. Horowitz never owned any interest in COD USA, Inc.<br><br>*Evidence*: Horowitz Depo., 36:3-4. | Undisputed. However, it was also true that Horowitz was COD's CEO, a signer on COD's Union Bank account, and the person who directed Barbara Tolbert to obtain the Check as a means of avoiding Marigold Financing, LLC's garnishment.<br><br>*Evidence*: Horowitz Depo., 25:14-19, 26:3-27:4.<br><br>Plaintiff's Responses to Supplemental Interrogatories, Request No. 19. |
| 60. COD USA paid $70k in cash for the Check.<br><br>*Evidence*: Ex 3. | False. Although COD's account was initially charged for the Check, Union Bank later recredited the account for that sum and allowed Horowitz to take the money from that account.<br><br>*Evidence*: Biszantz Depo., 30:25-32:9, 32:19-24, 33:4-34:25. |
| 61. Mr. Horowitz owed over 50 domain names that he intended to finance for new business ventures. | Undisputed but irrelevant as business loss damages are not recoverable under the FCRA nor may damages be awarded for lost profits of unformed |

BANA'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: BANA'S MOTION FOR SUMMARY JUDGMENT

| Plaintiff's Additional Facts | BANA's Response |
|---|---|
| *Evidence*: Horowitz Depo., 179:13-16. | new businesses.<br><br>*See* Dkt. 50-1, pp. 12-13; BANA Reply Memo., pp. 4-5. |
| 62.  Horowitz intended to open at least a dozen businesses.<br><br>*Evidence*: Horowitz Depo., 181:24-182:9. | Undisputed but irrelevant as business loss damages are not recoverable under the FCRA nor may damages be awarded for lost profits of unformed new businesses.<br><br>*See* Dkt. 50-1, pp. 12-13; BANA Reply Memo., pp. 4-5. |
| 63.  In order to finance any of his pro-posed businesses, Horowitz needed a loan from the Small Business Admin-istration ("SBA"). Unfortunately, the SBA requires its borrowers to engage a "partner bank" to obtain the loan for which SBA ould guarantee the obligation.<br><br>*Evidence*: Horowitz Depo., 113:7-16. | Undisputed but irrelevant as business loss damages are not recoverable under the FCRA nor may damages be awarded for lost profits of unformed new businesses.<br><br>*See* Dkt. 50-1, pp. 12-13; BANA Reply Memo., pp. 4-5. |
| 64.  Due to BOA's continued reporting to ChexSystems, Horowitz as prevented from obtaining an SBA guaranteed loan.<br><br>*Evidence*: Horowitz Depo., 117:1-5; 18:13-24. | Undisputed for purposes of this motion only. Irrelevant. Business loss damages are not recoverable under the FCRA nor may damages be awarded for lost profits of unformed new businesses.<br><br>*See* Dkt. 50-1, pp. 12-13; BANA Reply Memo., pp. 4-5. |
| 65.  Ironically, he has had an SBA loan with Bank of America in the past.<br><br>*Evidence*: Horowitz Dep 153:14. | Undisputed. Irrelevant. Horowitz's loan history with BANA has no bearing on his alleged business losses in this matter, which do not involve a BANA loan and are not recoverable under the FCRA in any event. Nor may damages be awarded for lost profits of unformed new businesses.<br><br>*See* Dkt. 50-1, pp. 12-13; BANA Reply Memo., pp. 4-5. |
| 66.  Horowitz attempted to open accounts at NuVision Credit Union after the Bank sent him the Removal Letter. However, the Bank still had reported him to ChexSystems and NuVision refused to open new accounts for him as well. | Undisputed for purposes of this motion only. Irrelevant. Business loss damages are not recoverable under the FCRA nor may damages be awarded for lost profits of unformed new businesses.<br><br>*See* Dkt. 50-1, pp. 12-13; BANA Reply |

