AUSTIN B. KENNEY (State Bar No. 242277)
abk@severson.com
MATTHEW J. ESPOSITO (State Bar No. 223445)
mje@severson.com
SEVERSON & WERSON
A Professional Corporation
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
Telephone: (949) 442-7110
Facsimile: (949) 442-7118

Attorneys for Defendants CHEX
SYSTEMS, INC. and BANK OF
AMERICA, N.A.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| BRIAN HOROWITZ,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>CHEX SYSTEMS, INC., a foreign corporation, and BANK OF AMERICA, N.A., a foreign corporation,<br><br>　　　　　Defendants. | Case No. 8:22-cv-02002-DFM<br><br>*Assigned for all purposes to Hon. Douglas F. McCormick*<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CHEX SYSTEMS, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>*Filed concurrently with Response to Plaintiff's Statement of Genuine Disputes*<br><br>Date:　　March 19, 2024<br>Time:　　10:00 a.m.<br>Crtrm.:　6B<br><br>Trial Date:　　May 7. 2024 |

70014.0757/16729361.2

REPLY MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING CHEX SYSTEMS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

*Page*

I. CHEXSYSTEMS IS ENTITLED TO SUMMARY JUDGMENT ON HOROWITZ'S CLAIM UNDER § 1681e(b) ....................................................... 1

    A.    ChexSystems's Report On Horowitz Was Accurate ............................ 1

    B.    ChexSystems Employs Reasonable Procedures To Ensure Accuracy . 3

II. CHEX IS ENTITLED TO SUMMARY JUDGMENT ON HOROWITZ'S CLAIMS UNDER § 1681i .......................................................................... 4

    A.    ChexSystems Conducted Reasonable Reinvestigations Of Horowitz's Disputes ............................................................................................... 4

    B.    Horowitz Cannot Recover Business Loss Damages On His FCRA Claims ................................................................................................. 7

    C.    Horowitz Cannot Recover Statutory Or Punitive Damages ................. 8

III. CONCLUSION ................................................................................................. 9

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Bibbs v. Trans Union LLC*,
    43 F.4th 331 (3d Cir. 2022) ........................................................................... 3

*Carvalho v. Equifax Info. Servs., LLC*,
    629 F.3d 876 (9th Cir. 2010) ......................................................................... 3

*Casella v. Equifax Credit Info. Servs.*,
    56 F.3d 469 (2d Cir. 1995) ............................................................................ 8

*Dennis v. BEH-1, LLC*,
    520 F.3d 1066 (9th Cir 2008) ..................................................................... 7, 8

*Dorian v. Community Loan Servicing, LLC,*
    No. 22-cv-04372, 2023 WL 395790 (N.D. Cal. Jan. 25, 2023) ...................... 8

*Eller v. Trans Union, LLC*,
    739 F.3d 467 (10th Cir. 2013) ....................................................................... 3

*Garrett v. Trans Union, L.L.C.*,
    No. 2:04-cv-00582, 2006 WL 2850499 (S.D. Ohio Sept. 29, 2006) ............... 8

*Gorman v. Wolpoff & Abramson, LLP*,
    584 F.3d 1147 (9th Cir. 2009) ............................................................. 4, 6, 7, 8

*Grigoryan v. Experian Information Solutions, Inc.*,
    84 F. Supp. 3d 1044 (C.D. Cal. 2014) ........................................................... 8

*Natale v. TRW, Inc.*,
    No. 97-cv-3661, 1999 WL 179678 (N.D. Cal. Mar. 30, 1999) ....................... 8

*Reed v. Experian Info. Sols., Inc.*,
    321 F. Supp. 2d 1109 (D. Minn. 2004) ........................................................... 8

*Statutes*

United States Code
    Title 15
        Section 1681e .......................................................................... 1, 3, 8
        Section 1681i ........................................................................... 3, 4, 5, 8
        Section 1681n .......................................................................... 8, 9
        Section 1681o .......................................................................... 8
        Section 1681s-2 ........................................................................ 4

REPLY MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING CHEX SYSTEMS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

*Page(s)*

*Statutes*

Commercial Code
Section 3302 ...............................................................................................................3
Section 3305 ...............................................................................................................3
Section 3411 ...............................................................................................................3

REPLY MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING CHEXSYSTEMS'S MOTION FOR SUMMARY JUDGMENT

# I.

## CHEXSYSTEMS IS ENTITLED TO SUMMARY JUDGMENT ON HOROWITZ'S CLAIM UNDER § 1681e(b)

**A.      ChexSystems's Report On Horowitz Was Accurate**

Contrary to Horowitz's argument (Dkt. # 61, pp. 7, 13), the credit reports that Chex Systems, Inc. ("ChexSystems") issued regarding his 2815 Account were not inaccurate.

