AUSTIN B. KENNEY (State Bar No. 242277)
abk@severson.com
MATTHEW J. ESPOSITO (State Bar No. 223445)
mje@severson.com
SEVERSON & WERSON
A Professional Corporation
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
Telephone: (949) 442-7110
Facsimile: (949) 442-7118

Attorneys for Defendants CHEX
SYSTEMS, INC. and BANK OF
AMERICA, N.A.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| BRIAN HOROWITZ,<br><br>        Plaintiff,<br><br>    vs.<br><br>CHEX SYSTEMS, INC., a foreign corporation, and BANK OF AMERICA, N.A., a foreign corporation,<br><br>        Defendants. | Case No. 8:22-cv-02002-DFM<br><br>*Assigned for all purposes to Hon. Douglas F. McCormick*<br><br>**CHEX SYSTEMS, INC.'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: CHEX SYSTEMS, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>*Filed concurrently with Reply Memorandum of Points and Authorities*<br><br>Date:   March 19, 2024<br>Time:   10:00 a.m.<br>Crtrm.:  6B<br><br>Trial Date:   May 7. 2024 |

70014.0757/16730404.1

CHEX SYSTEMS' RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: CHEX
SYSTEMS' MOTION FOR SUMMARY JUDGMENT

Defendant CHEX SYSTEMS, INC. (also erroneously sued as Chex Systems, Inc., a foreign corporation) ("ChexSystems") respectfully submits this Response to Plaintiff's Statement of Genuine Disputes in re: ChexSystems's Motion for Summary Judgment.

## ChexSystems's Uncontroverted Facts

| ChexSystems' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting *Evidence* | ChexSystems' Response |
|---|---|---|
| 1.  In 2018, Plaintiff BRIAN HOROWITZ ("Horowitz") was the CEO of COD USA, Inc. ("COD"), a business owned by Heather Smulson, whom Horowitz later married.<br><br>*Evidence*: Declaration of Austin B. Kenney ("Kenney Decl."), ¶ 10, Ex. 9, Deposition of Plaintiff Brian Horowitz ("Plaintiff Depo."), 15:3-6, 26:8-16, 35:20-36:5. | Undisputed, but to be clear, Horowitz was not married to Heather Smulson until December of 2022.<br><br>*Evidence*: Horowitz Depo., 15:5-6. | None. |
| 2.  COD maintained its bank accounts at Union Bank.<br><br>*Evidence*: Plaintiff Depo., 27:12-28:3. | Undisputed. | None. |
| 3.  In January 2018, Horowitz learned that one of COD's creditors, Marigold Funding, LLC, had secured a judgment by confession against COD in New York state court and was threatening to garnish COD's Union Bank account(s) to satisfy that judgment. | Undisputed. | None. |

CHEX SYSTEMS' RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: CHEX SYSTEMS' MOTION FOR SUMMARY JUDGMENT

| ChexSystems' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting *Evidence* | ChexSystems' Response |
|---|---|---|
| *Evidence*: Plaintiff Depo., 27:12-28:9; Kenney Decl., ¶ 3, Ex. 2, Plaintiff's Responses to Supplemental Interrogatories, Request No. 19. | | |
| 4.  To avoid the garnishment, Horowitz directed the emptying of COD's account by purchasing from Union Bank a $70,000 cashier's check payable to Horowitz. *Evidence*: Plaintiff Depo., 25:3-19, 26:17-25, 27:12-28:9, 35:14-19 & Ex. 4; Plaintiff's Responses to Supplemental Interrogatories, Request No. 19. | Undisputed. To be clear, COD purchased the cashier's check ("The Check") with good funds in its bank account. *Evidence*: Biszantz Depo. 17:7-17. | The "to be clear" sentence is not true. The funds in COD's account were subject to a freeze order due to a garnishment served on Union Bank by COD's judgment creditor, Marigold Funding, LLC. *Evidence*: Biszantz Depo., 12:19-13:12, 24:22-25:11 & Ex. 7. |
| 5.  COD was the check's remitter. *Evidence*: Plaintiff Depo., 177:20-178:11 & Ex. 4; Kenney Decl., ¶ 12, Ex. 11, Deposition of Julie Biszantz ("Biszantz Depo."), 12:6-13:22 & Ex 1. | Undisputed. | None. |
| 6.  Horowitz used a portion of the transferred money to pay COD's rent. *Evidence*: Plaintiff Depo. | Undisputed. | None. |

CHEX SYSTEMS' RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: CHEX
SYSTEMS' MOTION FOR SUMMARY JUDGMENT

| ChexSystems' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting *Evidence* | ChexSystems' Response |
|---|---|---|
| 36:10-37:22. | | |
| 7.  On January 16, 2018, Horowitz deposited the check in his personal Bank of America ("BANA") account, ending in 2815.<br><br>*Evidence*: Kenney Decl., ¶ 13, Ex. 12, First Amended Complaint ("FAC"), ¶ 9;<br><br>Plaintiff Depo. 30:24-31:4, 31:21-24 & Ex. 6.;<br><br>Declaration of Thomas Jordan ("Jordan Decl."), Ex. A. | Undisputed. | None. |
| 8.  Over the next two days, 19 transfers were made from the 2815 Account, reducing the account balance to less than $700.<br><br>*Evidence*: Plaintiff Depo., 35:7-13, 36:10-37:22 & Ex. 7. | Undisputed. | None. |
| 9.  On January 18, 2018, Union Bank returned the check to BANA unpaid and marked "08-PAYMENT STOPPED."<br><br>*Evidence*: Biszantz Depo., 24:8-25:7 & Ex. 8;<br><br>Jordan Decl., ¶ 6 & Ex. B. | Undisputed. | None. |
| 10.BANA charged the item back to the 2815 Account, leaving the | Undisputed. | None. |