| Plaintiff's Additional Facts | BANA's Response |
|---|---|
| *Evidence*: Horowitz Depo., 91:2-14. | Memo., pp. 4-5. |
| 67. Without the ability to open new accounts, Horowitz could not pursue his business ventures.<br><br>*Evidence*: Horowitz Depo., 113:7-11, 182:13-24. | Undisputed for purposes of this motion only. Irrelevant. Business loss damages are not recoverable under the FCRA nor may damages be awarded for lost profits of unformed new businesses.<br><br>*See* Dkt. 50-1, pp. 12-13; BANA Reply Memo., pp. 4-5. |
| 68. Horowitz justifiably relied on the Removal Letter when he visited NuVision Credit Union to open new accounts.<br><br>*Evidence*: Horowitz Depo., 90:3-10, 91:15-18. | Disputed. Horowitz's reliance was unreasonable as the January 5 letter obviously referred to an account other than the one on which there had been negative reporting and Horowitz did nothing before going to NuVision to check with BANA about that discrepancy or to review his credit report to see if the negative information had been removed.<br><br>See Dkt. 50-1, pp. 20-21; BANA Reply Memo., p. 8. |
| 69. Kevin Williams was BOA's FRCP 30(b)(6) witness and testified as [to] the reinvestigations performed by BOA as 30b6.<br><br>*Evidence*: Ex 22. | Undisputed for purposes of this motion that Williams was designated as a witness for Bank of America pursuant to Fed. R. Civ. P. 30(b)(6) and gave testimony related to BANA's reinvestigations.<br><br>Irrelevant. No substantive information related to Williams' testimony is alleged here. |
| 70. Bank of America only performed reinvestigation into a consumer's FCRA dispute when the consumer provides "new information."<br><br>*Evidence*: Kevin Williams Dep 46:5-8. | Disputed. Mischaracterizes the cited testimony. Williams did not testify about BANA's reinvestigation process in general but instead said that Horowitz's dispute supplied no new information that his team could take back to the fraud investigation team to see if the new information would change its original decision.<br><br>*Evidence*: Williams Depo., 44:20-45:20. |
| 71. BOA determined that Horowitz did not provide any new information in connection with either of his disputes | Disputed. Mischaracterizes the cited testimony. Williams testified that fraud investigation and maintaining accurate |

BANA'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: BANA'S MOTION FOR SUMMARY JUDGMENT

| Plaintiff's Additional Facts | BANA's Response |
|---|---|
| and so, Bank of America merely relied upon its records. *Evidence*: Kevin Williams Dep 46:5-8. | credit reporting are separate processes. Adams and Pankowski were involved with the credit reporting process and it was not up to them to investigate fraud. So, since there was no new information that they could send to the fraud investigation team to see if that information would change its decision they were not to hold to that team's original decision. *Evidence*: Williams Depo., 46:9-47:13. |
| 72.  BOA took punitive action against Horowitz for the Check. *Evidence*: Kevin Williams Depo., 27:3-18. | Disputed. Mischaracterizes Williams' testimony. He referred to "punitive damage" meaning the loss BANA suffered and reported to Chex, not that the reporting or any other action taken by BANA was intended to punish Horowitz. *Evidence*: Williams Depo., 27:3-18. |
| 73.  Audrey Battle was equally aware that financial institutions can refuse to open accounts for a consumer who is reported to ChexSystems for suspected fraud activity. *Evidence*: Audrey Battle Dep 33:20-34:1. | Disputed. Mischaracterizes Battle's testimony. She testified that she "assumed" other financial institutions could refuse to open accounts for a consumer who is reported to ChexSystems for suspected fraud activity, but made clear she could not speculate as to Horowitz's circumstances, as she said, "But I don't know in his case. I can't state on that. *Evidence*: Battle Depo., 33:20-34:1. |
| 74.  Battle was also aware that banks can close accounts for consumers who are reported to ChexSystems. *Evidence*: Audrey Battle Dep 34:3-7. | Disputed. Mischaracterizes Battle's testimony. She testified that she was aware "that banks can close accounts on people who are reported for suspected fraud activity." She did not testify that consumers are reported "to" ChexSystems (which they are not, as a matter of both fact and law), nor that banks may take such action as was described, regardless of the information furnished or reported. *Evidence*: Battle Depo., 34:3-7. Irrelevant. Battle's awareness of the possible consequences of furnishing of data to ChexSystems is irrelevant to Horowitz's specific circumstances and |

BANA'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: BANA'S MOTION FOR SUMMARY JUDGMENT