First, Horowitz mistakes what the reports said. They did *not* say that Horowitz had engaged in Suspected Fraud Activity. (*Id.*) Instead, they reported that Bank of America, N.A. ("BANA") had closed Horowitz's 2815 Account for suspected fraudulent activity.

That is precisely the reason BANA closed the 2815 Account. After Horowitz's misuse of the 2815 Account left a $69,315 overdraft in that account which BANA's Overdraft Department was unable to collect, that department referred the matter the BANA's Global Financial Crimes Compliance unit. (Dkt. # 48, ¶¶ 7-12.) A member of that unit, Christopher Thompson, conducted an investigation, contacting both Horowitz and Union Bank, following which he recommended that BANA close the 2815 Account for suspected fraudulent activity. (Dkt. # 48, ¶¶ 13-17.)

Horowitz has no evidence to show that BANA closed the 2815 Account for any reason other than suspected fraudulent activity.

Second, Horowitz errs in arguing that the fact that Union Bank, rather than he, stopped payment of the $70,000 cashier's check (the "Check") somehow renders false BANA's stated reason for closing the 2815 Account. (Dkt. # 61, pp. 7, 13-14.) "Who stopped payment of the Check?" is, obviously, a completely different question from "Why did BANA close the 2815 Account?" The answer to the first question does not dictate the answer to the second one. Thompson testified that he might well reached the same conclusion and still recommended closure of the 2815 for suspected fraudulent activity even if he had known that Union Bank had stopped

REPLY MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING CHEX SYSTEMS' MOTION FOR SUMMARY JUDGMENT

payment on the Check. (*See* Dkt. # 48, ¶ 17 (citing Thompson Depo., 112:13-113:10).)

In arguing to the contrary, Horowitz relies on his repeated mischaracterization of the deposition testimony of Sarah Cables, ChexSystems's 30(b)(6) witness. Cables did not "admit[] that if the facts show that Union Bank and not Horowitz, stopped payment on the Check, then Horowitz should NOT have been reported as suspected fraud activity." (Dkt. # 61, pp. 3, 7, 10-11, 12, 13, 14.)

Cables was not asked that question and did not give that testimony. Cables was asked whether she would agree that Horowitz should not have been reported as suspected fraud activity if what he explained in his first dispute was what occurred. She said she would agree. (Dkt. # 64, p. 24, lines 9-14.) In his first dispute, Horowitz "explained" much more than just that Union Bank rather than he stopped payment on the Check.[1] And much of what he said was false, *not* true.

In particular, contrary to Horowitz's statements in his first dispute, funds were not available in the COD account at Union Bank; the funds in that account were frozen due to Marigold Funding, LLC's garnishment. And Horowitz was very much at fault for the stop payment and resulting overdraft of his 2815 Account even if Union Bank rather than he stopped payment on the Check. It was his plan to empty the COD account by a transfer of its funds to his 2815 Account with actual intent to defraud Marigold Funding which set off the chain of events that ultimately resulted in the overdraft in the 2815 Account. (*See* Dkt. # 62, pp. 5-6, 17.) Horowitz was also at fault in transferring the funds immediately from the 2815 Account as part of the

---

[1] In his first dispute, Horowitz stated "that he had a cashier's check *from his business account* at Union Bank. He states that he deposited the funds into his Bank of America account. Two days later, the funds were wired out. After this happened, Union Bank put a stop payment on the cashier's check. He states that *at the time the cashier's check was drawn, the funds were available*. *At the time the cashier's check was deposited, the funds were available*. *He states that this issue was no fault of his own* and should not be listed as fraud on his part. In fact, *Union Bank paid this account in full as it was their fault, not his*." (Dkt. # 46-2, p. 43; emphasis added.)