CHEX SYSTEMS' RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: CHEX SYSTEMS' MOTION FOR SUMMARY JUDGMENT

| ChexSystems' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting *Evidence* | ChexSystems' Response |
|---|---|---|
| account overdrawn by $69,315.08 at the end of the statement cycle.<br><br>*Evidence*: Plaintiff Depo., 38:17-20, 39:3-11;<br><br>Kenney Decl., ¶ 8, Ex. 7, Deposition of Diane DeLoney ("DeLoney Depo."), 23:15-25;<br><br>Jordan Decl., ¶ 6 & Ex. B. | | |
| 11.BANA personnel contacted Horowitz several times in unsuccessful efforts to collect the overdrawn balance of the 2815 Account.<br><br>*Evidence*: Kenney Decl., ¶ 7, Ex. 6, Confidential Deposition of Christopher Thompson ("Thompson Depo. (Conf.)"), 63:14-65:1, 69:15-23. | Disputed. Horowitz responded to BOA in each instance that it had contacted him. Indeed, BOA admitted that Horowitz had cooperated with it to get Union Bank to honor the Check.<br><br>*Evidence*: Thompson Depo., 43:23-44:15. | Disputed. Thompson testified that Horowitz tried to get Union Bank to make the Check good. But he also testified that BANA's Overdraft Service Collections Department had contacted Horowitz in unsuccessful efforts to collect the overdraft from him.<br><br>*Evidence*: Thompson Depo., 63:14-65:1, 69:15-23, 70:24-71:9. |
| 12.BANA's Overdraft Collections Department referred the 2815 Account to BANA's Global Financial Crimes Compliance ("GFCC") investigation team for review.<br><br>*Evidence*: Thompson Depo. (Conf.), 58:21-60:22, 63:3-64:1, 174:13-175:4. | Undisputed. | None. |

CHEX SYSTEMS' RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: CHEX SYSTEMS' MOTION FOR SUMMARY JUDGMENT

| ChexSystems' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting *Evidence* | ChexSystems' Response |
|---|---|---|
| 13. GFCC investigator Christopher Thompson ("Thompson") spoke to a Union Bank representative who told Thompson that the remitter stopped payment on the $70,000 cashier's check.<br><br>*Evidence*: Kenney Decl., ¶ 7, Ex. 6, Non-Confidential Deposition of Christopher Thompson ("Thompson Depo. (Non-Conf.)"), 11:25-12:14, 35:23-36:3, 125:18-126:2;<br><br>Thompson Depo. (Conf.), 174:13-175:4. | Undisputed. | None. |
| 14. Thompson also called Horowitz who said that he had not stopped payment on the cashier's check.<br><br>*Evidence*: *See* Thompson Depo. (Non-Conf.), 111:11-112:11, 120:2-16. | Undisputed. | None. |
| 15. Based on past experience that information obtained from another bank in similar situations was reliable, Thompson credited Union Bank's statement.<br><br>*Evidence*: Thompson Depo. (Non-Conf.), 111:11-112:11, 120:2-16. | Disputed. Thompson repeatedly testified "he did not know who to believe" as to who stopped payment on the Check.<br><br>*Evidence*: Thompson Depo., 43:20-22. | The alleged dispute mischaracterizes Thompson's testimony. He said he did not know who was correct, not who to believe. Since he did not know who was correct, he accepted Union Bank's statement based on his past experience.<br><br>*Evidence*: Thompson Depo., 43:20-22, 111:11-112:11, 120:2-16. |

CHEX SYSTEMS' RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: CHEX SYSTEMS' MOTION FOR SUMMARY JUDGMENT

| ChexSystems' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting *Evidence* | ChexSystems' Response |
|---|---|---|
| 16. On April 12, 2018, Thompson recommended that Horowitz's personal and business accounts be closed and referred for reporting by ChexSystems for suspected fraud activity.<br><br>*Evidence*: Thompson Depo. (Conf.), 81:9-20, 148:20-149:4. | Undisputed. | None. |
| 17. Thompson recommended that the account be closed and reported to ChexSystems based the recommendation on the fact that the $70,000 cashier's check was purchased by an entity related to Horowitz and was deposited in Horowitz's account from which the funds were swiftly transferred, leaving the account overdrawn, before BANA received notice that the cashier's check was returned unpaid due to a stop payment request, which Union Bank told Thompson the remitter had made.<br><br>*Evidence*: Thompson Depo. (Conf.), 148:20-149:4;<br><br>Thompson Depo. (Non-Conf.), 98:6-18, 112:13-113:10, 118:7-119:1, 124:16-126:2. | Disputed. Thompson testified that he made his decision to report Horowitz for having engaged in suspected fraud activity to ChexSystems because Thompson erroneously believed that Horowitz was the remitter of the Check, when in fact, it was COD, USA, Inc.<br><br>*Evidence*: Thompson 72:7-15. Ex 7. | The alleged dispute mischaracterizes Thompson's testimony. He considered several facts, stated in this undisputed facts as the basis for his decision to recommend account closure and reporting, not just stop payment by the remitter. Nor was he confused about who was the remitter. Horowitz was COD's CEO, a signer on its Union Bank account, and the person who directed Tolbert to obtain the Check in order to avoid Marigold Funding, LLC's garnishment.<br><br>*Evidence*: Thompson Depo., 98:6-18, 112:13-113:10, 118:7-119:1, 124:16-126:2, 148:20-149:4.<br><br>Plaintiff's Depo., 25:3-19, 26:17-25, 27:12-28:9, 35:14-19 & Ex. 4;<br><br>Plaintiff's Responses to Supplemental |

| ChexSystems' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting *Evidence* | ChexSystems' Response |
|---|---|---|
| | | Interrogatories, Request No. 19. |
| 18. On April 13, 2018, BANA sent multiple emails to Union Bank requesting that it send BANA $70,000, as BANA was a holder in due course of the cashier's check entitled to enforce payment of that item.<br><br>*Evidence*: Thompson Depo. (Non-Conf.), 94:11-95:25, 103:11-104:20 105:15-106:1. | Undisputed. | None. |
| 19. On May 22, 2018, per Thompson's recommendation, BANA closed the 2815 Account and booked the 2815 Account's negative balance of $68,515.67 as a bank loss.<br><br>*Evidence*: Plaintiff Depo., 56:13-24;<br><br>Thompson Depo. (Non-Conf.), 52:12-53:10 & Ex. 7. | Undisputed. | None. |
| 20. Also per Thompson's recommendation, BANA furnished information to defendant ChexSystems, specifically that Horowitz's 2815 Account was closed for suspected fraud activity with an original charge off amount of $68,003.75 and a closure status of paid in full. | Undisputed. | None. |