| Plaintiff's Additional Facts | BANA's Response |
|---|---|
| | has no bearing on BANA's alleged intent to injure Horowitz. |
| 75.  The Bank did not [] remove the negative reporting to Chex on its own; it was instructed to do so by its counsel.<br><br>*Evidence*: Audrey Battle Dep 31:5-23. | Disputed. Mischaracterizes Battle's testimony. Battle did not testify as to the circumstances of the removal of Horowitz's account from ChexSystems reporting, including specifically whether or to what degree BANA's counsel was involved. Any such information is privileged and therefore inadmissible in any event.<br><br>Irrelevant. Whether or not the removal of Horowitz's account from ChexSystems was done with the assistance of counsel or under advice of counsel is irrelevant to the ultimate fact that the removal was effected. |
| 76.  Pankowski reviewed the Bank of America Removal Letter but disregarded it because he could not "verify" its validity.<br><br>*Evidence*: Michael Pankowski Dep 58:10-24. | Disputed. Mischaracterizes the cited testimony. Pankowski testified: "I did review this document. It was sent along with the Request for Reinvestigation from Chex. As far as verifying its validity, I can't -- I couldn't do that." He did not say he disregarded the letter because he could not verify its validity.<br><br>*Evidence*: Pankowski Depo., 55:20-23. |
| 77.  Pankowski also saw Herrington's note which said "Fraud ops – Deposit Fraud Detection Delete. (Leslie Herrington 01/05/2022)." He did not understand what Herrington's note meant, so he simply disregarded that, too.<br><br>*Evidence*: Michael Pankowski Dep 67:19-68:18. | Disputed. Mischaracterizes the cited testimony. Pankowski testified that he saw the note and did not understand it, but he did not say he disregarded it.<br><br>*Evidence*: Pankowski Depo., 67:21-68:24. |
| 78.  Pankowski never contacted Herrington for clarification about her note even though he had the means to reach her.<br><br>*Evidence*: Michael Pankowski Dep 68:19-24. | Undisputed that Pankowski did not follow up with Herrington about the notation, but it is wholly untrue that he "had no idea why the Bank was reporting Horowitz to ChexSystems," as Horowitz claims. The cited testimony does not state anything remotely resembling the stated fact. |
| 79.  Pankowski had no idea why BOA | Disputed. The cited testimony does not |

BANA'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: BANA'S MOTION FOR SUMMARY JUDGMENT

| Plaintiff's Additional Facts | BANA's Response |
|---|---|
| reported Plaintiff as having engaged in suspected fraud activity. He simply took the Bank's internal notes and confirmed that the reporting of Plaintiff as having engaged in suspected fraud activity was accurate.<br><br>*Evidence*: Michael Pankowski Dep 70:21–71:2; 71:19-72:1. | state anything remotely resembling the stated fact. Pankowski testified that RISC department comment did not require him to respond to the Request for Reinvestigation as he did. He made the determination to do so after reviewing the account. The RISC department only confirmed that suspected fraudulent activity was the reason BANA closed the account.<br><br>*Evidence*: Pankowski Depo., 70:1-71:18. |
| 80.  Herrington made the mistake in the Removal Letter.<br><br>*Evidence*: Herrington Dep 51:2-11. | Undisputed. |
| 81.  Herrington caused the Removal Letter to be sent to Horowitz.<br><br>*Evidence:* Herrington Dep 48:19–49:4. | Undisputed. |
| 82.  Horowitz felt like a criminal and bad about himself, when he was escorted out of NuVision Credit Union as BOA had failed to remove negative reporting about him to ChexSystems.<br><br>*Evidence*: Horowitz Dep 95:24-96:10. | Disputed. Mischaracterizes the cited testimony. The evidence is also opinion testimony and lacks foundation as such. Horowitz testified that NuVision "treated [him] like a...criminal." He did not testify that he was escorted out of the business, nor that he was escorted out because BANA did not have the ChexSystems reporting removed. |
| 83.  The only evidence that Thompson ever had as to the identity of who ordered the stop payment on the Check was his single conversation with Union Bank who referred him to the remitter of the Check. Thompson never knew who stopped payment on the Check.<br><br>*Evidence*: Thompson Dep. 81:22-82:11; 36:2-3. 111:20-23. | Compound. Undisputed that Thompson never knew who stopped payment on the Check. Otherwise, mischaracterizes Thompson's testimony. Thompson testified that Union Bank told him that the remitter stopped payment on the Check and referred him to the remitter for additional information. Thompson also spoke with Horowitz who told Thompson that he (Horowitz) had not stopped payment on the Check.<br><br>*Evidence*: Thompson Depo., 11:25-12:14, 35:23-36:3, 11:11-112:11, 120:2-16,125:18-126:2. |
| 84.  Chris Thompson never learned who stopped payment on the Check. | Undisputed. |