REPLY MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING CHEXSYSTEMS'S MOTION FOR SUMMARY JUDGMENT

same plot to defraud Marigold Funding and in not repaying the overdraft once he had succeeded in lifting the garnishment on COD's account.[2]

In short, the information that BANA furnished and ChexSystems reported was accurate. BANA closed the 2815 Account for suspected fraudulent activity, not for any other reason. It had good reason to suspect fraudulent activity based on the information Thompson's investigation revealed. Had it known all the true facts, BANA would have had even better reason to reach that same conclusion.

Because Horowitz cannot prove the reported information was false, he cannot prove his claims under § 1681e(b) or § 1681i(a), and ChexSystems should be granted summary judgment on Horowitz's claims against it. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010); *Bibbs v. Trans Union LLC*, 43 F.4th 331, 342, 344 (3d Cir. 2022); *Eller v. Trans Union, LLC*, 739 F.3d 467, 473 (10th Cir. 2013).

**B.     ChexSystems Employs Reasonable Procedures To Ensure Accuracy**

Horowitz is also wrong in claiming that ChexSystems does not employ reasonable procedures to assure accuracy of its information about consumers. (Dkt. # 61, pp. 5-7.)

Horowitz first argues that his first dispute gave ChexSystems notice that he claimed he had not stopped payment on the Check and that information made the information BANA had furnished "suspect because what BOA was reporting about Horowitz and what Horowitz was saying, both could not be true at the same time." (*Id.*, 6.) So, he says ChexSystems should have followed up with BANA to determine who stopped payment on the Check, and "[i]ts failure to do so calls into question" the reasonableness of its procedures. (*Id.*, 6-7.)

This argument is doubly wrong. First, it again confuses the information that

---

[2] It was also untrue that Union Bank paid the account because it was the bank's fault, not Horowitz's. Union Bank paid because it had no defense to BANA's claim as the holder in due course of the Check—which was true regardless of whose fault it was. *See* Com. Code, §§ 3302(a)(1), 3305(b), 3411(b).

BANA furnished and ChexSystems reported—the reason BANA closed the 2815 Account—with the question of who stopped payment on the Check. For the reasons stated in the preceding section, the two are not the same. Second, ChexSystems did, in fact, follow up with BANA. It sent BANA a Request for Reinvestigation that correctly set forth the nature of Horowitz's dispute, including his claim that Union Bank, not he, had stopped payment and that he was utterly blameless in the affair. (Dkt. # 46-2, pp. 41-44.) That was a perfectly reasonable procedure for ChexSystems to use to assure accuracy—indeed, it is the procedure that FCRA requires ChexSystems to employ. 15 U.S.C. § 1681i(a).

Horowitz is also wrong in faulting ChexSystems's procedures because it supposedly "believes that it's the furnisher's responsibility to verify the accuracy and completeness of information" furnished to ChexSystems. (Dkt. 61, pp. 7, 8.) That belief is fully justified. FCRA imposes exactly that responsibility on furnishers. 15 U.S.C. § 1681s-2(a)(1)(A). And, as the Ninth Circuit has explained, furnishers are in a much better position than credit reporting agencies ("CRAs") to assure information is accurate. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156-57 (9th Cir. 2009).

In view of those facts, ChexSystems acts reasonably in relying primarily on furnishers to correct any inaccuracies in disputed information they have furnished. But Horowitz is wrong in asserting that that is all ChexSystems does in response to a consumer's dispute. (*See* Dkt. # 62, pp. 16-17.)

## II.

### CHEX IS ENTITLED TO SUMMARY JUDGMENT ON HOROWITZ'S CLAIMS UNDER § 1681i

**A.    ChexSystems Conducted Reasonable Reinvestigations Of Horowitz's Disputes**

ChexSystems and Horowitz agree on the legal rule governing Horowitz's § 1681i claims. ChexSystems must have made a reasonable reinvestigation of

70014.0757/16729361.2                                          - 4 -

Horowitz's disputes. But ChexSystems was entitled to rely on the furnisher, BANA, and was not required to independently verify the disputed information *unless* ChexSystems knew or had reason to know that BANA was unreliable or reporting inaccurate information. (*See* Dkt. # 47-1, p. 11; Dkt. # 61, p. 9.)