70014.0757/16730404.1

CHEX SYSTEMS' RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: CHEX SYSTEMS' MOTION FOR SUMMARY JUDGMENT

| ChexSystems' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting *Evidence* | ChexSystems' Response |
|---|---|---|
| *Evidence*: Declaration of Sarah Cables ("Cables Decl."), ¶ 10 & Ex. A;<br><br>Kenney Decl., ¶ 6, Ex. 5, Deposition of Sarah Cables ("Cables Depo."), 21:6-22:16, Ex. 5. | | |
| 21. ChexSystems reported that Horowitz's 2815 Account was closed for suspected fraud activity, according to the information furnished by BANA.<br><br>*Evidence*: *See* Cables Decl., ¶ 10 & Ex. A;<br><br>Cables Depo., 21:6-22:16 & Ex. 5. | Undisputed. | None. |
| 22. In response to BANA's demands, Union Bank sent BANA a $70,000 check in June 2018, which BANA offset against its loss on closure of the 2815 Account, leaving a small balance in BANA's hold harmless fund that was eventually paid to Horowitz.<br><br>*Evidence*: Thompson Depo. (Non-Conf.), 56:18-57:24;<br><br>Plaintiff Depo., 58:13-21. | Undisputed. | None. |
| 23. In late July 2021, Horowitz opened an account for Creative Arcades LLC at Orange County's Credit Union. | Undisputed. | None. |

CHEX SYSTEMS' RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: CHEX SYSTEMS' MOTION FOR SUMMARY JUDGMENT

| ChexSystems' Uncontroverted Facts and Supporting *Evidence* | Plaintiff's Response to Cited Fact and Supporting *Evidence* | ChexSystems' Response |
|---|---|---|
| *Evidence*: Plaintiff Depo., 59:13-61:5. | | |
| 24. On or about July 28, 2021, Orange County's Credit Union sent Horowitz a letter saying it had closed his account due to suspected fraud activity and account abuse, based on information provided by ChexSystems. *Evidence*: Plaintiff Depo., Ex. 11. | Undisputed. | None. |
| 25. Horowitz obtained a copy of a credit report from ChexSystems, according to which BANA said that the 2815 Account was closed for suspected fraud activity with an original charge off amount of $68,003.75 and a closure status of paid in full. *Evidence*: FAC, ¶ 15, Plaintiff Depo., 62:2-64:11 & Ex. 13; Cables Decl., ¶ 10 & Ex. A. | Undisputed. | None. |
| 26. In August 2021, Horowitz submitted a dispute to ChexSystems, which sent BANA a request for reinvestigation stating that Horowitz disputed the information that his BANA account was closed for "suspected | Undisputed. | None. |

CHEX SYSTEMS' RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: CHEX SYSTEMS' MOTION FOR SUMMARY JUDGMENT

| ChexSystems' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting *Evidence* | ChexSystems' Response |
|---|---|---|
| fraud activity." *Evidence*: Plaintiff Depo., 67:10-13; Cables Decl., ¶ 11 & Ex. B. | | |
| 27. Carly Adams, BANA's lead operations representative in deposit credit bureau disputes, conducted BANA's investigation and pre-pared its response to ChexSystems' reinvesti-gation request. *Evidence*: Kenney Decl., ¶ 4, Ex. 3, Deposition of Carly Adams ("Adams Depo."), 12:1-13, 33:2-4 & Ex. 9; Cables Decl., ¶ 11 & Ex. C. | Disputed. Carly Adams admitted that no reinves-tigation was performed by her. She relied exclusively on what was told to her by the RISC Department. *Evidence*: Carly Adams Depo., 29:8-13, 48:12 - 49:18; 49:20-50:18; 55:9-56:25. | The alleged dispute mischaracterizes Adams' testimony. She said she relied on the RISC Department's statement to determine the reason for its decision to close the account, but that she had reviewed several of BANA's systems of record to check whether the disputed information was accurate. *Evidence*: Adams Depo., 36:5-36:4, 43:1-9. |
| 28. The response stated: "Due to deposit activity, this account was placed under review.· During the review, it was deter-mined that the account breached the account agreement. Because of this breach the account was closed." *Evidence*: Adams Depo., 35:5-18 & Ex. 9. | Undisputed. | None. |
| 29. The response added: "Suspected fraud activity was placed by RISC department.· Please contact RISC at 1-877- | Undisputed. | None. |

CHEX SYSTEMS' RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: CHEX SYSTEMS' MOTION FOR SUMMARY JUDGMENT

| ChexSystems' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting *Evidence* | ChexSystems' Response |
|---|---|---|
| 240-6886, Option 2." *Evidence*: Adams Depo., 41:22-42:5 & Ex. 9. | | |
| 30.ChexSystems received BANA's response, noting that it fully answered the questions asked in the request for reinvestigation. *Evidence*: Cables Depo., Ex. 10. | Disputed. Defendant failed to reference any pinpoint citation to Cable's deposition to support this proposition. In fact, Cables admitted that Horowitz had no role in Union Bank stopping payment on the Check. It also admitted that it did not know who stopped payment on the Check. *Evidence*: Cables Depo. 45:7-11, 45:13-17. Ex. 10. | The inadvertently omitted pinpoint citation is: Cables Depo., 39:9-40:2, 54:3-24. The alleged dispute mischaracterizes Cables' testimony. She did not admit that Horowitz had no role in the stop payment order. She said that was Horowitz's contention. *Evidence*: 45:7-11, 46:20-23. |
| 31.Since BANA's response was sufficient in accordance with ChexSystems' policies and procedures, there was no need for ChexSystems to follow up with BANA to get more information about why it had suspected fraud. *Evidence*: Cables Depo., 39:9-40:2, 53:4-22, 54:3-12, 55:16-21. | Disputed. Chex conducts no reinvestigations into consumer disputes. Rather, it fully relies on what it is told by the furnisher. Moreover, it was critical for BOA to have determined who stopped payment on the Check before reporting Horowitz as having engaged in suspected fraud activity. BOA never made this determination before reporting him as such. Cables also testified that Horowitz did not stop payment on the Check, he should NOT have been reported to Chex. *Evidence*: Cables Dep. 48:22-25, 57:11-58:6, | The alleged dispute mischaracterizes Cables' testimony. She never said that Chex never reinvestigates consumer disputes on its own. Instead, she was asked whether Chex takes responsibility for the accuracy information in its reports. She answered that Chex requires furnishers to furnish accurate and complete information and has policies in place to ensure that that is done. Cables also did not testify it was crucial to determine who stopped payment on the Check. |