BANA'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: BANA'S MOTION FOR SUMMARY JUDGMENT

| Plaintiff's Additional Facts | BANA's Response |
|---|---|
| *Evidence*: Thompson Dep. 36:5-9; 96:19-20. | |
| 85.  Thompson caused BOA to report Horowitz to ChexSystems as having engaged in Suspected Fraud Activity. But the very next day, Thompson asserted the Bank's holder in due course rights against Union Bank. BOA knew that it would be paid by Union Bank on the Check.<br><br>*Evidence*: Thompson Dep 97:2-98:18. Ex 12. | Undisputed that Thompson asserted BANA's holder in due course rights against Union Bank via letter the day after he recommended Horowitz's account for closure.<br><br>Otherwise, the alleged dispute mischaracterizes the cited testimony. Thompson testified that BANA became a holder in due course when the Check was deposited, not that he (Thompson) knew that fact at the time. Nor did Thompson testify that he "knew" BANA would be paid by Union Bank. He in fact stated that making a claim "doesn't guarantee that Union Bank would...reimburse [BANA] for that stop payment."<br><br>*Evidence*: Thompson Depo., 67:9-10, 97:24-98:3. |
| 86.  BOA secreted these funds for over 5 years, never disclosing their existence to the Plaintiff. They only released them after this lawsuit was filed in 2023. Indeed, the Bank's FRCP 30(b)(6) witness on the question of why the funds were not returned to Plaintiff before this lawsuit showed complete ignorance of any reason for the improper withholding of these funds. The Bank only "recently discovered" these funds.<br><br>*Evidence*: Delony Dep 30:15-17, 34:1-4, 35:1-17; 37:15-22. | Disputed. The alleged "facts" are mere opinions and lack foundation as such. Horowitz also mischaracterizes the cited testimony, in which the deponent made no such admissions. The nature and amount of funds at issue are not even alleged here. |
| 87.  Orange County Credit Union allowed Plaintiff to open accounts at its financial institution only after BOA had removed the negative reporting to Chex.<br><br>*Evidence*: Horowitz Depo. 105:14-17. | Disputed. No foundation for alleged fact. The cited testimony indicates that Horowitz opened accounts at the credit union, not that he was only able to do so after the ChexSystems reporting was removed. |
| 88.  Horowitz also made clear in his First Dispute to ChexSystems, that he did not cause the stop payment order to be issued on the Union Bank Cashier's | Disputed. Mischaracterizes the exhibit. The reinvestigation request is evidence of nothing more than Horowitz's ***claim*** that he did not cause the stop payment |

BANA'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: BANA'S MOTION FOR SUMMARY JUDGMENT

| Plaintiff's Additional Facts | BANA's Response |
|---|---|
| Check.<br><br>*Evidence* Ex 15. | order to be issued on the Union Bank Cashier's Check. He proffered no evidence to support the claim in his dispute, let alone make this alleged fact "clear." The Horowitz dispute is hearsay, at best.<br><br>It is also irrelevant. BANA was not required to re-investigate the suspected fraudulent activity (i.e., the stop payment request) in response to his first dispute. The information Horowitz disputed was BANA's reason for closing the 2815 Account. That reason was stated in BANA's systems of record were reviewed in response to his dispute.<br><br>*Evidence*: Adams Depo., 36:12-37:4, 50:20-51:13, 56:22-25, 57:4-20, 59:13-18. |
| 89.   Carly Adams admitted that no reinvestigation was performed by her. She merely filled in the information already present in BOA's records. At the time she prepared BOA's response, she admitted that She did not know:<br><br>• what "suspected fraud activity" meant;<br><br>• what fraud was committed that caused BOA to close Horowitz's account;<br><br>• what behavior caused the bank to report Horowitz for suspected fraud activity;<br><br>• how or if Horowitz breached the account agreement;<br><br>She relied exclusively on what was told to her by the RISC Department;<br><br>She admitted that she did not have sufficient information to tell her that the account should have been closed due to suspicious fraud activity. | Disputed. Mischaracterizes Adams's testimony. By no means did Adams admit that she did not conduct a reinvestigation. Her testimony establishes exactly the opposite. She said she relied on the RISC Department's statement to determine the reason for its decision to close the account, but that she had reviewed several of BANA's systems of record to check whether the disputed information was accurate.<br><br>*Evidence*: Adams Depo., 12:1-13, 33:2-4, 36:5-36:4, 43:1-9 & Ex. 9; Cables Decl., ¶ 11 & Ex. C.<br><br>The proffered facts are also irrelevant. Horowitz does not claim that Adams should have looked to any other source of information other than BANA's own system records to determine why BANA closed the 2815 Account. Instead, he criticizes Adams for not duplicating the investigation that Thompson had already carried out. He is wrong. The disputed information was BANA's reason for closing the account.<br><br>*Evidence*: Thompson Depo., 81:9-20, |