Here, ChexSystems did not independently verify the disputed information. So, the issue on Horowitz's § 1681i claims narrows to the question of whether ChexSystems knew or had reason to know BANA was unreliable or supplying inaccurate information.

Regarding his first dispute, Horowitz argues ChexSystems had reason to know that BANA's information was inaccurate simply because he (Horowitz) sent ChexSystems a dispute alleging "facts" that he insists ChexSystems had no reason to doubt. (Dkt. # 61, pp. 10-11.) Horowitz is wrong.

If that sufficed to impose on a CRA a duty to independently verify the any disputed information, the exception would swallow the stated general rule that a CRA may rely on the furnisher. Almost always a consumer's dispute will assert facts that, if true, would show the disputed information to be inaccurate. And almost always, without undertaking an independent investigation, a CRA will have no way of knowing whether the consumer's claimed facts are true. So, Horowitz's dispute, on its own, could not be enough to give ChexSystems reason to know that BANA had furnished inaccurate information.

To bolster his frail argument that his first dispute should have put ChexSystems on notice that the disputed information was inaccurate, Horowitz once again relies on his mischaracterization of Cable's deposition testimony. (Dkt. # 61, pp. 10-11.) As already stated, Cable did *not* testify that BANA should not have reported Horowitz's account if Horowitz did not stop payment on the Check. (*See* pp. 2-3 above.) Also, the "facts" Horowitz stated in his first dispute were false. (*Id*.)

More importantly for purposes of Horowitz's § 1681i claim, however, the primary responsibility for determining the relevance and truth or falsity of his "facts"

lay with BANA, not ChexSystems. Nothing Horowitz stated in his first dispute gave ChexSystems any reason to know that BANA would not fulfill its FRCA responsibility. Hence, ChexSystems bore no duty to independently verify the information that Horowitz disputed.

As to his second dispute, Horowitz argues that ChexSystems had reason to know BANA was furnishing inaccurate information because ChexSystems, he says, realized that BANA's January 5, 2022 letter referred to a different account than the one on which Horowitz disputed information. (Dkt. # 61, pp. 11-12.) And Horowitz again faults ChexSystems for "simply shipp[ing] the letter off to BOA without ever investigating this discrepancy." (*Id.*, p. 12.)

Tellingly, however, Horowitz fails to state what additional investigation ChexSystems could or should have conducted. Whom, other than BANA, could ChexSystems ask about the difference between the 6566 Account referenced in the letter and the 2815 Account on which BANA had furnished negative credit information? ChexSystems did ask BANA about it, sending BANA the letter and an accurate description of Horowitz's claim that it showed he had resolved his dispute with BANA. (Dkt. # 46-3, pp. 13-16; Dkt. # 48, ¶ 46.) How else could ChexSystems have "investigated th[e] discrepancy"? Horowitz offers no answer.

Horowitz also argues that whether further investigation by ChexSystems would have achieved a different result would "depend on whether ChexSystems resolved the ultimate question of whether BOA knew who stopped payment on the Check." (Dkt. # 61, p. 12.) To say it for the third time, that is *not* the ultimate question.[3] (*See* pp. 1-2 above.) The ultimate question is whether the disputed information—that BANA closed the 2815 Account for suspected fraudulent

---

[3]    Also, to repeat for a third time, Cables did *not* testify that if BANA could not say who stopped payment on the Check, it should not have reported the account as closed for suspicious fraudulent activity. (*See* pp. 2-3 above.) Horowitz's repeated contrary assertion is simply wrong. (Dkt. # 61, pp. 12-13.)

activity—was accurate. And the answer to that question is indisputably "yes," as also explained above. (*Id.*)

**B.    Horowitz Cannot Recover Business Loss Damages On His FCRA Claims**

As shown in ChexSystems's opening memorandum (Dkt. # 47-1, p. 16), partial summary judgment should be granted on Horowitz's claim for business loss damages. First, FCRA is a consumer protection statute under which damages may not be recovered for business losses. (*Id.*) Second, insofar as Horowitz claims damages for business ventures he never began, the losses are too speculative to be recoverable. (*Id.*)

In his opposition, Horowitz claims that the Ninth Circuit has departed from all other federal courts and allows recovery of business loss damages under FCRA. (Dkt. # 61, pp. 14-15.) He is wrong.