CHEX SYSTEMS' RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: CHEX SYSTEMS' MOTION FOR SUMMARY JUDGMENT

| ChexSystems' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting *Evidence* | ChexSystems' Response |
|---|---|---|
| | 61:17-62:14. | She said it was important for BANA to examine the reason Horowitz claimed his account was closed and determine if that was indeed the reason.<br><br>Cables did not say that if Horowitz did not stop payment on the Check he should not have been reported. She said that if everything he said in his first dispute was true, his account should not have been reported.<br><br>*Evidence*: Cables Dep. 48:22-25, 57:11-58:6, 61:17-62:14. |
| 32. ChexSystems relied on the information provided in BANA's response to the request for reinvestigation and did not further investigate Horowitz's dispute.<br><br>*Evidence*: Cables Depo., 40:3-41:1. | Undisputed. | None. |
| 33. On January 5, 2022, Leslie Herrington, a senior fraud analyst on BANA's high risk mitigation team, submitted a request to delete the negative reporting to ChexSystems regarding Horowitz—identifying him by his BANA party ID number.<br><br>*Evidence*: Kenney Decl., ¶ 9, Ex. 8. Non- | Disputed. Defendant's citations to the deposition testimony do not support this fact as stated. Herrington testified that she submitted a request to delete the negative reporting to ChexSystems regarding Horowitz. There is no testimony about how she identified him.<br><br>*Evidence* - Herrington | The alleged dispute is simply wrong. Here is the testimony:<br><br>Q. And was this note to remove any and all Chex reporting on Mr. Horowitz?<br><br>A. The Chex reporting is for that specific ID number. So you see that ends in 9702? That's the one that it |

CHEX SYSTEMS' RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: CHEX SYSTEMS' MOTION FOR SUMMARY JUDGMENT

| ChexSystems' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting *Evidence* | ChexSystems' Response |
|---|---|---|
| Confidential Deposition of Leslie Herrington ("Herrington Depo. (Non-Conf.)"), 10:25-11:7, 48:19-49:20; Kenney Decl., ¶ 9, Ex. 8, Confidential Deposition of Leslie Herrington ("Herrington Depo. (Conf.)") 30:18-31:20. | Depo., 48:22-49:4 | would apply to. There was an account number that would have been associated with it.<br><br>Q. And is that, like, his customer profile number with Bank of America?<br><br>A. Correct. We call it a party ID.<br><br>*Evidence*: Herrington Depo., 31:12-20. |
| 34. Herrington intended to have the negative information related to Account 2815 removed from Horowitz consumer credit reports; she failed to achieve that objective only because she made a mistake and referenced the wrong account number in her request.<br><br>*Evidence*: Herrington Depo. (Non-Conf.), 51:2-15. | Undisputed. | None. |
| 35. Also on January 5, 2022, BANA sent a letter to Horowitz (the "January 5 Letter") that stated: "we've submitted a request to Chex Systems, Inc., and Early Warning Services, LLC, on to remove the reporting from your credit file.· …·You can use this letter as documentation that the request has been submitted."<br><br>*Evidence*: Herrington | Undisputed. Plaintiff refers to this as the "Removal Letter" in its response. | Undisputed. |

70014.0757/16730404.1                                   - 14 -

| ChexSystems' Uncontroverted Facts and Supporting *Evidence* | Plaintiff's Response to Cited Fact and Supporting *Evidence* | ChexSystems' Response |
|---|---|---|
| Depo., 48:19-49:20 & Ex. 14;<br><br>Thompson Depo. (Non-Conf.), Ex. 21;<br><br>FAC, ¶ 65. | | |
| 36. The letter was not issued because the initial decision to close the 2815 Account for suspected fraudulent activity was wrong.<br><br>*Evidence*: Thompson Depo. (Conf.), 151:12-154:21, 158:13-159:6. | Disputed. The letter was issued because BOA was paid in full for the Check by Union Bank. BOA knew, since the time the Check was deposited into Horowitz's account, that it was a holder in due course as to the Check and would get paid by Union Bank.<br><br>*Evidence*: Thompsons Depo., 65:20- 66:9, 154:15-21, 156:2-15, 158:7-11. | The alleged dispute is both wrong and irrelevant. Thompson testified that while it was his opinion that Union Bank was liable on the Check because BANA was a holder in due course, he did not know that Union Bank would agree and pay. Furthermore, Union Bank's payment of BANA's claim has no bearing on whether the January 5 letter was sent because the initial decision to close the account was wrong.<br><br>*Evidence*: Thompson Depo., 156:16-23, 157:23-158:17. |
| 37. The January 5 Letter erroneously referred to Horowitz's account ending in 6566, rather than the 2815 Account.<br><br>*Evidence*: Herrington Depo. (Non-Conf.), 51:2-15. | Undisputed. | None. |
| 38. Horowitz believed the January 5 Letter referred to the 2815 Account because that was the only account that BANA had | Undisputed. | None. |

CHEX SYSTEMS' RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: CHEX SYSTEMS' MOTION FOR SUMMARY JUDGMENT

| ChexSystems' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting *Evidence* | ChexSystems' Response |
|---|---|---|
| reported to ChexSystems. *Evidence*: Plaintiff Depo., 81:15-25, 84:11-20, 87:7-88:1, 179:2-12. | | |
| 39. Horowitz never verified with BANA whether the January 5 Letter referred to the 2815 Account. *Evidence*: Plaintiff Depo., 81:15-25, 84:11-20, 87:7-88:1, 179:2-12. | Disputed. Horowitz sent a second dispute letter to ChexSystems, attached the January 5 letter stating that the matter had been re-solved between him and Bank of America. Bank of America received that dis-pute and letter and disre-garded it. *Evidence* - Pankowski dep 55:16-23, Ex 25. | The alleged dispute does not address the fact stated. Horowitz's second dispute did not ask whether the Janu-ary 5 letter referred to the 2815 Account. Had it done so, Pankowski would have realized that the letter related to the dispute he was to reinvestigate. *Evidence*: 81:15-25, 84:11-20, 87:7-88:1, 179:2-12; Pankowski Depo., 55:16-23. |
| 40. Herrington's request to delete negative ChexSystems reporting on Horowitz's account was sent to Audry Battle, BANA's Hotfile FCRA analyst. *Evidence*: Kenney Decl., ¶ 11, Ex. 10, Non-Confidential Deposition of Audrey Battle ("Battle Depo. (Non-Conf.)"), 8:19-20. | Undisputed. | None. |
| 41. Battle declined Herrington's request because it referenced an account ending in 6566, while the only previous negative reporting had been on the 2815 Account. | Undisputed. | None. |