| Plaintiff's Additional Facts | BANA's Response |
|---|---|
| *Evidence*: Carly Adams Dep 29:8-13, 48:12 - 49:18; 49:20-50:18; 55:9-56:25. | 148:20-149:4.<br><br>Having correctly determined that the furnished information correctly reflected the real reason BANA closed the account, Adams was not required to determine whether the account should have been closed for that reason—that is, to recheck Thompson's investigation. |
| 90.  Bank of America also believed that the Removal Letter applied to 2815 Account.<br><br>*Evidence*: Herrington Dep 51:2-52:3. | Disputed. Mischaracterizes Herrington's testimony. Herrington testified that she, personally, intended to have the negative information related to Account 2815 removed from Horowitz consumer credit reports, and that BANA's January 5 letter should have referred to that account. She confirmed that she failed to achieve that objective only because she made a mistake and referenced the wrong account number in her request.<br><br>*Evidence*: Herrington Depo., 51:2-52:3. |
| 91.  Audrey Battle was aware that Account 6566 was never reported to ChexSystems when she declined the dispute. Battle also never questioned Herrington as to why Herrington asked Battle to remove an account never reported to Chex.<br><br>*Evidence*: Battle dep 22:3-9. | Disputed. Mischaracterizes Battle's testimony. Battle did not decline a "dispute," understood here to refer to a dispute from Horowitz. She rather declined Leslie Herrington's recommendation to have the 6566 account removed from ChexSystems reporting, because she determined that the account was not, in fact, reported.<br><br>*Evidence*: Battle Depo., 21:19-22:12.<br><br>Battle also explained that she did not personally follow up with Herrington because "[a] n automated email is sent to the analyst whenever we reject something. And it instructs them to look to see what, if any, other action is required."  However, Battle never received an email telling her the request was rejected.<br><br>*Evidence*: Battle Depo., 22:18-21, 26:7-25; 29:7-30:14. |

BANA'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: BANA'S MOTION FOR SUMMARY JUDGMENT

| Plaintiff's Additional Facts | BANA's Response |
|---|---|
|  |  |
| 92. Pankowski never questioned why the Removal Letter recited an account number that was never reported to ChexSystems when conducting a reinvestigation into Horowitz's second dispute.<br><br>*Evidence*: Pankowski Depo. 60:15-23 | Disputed. The alleged fact is incomplete and misleading. Pankowski testified: "Once I saw that it was referring to a different account number than the one I was working, then at that point it did not give me pause. It was not pertaining to the account I was working at the time."<br><br>*Evidence*: Pankowski Depo., 60:19-23. |
| 93. The Stop Payment Order on the Check was ordered by Union Bank's Legal Department, itself, without any prior knowledge to Horowitz. Kyle Connors, from Union Bank requested the Stop Payment Order.<br><br>*Evidence*: Biszantz Depo., 13:9-12; 26:6- 11; 27:21-24; 29:2-6. | Undisputed that Kyle Connors (not Union Bank's Legal Department) placed a stop payment order on the Check. |
| 94. Thompson knew that BOA would be paid on the Check as it was a holder in due course since the day it received the Check in Horowitz's Account.<br><br>*Evidence*: Thompson Depo., 56:24-57:3, 65:20-66:9, 97:24-98:4, 99:7-14. | Disputed. Thompson knew BANA was a holder in due course of the Check. He thought it was therefore entitled to payment from Union Bank. He did not know whether Union Bank would agree and pay.<br><br>*Evidence*: Thompson Depo., 96:23-98:4. |
| 95. On March 6, 2023, Plaintiff's counsel, during the course of this case, presented Defense counsel with the Removal Letter as proof that the negative reporting about Horowitz should have been removed.<br><br>*Evidence*: Ex 19. | Undisputed that Plaintiff's counsel sent an email to BANA's attorney and attached the Removal Letter, asking BANA to remove the negative reporting from ChexSystems as to Horowitz.<br><br>Disputed that the Removal Letter constituted "proof" that the negative reporting "should have been removed." The letter has no probative value in this respect, and is hearsay as proffered by Plaintiff. The letter is only evidence that BANA told Plaintiff it had already requested to remove the 6566 account from reporting. This was not a promise of future performance, as Plaintiff has alleged. As such, he could not have reasonably relied on it, to his detriment |

| Plaintiff's Additional Facts | BANA's Response |
|---|---|
| | or otherwise. |

DATED: March 5, 2024

SEVERSON & WERSON
A Professional Corporation


By: _____
          /s/ Austin B. Kenney
          AUSTIN B. KENNEY

Attorneys for Defendants
CHEX SYSTEMS, INC. and BANK OF
AMERICA, N.A.

BANA'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: BANA'S MOTION
FOR SUMMARY JUDGMENT