The issue in *Dennis* was whether the summary judgment had properly been entered against the plaintiff because he had not suffered *any* actual damages. *Dennis v. BEH-1, LLC,* 520 F.3d 1066, 1069 (9th Cir 2008). *Dennis* reversed, finding that Dennis had "offered credible evidence of actual damages." *Id.* The opinion did note Dennis' testimony concerning his extinguished hopes of starting a business, but did not state he could have recovered damage for those losses. Instead, it went on to state that Dennis claimed that "Experian's error caused his next landlord to demand that Dennis pay a greater security deposit… and that Experian's inaccurate report caused him emotional distress, which we've held to be 'actual damages.' " *Id.* Since the increased security deposit and emotional distress were sufficient evidence of "actual damage" to overcome summary judgment, *Dennis* did not need to, and did not, decide whether damages could be awarded for dashed hopes of starting a new business.

*Gorman*, 584 F.3d at 1174 is farther off point. It quotes *Dennis*, but then holds only that Gorman showed actual damages by claiming that due to the alleged inaccuracy in his credit reports "he had to borrow money at inflated interest rates,

and that he lost wages from the time spent dealing with his credit problems." *Id.* There is nothing in *Gorman* to show that Gorman's borrowings were for business purposes.

As noted in ChexSystems's opening memorandum, this Court and the Northern District have each disallowed recovery of business loss damages post-*Gorman*. (Dkt. #47-1, p. 16 (*citing Dorian v. Community Loan Servicing, LLC,* No. 22-cv-04372, 2023 WL 395790, at \*7-8 (N.D. Cal. Jan. 25, 2023); *Natale v. TRW, Inc.,* No. 97-cv-3661, 1999 WL 179678, \*3 (N.D. Cal. Mar. 30, 1999); *Grigoryan v. Experian Information Solutions, Inc.,* 84 F. Supp. 3d 1044, 1081-82 (C.D. Cal. 2014).

Furthermore, even if the FCRA did not bar recovery, Horowitz could not recover his purported losses from dashed hopes of starting brand new businesses because those damages are too speculative. *Casella v. Equifax Credit Info. Servs.,* 56 F.3d 469, 475 (2d Cir. 1995); *Garrett v. Trans Union, L.L.C.,* No. 2:04-cv-00582, 2006 WL 2850499, at \*12 (S.D. Ohio Sept. 29, 2006); *Reed v. Experian Info. Sols., Inc.,* 321 F. Supp. 2d 1109, 1115 (D. Minn. 2004). Horowitz's opposition is silent about this additional barrier to his recovery of business loss damages, conceding the point. (*See* Dkt. # 61, pp. 14-15.)

**C.     Horowitz Cannot Recover Statutory Or Punitive Damages**

To recover statutory or punitive damages under § 1681n, Horowitz must show a willful violation of § 1681e or § 1691i. (*See* Dkt. # 47-1, p. 17.) Horowitz has not raised a genuine issue regarding willfulness. So, partial summary judgment should be granted on his claim for statutory and punitive damages.

In his opposition, Horowitz argues willfulness is shown by ChexSystems's supposed policy of putting sole responsibility on furnishers to assure the accuracy of their information. (Dkt. # 61, p. 16.) ChexSystems has no such policy. Horowitz's argument is again based on a gross mischaracterization of Cables' deposition testimony.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING CHEXSYSTEMS'S MOTION FOR SUMMARY JUDGMENT

There is nothing else to show willfulness. ChexSystems's reinvestigations of Horowitz's disputes were reasonable as already explained. But even if Horowitz could raise a genuine issue in that regard—and he cannot—it would, at most, allow recovery of actual damages under § 1681o, not statutory or punitive damages under § 1681n.

## III.

## CONCLUSION

For the reasons stated in ChexSystems's opening memorandum and in this reply, the Court should grant ChexSystems summary judgment on Horowitz's claims against it or, in the alternative, partial summary judgment on Horowitz's claims for business loss, statutory, and punitive damages.

DATED: March 5, 2024

SEVERSON & WERSON
A Professional Corporation

By: _____*s/ Austin B. Kenney*_____
AUSTIN B. KENNEY

Attorneys for Defendants CHEX SYSTEMS, INC. and BANK OF AMERICA, N.A.

70014.0757/16729361.2

- 9 -