CHEX SYSTEMS' RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: CHEX SYSTEMS' MOTION FOR SUMMARY JUDGMENT

| ChexSystems' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting *Evidence* | ChexSystems' Response |
|---|---|---|
| *Evidence*: Battle Depo. (Non-Conf.), 21:19-22:12. | | |
| 42. Battle's rejection of Herrington's request should have generated an automated email to Herrington, telling her the request was rejected because the only negative reporting was on a different account than the one referenced in her request.<br><br>*Evidence*: Battle Depo. (Non-Conf.), 26:7-25;<br><br>Kenney Decl., ¶ 11, Ex. 10, Confidential Deposition of Audrey Battle ("Battle Depo. (Conf.)"), 29:7-30:14. | Undisputed. | None. |
| 43. Herrington was unaware that Battle had denied her request because she never received an email telling her the request was rejected.<br><br>*Evidence*: Herrington Depo. (Non-Conf.), 52:20-23. | Disputed. Herrington's testimony was only that she was unaware that her request to Ms. Battle had been rejected. She did not testify that she never received the automated email from Battle.<br><br>*Evidence*: Herrington Depo. (Non- Conf.), 52:20-23. | The stated fact is the only reasonable inference from Herrington's testimony. If Herrington had received and read the email she would not have been unaware that Battle had denied her request. |
| 44. At the end of September 2022, Horowitz tried to set up a new personal and business accounts at NuVision Credit Union but a few hours later was informed that the accounts could not be opened while Horowitz | Undisputed. | None. |

70014.0757/16730404.1

- 17 -

CHEX SYSTEMS' RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: CHEX SYSTEMS' MOTION FOR SUMMARY JUDGMENT

| ChexSystems' Uncontroverted Facts and Supporting *Evidence* | Plaintiff's Response to Cited Fact and Supporting *Evidence* | ChexSystems' Response |
|---|---|---|
| was still appearing on ChexSystems.<br><br>*Evidence*: Plaintiff Depo., 83:14-84:7, 91:4-13, 93:21-94:24, 97:3-98:6 & Ex. 18. | | |
| 45. In September 2022, after NuVision turned him down, Horowitz submitted another dispute to ChexSystems, saying he had resolved the matter with BANA and attaching BANA's January 5, 2022 letter.<br><br>*Evidence*: Plaintiff Depo., 98:12-100:4. | Undisputed. | None. |
| 46. Based on Horowitz's dispute, ChexSystems sent BANA another request for reinvestigation, showing that Plaintiff disputed the "suspected fraud activity" reason for closure of the 2815 Account and stated "that he resolved this with your institution, and you reported that you are removing the information."<br><br>*Evidence*: Kenney Decl., ¶ 5, Ex. 4, Deposition of Michael Pankowski ("Pankowski Depo."), 53:15-25, 55:10-23 & Ex. 10;<br><br>Cables Decl., ¶ 13 & Ex. D. | Undisputed. Horowitz also attached the Bank of America Removal Letter of January 5, 2022 to his dispute.<br><br>*Evidence*: Ex 13 and 16 | Undisputed. |

CHEX SYSTEMS' RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: CHEX SYSTEMS' MOTION FOR SUMMARY JUDGMENT

| ChexSystems' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting *Evidence* | ChexSystems' Response |
|---|---|---|
| 47. BANA's response to ChexSystems' request for reinvestigation stated that '[t]he reporting of suspected fraud activity is accurate and shall remain. The account is PIF [paid in full] as of 06/01/2018."  *Evidence*: Pankowski Depo., 53:15-54:9, 55:25-56:12 & Ex. 10;  Cables Decl., ¶ 14 & Ex. E. | Undisputed. | None. |
| 48. The only inaccuracy that Horowitz has ever disputed with ChexSystems related to the 2815 Account is that the account was closed for suspected fraud activity.  *Evidence*: Cables Decl., ¶¶ 11, 13, 15-16 & Exs. B and D. | Disputed. Horowitz posited two disputes to ChexSystems, each of which were provided to BOA. The First dispute stated that Horowitz did not stop payment on the certified check from Union Bank. The Second Dispute stated that he resolved the issue of being reported for suspected fraud activity by BOA and that this designation should be removed.  *Evidence*: Ex 16 and 25. | The supporting evidence cited by Horowitz do not at all support the cited facts; Horowitz's dispute is therefore not genuine.  Ex. 16 is a Chex Request for Reinvestigation. It specifically states under "Information to Verify" and "Reason for Reinvestigation" that the consumer disputed the information "Suspected Fraud Activity."  Ex. 25 is the deposition of Sarah Cables. The excerpted testimony does not in any way support the allegation that Horowitz disputed inaccuracies on his Chex report other than "Suspected Fraud Activity." |
| 49. In this action, Horowitz seeks damages | Disputed in part. Horowitz seeks emotional and | Undisputed that Horowitz seeks |

| ChexSystems' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting *Evidence* | ChexSystems' Response |
|---|---|---|
| for profits he or his businesses would have earned if he had taken out loans that he admittedly never applied for.<br><br>*Evidence*: Plaintiff Depo., 59:13-61:5, 83:14-84:7, 91:4-13, 93:21-94:24, 97:3-98:6, 110:4-111:23, 113:7-114:16, 117:1-10, 119:7-18, 135:7-15, 141:1-18, 146:7-147:13, 179:13-183:3 & Exs. 11 and 18. | financial damages as well. He is also seeking damages for lost business opportunities because he could not get a bank to open an account for him, let alone partner with the Small Business Administration due to being reported by BOA to ChexSystem[s] as having engaged in suspected fraud activity.<br><br>*Evidence*: Plaintiff Depo., 110:5-16, 110:25-111:4, 111:5-23, 112:17-113:1, 113:7-16, 117:1-5, 119:18, 152:18-153:5. | emotional and financial damages. Horowitz's alleged disputes are otherwise neither responsive nor relevant to the uncontroverted fact cited by BANA.<br><br>Damages for business losses are not recoverable under the FCRA.<br><br>*See* Dkt. 47-1, p. 16; Chex Reply Memo., pp. 7-8. |
| 50. Horowitz did not communicate or make known to BANA the special circumstances from which his alleged business loss damages arose.<br><br>*Evidence*: *See* Herrington Depo., Exs. 8, 10, 16, 17. | Disputed. BOA was already aware that Horowitz was a businessman and knew the damages that he would suffer from its improper credit reporting to Chex. In fact, Horowitz had a prior loan with Bank of America as his lender, and guaranteed by the Small Business Administration.<br><br>*Evidence*: Horowitz Dep 153:14; 179:14-180:12. 181:13-23. 182:3-24. | Horowitz's alleged disputes are not responsive to the uncontroverted fact cited by BANA. The alleged disputes lack foundation, based on the self-serving testimony of Horowitz himself, and the lack of any admission by BANA that it was aware of the alleged special circumstances from which his alleged losses arose.<br><br>Horowitz's loan history with BANA has no bearing on his alleged business losses in this matter, which do not involve a BANA loan and are not recoverable under the FCRA in any event. Nor may damages be awarded for lost profits of unformed new |

CHEX SYSTEMS' RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: CHEX SYSTEMS' MOTION FOR SUMMARY JUDGMENT

| ChexSystems' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting *Evidence* | ChexSystems' Response |
|---|---|---|
| | | businesses. *See* Dkt. 47-1, p. 16; Chex Reply Memo., pp. 7-8. |
| 51.BANA did not furnish negative information to ChexSystems about the 6566 Account. *Evidence*: Cables Depo., 64:19-65:5. | Undisputed. | None. |
| 52.ChexSystems never received a request from BANA to remove negative reporting on any of Horowitz's accounts. *Evidence*: Cables Depo., 64:19-65:5. | Disputed. On or about March 7, 2023, Defense counsel communicated to Plaintiff's counsel that the Bank refused to remove the negative information from ChexSystems. However, on March 28, 2023, the Bank relented and removed the negative information reported to ChexSystems. *Evidence*: Ex 7 | There is no dispute. The uncontroverted fact refers to the pre-suit facts at issue in the case. The alleged dispute refutes to post-suit events. |
| 53.ChexSystems did not ask BANA whether it made a mistake in preparing or sending the January 5 Letter because ChexSystems could resolve Horowitz's dispute without asking BANA why it wrote the letter, because the letter concerned a different account than the one on which information was disputed, and because BANA's response to the request for reinvestigation fully answered the dispute that Horowitz had raised. | Disputed. ChexSystems failed to ask BOA why it wrote the Removal Letter concerning an account that was never reported to ChexSystems. This Defendant merely disregarded it because it recited the wrong account number. *Evidence*: Cables Depo., 70:18-71:9. | The alleged dispute simply states the uncontroverted fact in different words. |

CHEX SYSTEMS' RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: CHEX SYSTEMS' MOTION FOR SUMMARY JUDGMENT

| ChexSystems' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting *Evidence* | ChexSystems' Response |
|---|---|---|
| *Evidence*: Cables Depo., 74:16-75:24, 76:1-4, 76:15-77:3, 78:3-15. | | |
| 54. When ChexSystems received BANA's responses to its requests for reinvestigation, it confirmed that BANA provided complete answers to Plaintiff's disputes, verifying that the furnished information was accurate and complete and that the reason for closing the account matched the definition of "suspected fraud activity." <br><br> *Evidence*: Cables Decl., ¶ 17. | Disputed. ChexSystems confirmed nothing, but merely accepted BOA's response without question. ChexSystems puts sole responsibility for the accuracy of information that it reports on consumers, onto the furnishers. <br><br> *Evidence*: Cables Depo., 40:3-11, 46:20- 47:8, 48:22-25, 55:6-8 | The alleged dispute mischaracterizes Cables' testimony. Cables testified that it was the furnisher's responsibility to verify the accuracy and completeness of the information that it submitted to Chex. She did not state that Chex put that responsibility on the furnisher or that it was solely the furnisher's responsibility. <br><br> *Evidence*: Cables Depo., 47:4-8. |
| 55. ChexSystems investigators noted BANA's responses in the consumer electronic file before sending Horowitz notice of the resolution of his disputes. <br><br> *Evidence*: Cables Decl., ¶ 18. | Disputed. Ms. Cables gave a deposition in this case and did not offer that testimony. | The fact that Cables did not testify to this fact at her deposition does not prevent her from attesting to it in a later deposition. |
| 56. BANA regularly furnishes information to ChexSystems related to BANA's customers' deposit accounts. <br><br> *Evidence*: Cables Decl., ¶ 5. | Undisputed. However, Plaintiff does not rely on Cables' post deposition declaration for this fact. <br><br> *Evidence*: Cables Dep. 18:1-5 | None. |
| 57. ChexSystems expects BANA to furnish complete and accurate information related to | Undisputed. However, Plaintiff does not rely on Cables' post deposition declaration for this fact. | None. |

CHEX SYSTEMS' RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: CHEX SYSTEMS' MOTION FOR SUMMARY JUDGMENT

| ChexSystems' Uncontroverted Facts and Supporting *Evidence* | Plaintiff's Response to Cited Fact and Supporting *Evidence* | ChexSystems' Response |
|---|---|---|
| consumers.<br><br>*Evidence*: Cables Decl., ¶ 6. | *Evidence*: Cables Depo., 40:3-11, 46:20- 47:8, 48:22-25, 55:6-8 | |
| 58. Since January 2020, BANA has been the second largest data contributor to ChexSystems, and BANA has an industry-leading response rate to consumer disputes.<br><br>*Evidence*: Cables Decl., ¶ 7. | Undisputed. | None. |

### ChexSystems's Responses to Plaintiff's Additional Uncontroverted Facts

| Plaintiff's Additional Facts | ChexSystems's Response |
|---|---|
| 59. Suspected Fraud Activity is defined as a violation of account privileges or furnisher policies allegedly to obtain unauthorized benefits or rights which has risen to the level of suspected fraud activity.<br><br>Evidence: Cables Depo., 24:6-10. | Undisputed that Chex Systems defines Suspected Fraud Activity as described. |
| 60. A consumer being reported for suspected fraud activity is a very serious notation to place on one's ChexSystems report.<br><br>Evidence: Cables 28:5-9. | Undisputed. |
| 61. Determining whether Horowitz stopped payment on the Check was critical to the resolution of his dispute.<br><br>Evidence: Cables 57:11-58:6 | Mischaracterizes Cables' testimony. Cables testified that it was important for BANA to review the reason that Horowitz indicated the account was closed to see whether that was the actual reason BANA closed the account. |

70014.0757/16730404.1

CHEX SYSTEMS' RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: CHEX SYSTEMS' MOTION FOR SUMMARY JUDGMENT

| Plaintiff's Additional Facts | ChexSystems's Response |
|---|---|
| | *Evidence*: Cables Depo. 57:11-58:6. |
| 62. According to ChexSystems, if the facts show that Union Bank and not Horowitz, stopped payment on the Check, then Horowitz should NOT have been reported as suspected fraud activity according to ChexSystems.<br><br>Evidence: Cables 61:17 – 62:14. | Mischaracterizes Cables' testimony. Cables testified that Horowitz's account should not have been reported if the Check was the basis for BANA's reporting the account and if all the facts stated in Horowitz's first dispute were true; namely, that Union·Bank issued a stop payment on the Check through no fault of his own and that Union Bank made the check good as it was Union Bank's fault alone that the stop payment order was issued.·<br><br>*Evidence*: Cables Depo., 61:8-62:14. |
| 63. Horowitz never owned any interest in COD USA, Inc.<br><br>Evidence: Horowitz Depo., 36:3-4. | Undisputed. However, it was also true that Horowitz was COD's CEO, a signer on COD's Union Bank account, and the person who directed Barbara Tolbert to obtain the Check as a means of avoiding Marigold Financing, LLC's garnishment.<br><br>*Evidence*: Horowitz Depo., 25:14-19, 26:3-27:4.<br><br>Plaintiff's Responses to Supplemental Interrogatories, Request No. 19. |
| 64. COD USA paid $70k in cash for the Check.<br><br>Evidence: Ex 3. | False. Although COD's account was initially charged for the Check, Union Bank later recredited the account for that sum and allowed Horowitz to take the money from that account.<br><br>*Evidence*: Biszantz Depo., 30:25-32:9, 32:19-24, 33:4-34:25. |
| 65. Mr. Horowitz owed over 50 domain names that he intended to finance for new business ventures.<br><br>Evidence: Horowitz Depo., 179:13-16. | Undisputed but irrelevant as business loss damages are not recoverable under the FCRA nor may damages be awarded for lost profits of unformed new businesses. See Dkt. 47-1, p. 16; Chex Reply Memo., pp. 7-8. |
| 66. Horowitz intended to open at least a dozen businesses.<br><br>Evidence: Horowitz Depo., 181:24-182:9. | Undisputed but irrelevant as business loss damages are not recoverable under the FCRA nor may damages be awarded for lost profits of unformed new businesses. See Dkt. 47-1, p. 16; |

70014.0757/16730404.1                                          - 24 -

| Plaintiff's Additional Facts | ChexSystems's Response |
|---|---|
| | Chex Reply Memo., pp. 7-8. |
| 67. In order to finance any of his proposed businesses, Horowitz needed a loan from the Small Business Administration ("SBA"). Unfortunately, the SBA requires its borrowers to engage a "partner bank" to obtain the loan for which SBA ould guarantee the obligation.<br><br>Evidence: Horowitz Depo., 113:7-16. | Undisputed but irrelevant as business loss damages are not recoverable under the FCRA nor may damages be awarded for lost profits of unformed new businesses. See Dkt. 47-1, p. 16; Chex Reply Memo., pp. 7-8. |
| 68. Due to BOA's continued reporting to ChexSystems, Horowitz as prevented from obtaining an SBA guaranteed loan.<br><br>Evidence: Horowitz Depo., 117:1-5; 18:13-24. | Undisputed for purposes of this motion only. Irrelevant. Business loss damages are not recoverable under the FCRA nor may damages be awarded for lost profits of unformed new businesses. See Dkt. 47-1, p. 16; Chex Reply Memo., pp. 7-8. |
| 69. Horowitz attempted to open accounts at NuVision Credit Union after the Bank sent him the Removal Letter. However, the Bank still had reported him to ChexSystems and NuVision refused to open new accounts for him as well. .<br><br>Evidence: Horowitz Depo., 91:2-14. | Undisputed for purposes of this motion only. Irrelevant. Business loss damages are not recoverable under the FCRA nor may damages be awarded for lost profits of unformed new businesses. See Dkt. 47-1, p. 16; Chex Reply Memo., pp. 7-8. |
| 70. Without the ability to open new accounts, Horowitz could not pursue his business ventures.<br><br>Evidence: Horowitz Depo., 113:7-11, 182:13-24. | Undisputed for purposes of this motion only. Irrelevant. Business loss damages are not recoverable under the FCRA nor may damages be awarded for lost profits of unformed new businesses. *See* Dkt. 47-1, p. 16; Chex Reply Memo., pp. 7-8. |
| 71. Horowitz justifiably relied on the Removal Letter when he visited NuVision Credit Union to open new accounts.<br><br>Evidence: Horowitz Depo., 90:3-10, 91:15-18. | Disputed. Horowitz's reliance was unreasonable as the January 5 letter obviously referred to an account other than the one on which there had been negative reporting and Horowitz did nothing before going to NuVision to check with BANA about that discrepancy or to review his credit report to see if the negative information had been removed.<br><br>See Dkt. 50-1, pp. 20-21; BANA Reply Memo., p. 8. |

70014.0757/16730404.1

- 25 -

| Plaintiff's Additional Facts | ChexSystems's Response |
|---|---|
| 72. The only evidence that Thompson ever had as to the identity of who ordered the stop payment on the Check was the single conversation he had with Union Bank that referred him to the "remitter" of the Check.<br><br>Evidence: Thompson Dep. 81:22-82:11; 36:2-3. 111:20-23. | Mischaracterizes Thompson's testimony. Thompson testified that Union Bank told him that the remitter stopped payment on the Check and referred him to the remitter for additional information. Thompson also spoke with Horowitz who told Thompson that he (Horowitz) had not stopped payment on the Check<br><br>*Evidence*: Thompson Depo., 11:25-12:14, 35:23-36:3, 11:11-112:11, 120:2-16,125:18-126:2; Dkt. # 46-2. p. 9.. |
| 73. Thompson never knew who stopped payment on the Check.<br><br>Evidence: Thompson Dep. 36:5-9; 96:19-20. | Undisputed. |
| 74. The Stop Payment Order on the Check was ordered by Union Bank's Legal Department, itself, without any prior knowledge to Horowitz. Kyle Connors, from Union Bank requested the Stop Payment Order.<br><br>Evidence: Biszantz Depo., 13:9-12; 26:6- 11; 27:21-24; 29:2-6. | Undisputed that Kyle Connors (not Union Bank's Legal Department) placed a stop payment order on the Check. |
| 75. ChexSystems' policy is that it is the furnishers responsibility to verify the accuracy and completeness of information that they have submitted to Chex. If a consumer disputed information, Chex merely double checks with Bank of America to make sure that its accurate.<br><br>Evidence: Cables Dep. 48:19-25. | Disputed. Mischaracterizes Cables' testimony. She said Chex relies primarily on furnishers to provide complete and accurate information and has policies to ensure that they do so. She did not say that Chex's policy is never to do more than double check with the furnisher.<br><br>*Evidence*: Cables Dep. 48:19-25. |
| 77. ChexSystem admitted that Horowitz played no role in the Union Bank Cashier's check having a stop payment issued on it.<br><br>Evidence: Cables Depo., p 45:7-11. | Disputed. Mischaracterizes Cables' testimony. Cables said that it was Horowitz's contention that he played no role in stopping payment of the Check, not that his contention was true.<br><br>*Evidence*: Cables Depo., p 45:7-11. |
| 78. The extent of ChexSystems reinvestigation into Horowitz's disputes | Disputed. Chex carefully prepared its Requests for Reinvestigation to assure that they conveyed all the information |

| Plaintiff's Additional Facts | ChexSystems's Response |
|---|---|
| was to rely upon the BOA's answers.<br><br>Evidence: Cables Depo., p 40:3-10. | the consumer had supplied in support of the dispute. Upon receiving the furnisher's response, Chex analyzed the response to assure that it adequately answered the dispute. BANA's responses passed that test so there was no reason for Chex to investigate further.<br><br>*Evidence*: Cables Depo., p 40:3-10. |
| 79. Horowitz was able to open new accounts at Orange County CU after the negative item from BOA was removed from Chex.<br><br>Evidence: Horowitz Depo., 106:10-17 | Undisputed. |
| 80. Horowitz also made clear in his First Dispute, that he did not cause the stop payment order to be issued on the Union Bank Cashier's Check.<br><br>Evidence: Ex 1 | Undisputed that Horowitz claimed in his first dispute that Union Bank had stopped payment and that it, not he, was solely at fault. That claim was false.<br><br>See Chex Reply Memo., pp. 2-3. |
| 81. Orange County Credit Union allowed Plaintiff to open accounts at its financial institution only after BOA had removed the negative reporting to Chex.<br><br>Evidence: Horowitz Depo. 105:14-17 | Undisputed for purposes of this motion only. |
| 82. Chex conducts no reinvestigations into consumer disputes. Rather, it fully relies on what it is told by the furnisher. Moreover, it was critical for BOA to have determined who stopped payment on the Check before reporting Horowitz as having engaged in suspected fraud activity. BOA never made this determination before reporting him as such. Cables also testified that Horowitz did not stop payment on the Check, he should NOT have been reported to Chex.<br><br>Evidence: Cables Dep. 48:22-25, 57:11-58:6, 61:17-62:14. | Disputed. Mischaracterizes Cables' testimony. Cables did not testify that Chex always or fully relies on what furnishers tell it and never conducts reinvestigations. Nor did she say it was critical for BANA to determine who stopped payment on the Check. *See* # 61 above & evidence there cited. Finally, Cables did not testify that if Horowitz did not stop payment on the Check, his account should not have been reported. *See* # 62 above & evidence there cited. |
| 83. BOA took punitive action against Horowitz for the Check.<br><br>Evidence: Kevin Williams Depo., 27:3- | Disputed. Mischaracterizes Williams' testimony. He referred to "punitive damage" meaning the loss BANA suffered and reported to Chex, not that the reporting or any other action taken |

70014.0757/16730404.1

- 27 -

| Plaintiff's Additional Facts | ChexSystems's Response |
|---|---|
| 18. | by BANA was intended to punish Horowitz.<br><br>*Evidence*: Williams Depo., 27:3-18. |
| 84. Thompson knew that BOA would be paid on the Check as it was a holder in due course since the day it received the Check in Horowitz's Account.<br><br>Evidence: Thompson Depo., 56:24-57:3, 65:20-66:9, 97:24-98:4, 99:7-14. | Disputed. Thompson knew BANA was a holder in due course of the Check. He thought it was therefore entitled to payment from Union Bank. He did not know whether Union Bank would agree and pay.<br><br>*Evidence*: Thompson Depo., 96:23-98:4. |
| 85. ChexSystems had no reason to doubt Horowitz's statement in his first Dispute when he said that Union Bank stopped payment on the Check and that he should not be listed as fraud or at fault.<br><br>Evidence: Cables Depo., 30:20-31:6. | Undisputed that when it received Horowitz's first dispute, it had no reason to doubt his statements. |
| 86. ChexSystems performed no reinvestigation into Plaintiff's First Dispute other than confirm with BOA what it had told ChexSystems.<br><br>Evidence: Cables Depo., 39:9-40:2, 40:3-11. | Disputed. *See* # 78 above & evidence there cited. |
| 87. ChexSystems believes that it's the furnisher's responsibility to verify the accuracy and completeness of information that it submits to ChexSystems.<br><br>Evidence: Cables Depo., 47:4-8. | Undisputed. |
| 88. When a consumer disputes information appearing on his or her Chex Systems report, it merely double checks with BOA to make sure its accurate.<br><br>Evidence: Cables Depo., 48:22-25. | Disputed. *See* #75, 78 above & evidence there cited. |
| 89. ChexSystem had no contact with Union Bank in this case because Union Bank is not a furnisher.<br><br>Evidence: Cables Depo., 55:6-8. | Undisputed. |

70014.0757/16730404.1

CHEX SYSTEMS' RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: CHEX SYSTEMS' MOTION FOR SUMMARY JUDGMENT

| Plaintiff's Additional Facts | ChexSystems's Response |
|---|---|
| 90. ChexSystems received Dispute 2 from Horowitz along with the Removal Letter. However, it disregarded the Removal Letter because it referred to an account not reported to Chex. Chex Systems did not find the Removal Letter even curious.<br><br>Evidence: Cables Depo., 70:18-71:2, 71:4-9. | Undisputed that Chex received Horowitz's second dispute and the January 5 letter. Disputed that Chex disregarded the letter. To the contrary, Cables testified that the Chex investigation agent handling the dispute took the letter into consideration and appropriately forwarded it to BANA with the Request for Reinvestigation.<br><br>*Evidence*: Cables Depo., 70:3-16. |

DATED: March 5, 2024

SEVERSON & WERSON
A Professional Corporation


By: _____/s/ Austin B. Kenney_____
AUSTIN B. KENNEY

Attorneys for Defendants
CHEX SYSTEMS, INC. and BANK OF AMERICA, N.A.

CHEX SYSTEMS' RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN RE: CHEX SYSTEMS' MOTION FOR SUMMARY JUDGMENT